JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 12 2009

FILED
CLERK'S OFFICE

MDL 2083

PLEADING NO. 1

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE:**

**BATTLEFIELD WASTE DISPOSAL
LIABILITY LITIGATION**

**MDL DOCKET NO. _____**

**MOTION FOR TRANSFER OF ACTIONS FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407, movants KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc. and Halliburton Company (collectively "Movants"), respectfully move this Panel to (1) transfer thirteen pending federal cases and all future-filed cases arising from battlefield waste disposal in Iraq and Afghanistan to the United States District Court for the District of Maryland for consolidated or coordinated pretrial proceedings; and (2) assign the consolidated pretrial proceeding to the Honorable Roger W. Titus of the District of Maryland, to whom one of the most senior of the pending actions is currently assigned.

As set forth below and in the accompanying Memorandum, the thirteen cases listed in the attached Schedule of Actions (the "Pending Actions") should be coordinated under 28 U.S.C.

OFFICIAL FILE COPY

IMAGED JUN 12 2009

§ 1407 because they involve common questions of fact and law, and consolidated pretrial proceedings will serve the interests of convenience and promote the just and efficient conduct of these actions. The plaintiffs in the Pending Actions, who are all represented by the same counsel, have indicated that they are amenable to pretrial consolidation of their claims.

In support of their Motion, Movants aver as follows:

1. Movants are the named Defendants in thirteen largely identical federal class actions arising from battlefield waste disposal in the military theatres in Iraq and Afghanistan under the Logistics Civil Augmentation Program Contract ("LOGCAP"). These cases (the "Pending Actions") are listed in the accompanying Schedule of Actions.

2. The Pending Actions involve virtually identical issues of fact and law concerning the disposal of military waste using open air "burn pits" in Iraq and Afghanistan.

3. Specifically, the class plaintiffs in the Pending Actions uniformly allege that Movants improperly burned large quantities of unsorted waste in burn pits without appropriate safety controls, and that class members were physically harmed by exposure to smoke and fumes.

4. In the Pending Actions, all filed by the same plaintiffs' law firm, the named plaintiffs seek to establish essentially identical classes, i.e., persons who 1) "were exposed to the actions of Defendants" in Iraq or Afghanistan since 2004, and 2) "have suffered, or have a basis for fear that they may in the future suffer, physical injury as a result."[1] The size of the purported class is claimed to be at least 100,000 individuals, including military and contractor personnel and foreign nationals.

---

[1] Eleven of the Pending Actions address burn pit activity in both Iraq and Afghanistan, while two actions seek redress for Iraq burn pit activity alone.

5. The named plaintiffs in the Pending Actions seek essentially identical relief for the purported class of burn pit claimants, including damages for physical injuries, future and lost wages, emotional distress, fear of future disease, past and future medical expenses, and medical monitoring. The named plaintiffs also seek punitive damages in an amount "sufficient to strip the Movants of all revenue and profits earned" under their military contracts.

6. The Pending Actions assert nearly identical legal theories, including negligence, battery, nuisance, negligent and intentional infliction of emotional distress, willful and wanton conduct, negligent hiring, training and supervision, breach of contract, and breach of duty to warn.

7. Transfer of the Pending Actions to one forum for coordinated and/or consolidated pretrial proceedings would eliminate duplicative discovery, avoid conflicting rulings and schedules, and conserve judicial resources by centering discovery and pretrial proceedings in one district court (rather than thirteen or more).

8. Such action would further the convenience of the parties and witnesses, who would otherwise inevitably be asked to testify or provide discovery multiple times as each of the Pending Actions proceeded, and would promote the just and efficient resolution of all these actions.

9. The United States District Court for the District of Maryland is an appropriate forum for multidistrict transfer. The District of Maryland has significant experience in MDL actions, is readily accessible to the parties and to witnesses, is located near the Pentagon and key military and government witnesses, is located near one of Movants' main offices in Northern Virginia, and maintains one of the most efficient dockets in the country.

10. The Honorable Judge Roger W. Titus of the District of Maryland is personally experienced in managing MDL matters and also maintains an efficient civil and criminal docket. Further, by virtue of having been assigned one of the first-filed of the Pending Actions, Judge Titus has had some opportunity to familiarize himself with the allegations raised in the Pending Actions.

11. Plaintiffs who filed in other jurisdictions would not suffer any prejudice from a § 1407 transfer, as they are all represented by the same counsel whose offices are in Washington, DC. Named plaintiffs could be deposed in their home states and their cases ultimately would be remanded for trial, if necessary, at an appropriate time. Moreover, all plaintiffs would enjoy numerous efficiencies and cost savings by coordinating their cases with similar actions.

12. Likewise, Movants would realize comparable efficiencies and cost savings from pretrial consolidation.

13. Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the Movants submit the following averments and the attached Memorandum of Law in support of their request for coordinated and/or consolidated pretrial proceedings. Movants respectfully submit that the District of Maryland would be the most accessible, convenient, and efficient jurisdiction for consolidation, and that the Honorable Roger W. Titus would be the most appropriate transferee judge.

WHEREFORE, Movants respectfully request, pursuant to 28 U.S.C. § 1407, that the Panel enter an Order transferring the Pending Actions, as well as any related actions that may be filed in the future, to the United States District Court for the District of Maryland, for coordinated and/or consolidated pretrial proceedings before the Honorable Judge Roger W. Titus.

DATED: June 10, 2009

Respectfully submitted,

Ray M. Aragon by RBB w/permission

Raymond B. Biagini
Ray M. Aragon
Bikram Bandy
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500
Fax: (202) 496-7756

Counsel for Movants KBR, Inc.,
Kellogg Brown & Root LLC,
Kellogg Brown & Root Services, Inc.
and Halliburton Company

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 12 2009

FILED
CLERK'S OFFICE

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 10, 2009, I caused a true and correct copy of the foregoing MOTION FOR TRANSFER OF ACTIONS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS to be sent via first class mail to the individuals identified on the attached Proof of Service.

Bikram Bandy

RECEIVED
CLERK'S OFFICE
2009 JUN 10 P 2: 19
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 12 2009

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **MDL DOCKET NO. _____** |
| **BATTLEFIELD WASTE DISPOSAL** | ) | |
| **LIABILITY LITIGATION** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF TRANSFER AND**
**<u>COORDINATION OR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407</u>**

Pursuant to 28 U.S.C. § 1407, Movants KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc. and Halliburton Company (collectively "Movants"), respectfully submit this memorandum in support of their Motion for transfer of thirteen pending federal cases arising from battlefield waste disposal in Iraq and Afghanistan to the Honorable Roger W. Titus, U.S. District Judge for the District of Maryland, for coordinated or consolidated pretrial proceedings.

The plaintiffs in the Pending Actions, who are all represented by the same Washington, D.C.-based counsel, Burke O'Neil LLC, have indicated that they are amenable to pretrial

RECEIVED
CLERK'S OFFICE
2009 JUN 10 P 2:19
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

consolidation of their claims, as well as MDL consolidation of similar federal cases that plaintiffs' counsel has indicated will be filed in the future.

## INTRODUCTION

Over the past six months, thirteen nearly-identical, multi-plaintiff, multinational class actions have been filed against the Movants in state and federal courts in Maryland, Illinois, Minnesota, Missouri, California, New York, Alaska, Wyoming, Georgia, North Carolina, Alabama and Texas (the "Pending Actions"). Two of the actions were filed in federal court, and the remaining eleven were originally filed in state court and removed to federal courts. Actions are now pending in thirteen separate federal districts.[1]

All thirteen of the Pending Actions allege that Movants are contractors assisting in the U.S. Government's war efforts in Iraq and Afghanistan under the Logistics Civil Augmentation Program Contract ("LOGCAP"). The gravamen of each of the Pending Actions is the claim that Movants, under contract with the United States to dispose of waste in the Iraq and Afghanistan military theaters, "burned vast quantities of unsorted waste in enormous open air burn pits" without appropriate safety controls. (*See e.g.*, Complaint in *Lackey v. KBR, Inc.* ¶¶ 12-13.)[2]

---

[1] As set forth in more detail in the Schedule of Pending Battlefield Waste Disposal Actions (Exhibit A), the Pending Actions are *Atkinson, et al. v. KBR, Inc.*, No. 1:09-CV-00513 (W.D.N.Y.); *Auw, et al. v. KBR, Inc.*, No. 3:09-CV-01167 (S.D. Cal.); *Bittel, et al. v. KBR, Inc.*, No. 3:09-CV-05041 (W.D. Mo.); *Brister, et al. v. KBR, Inc.*, No. 3:09-CV-00097 (D. Alaska); *Cain, et al. v. KBR, Inc., No.* 5:09-CV-00435 (W.D. Tex.); *Eller, et al. v. KBR, Inc.*, No. 4:08-CV-03495 (S. D. Tex.); *Guilmette, et al. v. KBR, Inc.*, No. 1:09-CV-00507 (M.D. Ala.); *Lackey, et al. v. KBR, Inc.*, No. 1:09-CV-03262 (N.D. Ill.); *Massman, et al. v. KBR, Inc.*, No. 2:09-CV-00117 (D. Wyo.); *Metzgar, et al. v. KBR, Inc.*, No. 8:09-CV-00744 (D. Md.); *Moore, et al. v. KBR, Inc.*, No. 4:09-CV-00097 (S.D. Ga.); *Ochs, et al. v. KBR, Inc.*, No. 5:09-CV-00237 (E.D.N.C.); *Olson, et al. v. KBR, Inc.*, No. 0:09-CV-01261 (D. Minn.).

[2] Movants expressly reserve all defenses to plaintiffs' claims, including all issues of personal and subject matter jurisdiction. In particular, Movants reserve their arguments that several of Movants are inappropriately named in the pending claims, as they are not parties to the

*(footnote continued on next page)*

(Attached in Exhibit A). Plaintiffs allege this conduct began in 2004 and "continues unabated to date." (*Id.* ¶ 13.). Two of the Pending Actions, the *Metzgar* case pending in the District of Maryland and the *Eller* case pending in the Southern District of Texas, contain additional claims that the Movants did not properly treat water and/or provided substandard food in Iraq. *See Metzgar Compl.* ¶¶ 23-33 (water claims); *Eller Compl.* ¶¶ 16-26 (water claims); *id.* ¶¶ 28-39 (food claims). Notwithstanding these additional claims, the *Eller* and *Metzgar* complaints contain virtually identical allegations of injuries related to burn pit activities and arise from the same set of facts and contractual obligations as the other Pending Actions.[3]

According to plaintiffs, "[e]very type of waste imaginable" was burned in the pits, including "biohazard materials," used medical supplies, paints, solvents, asbestos insulation,

---

government contracts at issue here. In responding to the allegations in the Pending Actions, Movants do not concede in any way their completeness or accuracy.

[3] For example, the *Metzgar* plaintiffs seek medical monitoring due to "exposure to contaminated water **and** heavy, toxic smoke." *Compare Metzgar Compl.* ¶ 47 to *Lackey Compl.* ¶ 24 (seeking monitoring for exposure to "thick toxic smoke.") (emphasis added); *see also Metzgar Compl.* ¶ 43 (named class plaintiff alleges injuries not only from tainted water, but also from respiratory infections from burn pits).

In addition, many if not most of the injuries claimed in the Pending Actions are alleged to have occurred at the same military bases. For example, the *Eller* and *Metzgar* plaintiffs allege (as do other plaintiffs) that many of their injuries were sustained at Balad Air Force Base in Iraq. *Compare Eller* ¶ 41 and *Metzgar* ¶ 40 to *Lackey* ¶ 14.

Notably, all of the alleged injuries in all of the Pending Actions relate to waste disposal, water, and food supplied under the LOGCAP contract. For example, under the Planning Requirements section of the LOGCAP Base Contract, the Movants are required to provide general plans for waste disposal, water, and food. *See* LOGCAP Contract, Section 2.0, Planning Requirements (subsections 2.2.6.8 (waste disposal), 2.2.6.7 (water), and 2.2.6.7.1 (food)). Indeed, several of the Task Orders categorize waste disposal, water, and food under "Base Life Support." *See, e.g.,* Task Order 139 (requiring Non-Hazardous Solid Waste Management and Disposal; Ablution Units; Dining Facility Operations); *see also, e.g.,* Task Order 159 (requiring Non-Hazardous Solid Waste Management and Disposal; Ablution Units; Dining Facility Operations). Thus, there is a common factual backdrop for all of the plaintiffs' claims.

items containing pesticides, dangerous chemicals, and "hundreds of thousands of plastic water bottles." (*Id.* ¶ 13.) Plaintiffs allege the burn pits "create[d] hazardous conditions for American soldiers and contractors," and that Defendants' actions "jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as the thousands of contractor employees supporting them." (*Id.* ¶¶ 16-18.) These claims are repeated essentially verbatim in each of the Pending Actions. *See Guilmette Compl.* ¶¶ 15-17 (same); *Moore Compl.* ¶¶ 14-16 (same); *Olson Compl.* ¶¶ 15-17 (same); *Atkinson Compl.* ¶¶ 19-20 (same); *Auw Compl.* ¶¶ 16-18 (same); *Bittel Compl.* ¶¶ 15-17 (same); *Brister Compl.* ¶¶ 16-18 (same); *Cain Compl.* ¶¶ 20-22 (same); *Eller Compl.* ¶¶ 42-45; *Massman Compl.* ¶¶ 16-17 (same); *Metzgar Compl.* ¶ 36; *Ochs Compl.* ¶¶ 21-23 (same).

In the Pending Actions, the named class plaintiffs make individual allegations of injury, universally claiming that exposure to smoke and fumes from the "burn pits" operated by the Movants caused respiratory and other physical injuries, (*See, e.g.*, Lackey Compl. ¶¶ 23-24), and also alleging severe emotional distress from the alleged exposure to hazardous smoke and fumes. (*See, e.g., id.* ¶ 26.)

The named plaintiffs in each of the Pending Actions also make claims on behalf of purported plaintiffs' classes, alleging that "many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes." (*Id.* ¶ 26.) The named plaintiffs seek certification of a class consisting of persons who 1) "were exposed to the actions of Defendants" in Iraq or Afghanistan since 2004; and 2) "have suffered, or have a basis for fear that they may in the future suffer, physical injury as a result." (*Id.* ¶ 33.)

In summary, the Pending Actions present virtually identical factual allegations regarding burn pits, and identical or overlapping class definitions that are national, or even international, in scope. Because transfer under 28 U.S.C. § 1407 would be most convenient for the parties and would promote the just, efficient, and consistent conduct of these complex claims, Movants respectfully request that the Panel transfer the cases to the United States District Court for the District of Maryland for coordinated or consolidated pretrial proceedings.[4]

To date, there has been little substantive activity in any of the Pending Actions. There have been no depositions taken in any case, and only minimal document discovery in one case. Under the Panel's decisions, this early date would be the most appropriate time to transfer these actions for coordinated or consolidated pretrial proceedings. *See, e.g.*, *In re Texas Roadhouse Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 542 F. Supp. 2d 1370, 1371 (J.P.M.L. 2008) (centralization is appropriate when individual actions are "in their early stages."); *see also In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 476 F. Supp. 445, 452 (J.P.M.L. 1979) (consolidation at the earliest possible date is beneficial).

## ARGUMENT

### A. Consolidation Or Coordination In A Single District Is Appropriate

Section 1407(a) specifies that the Panel may transfer for pretrial coordination or consolidation two or more civil cases upon a determination that (1) the cases "involve[ ] one or more common questions of fact;" (2) the transfers would further "the convenience of parties and witnesses;" and (3) the transfers "will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). Because the central allegations of the Pending Actions are premised upon

[4] Notably, both lead counsel for the plaintiffs, Burke O'Neil LLC, and national defense counsel for Movants, McKenna Long & Aldridge LLP, are located in Washington, D.C. near the District of Maryland.

virtually identical factual allegations and identical or overlapping class allegations regarding burn pit activity (and water and food claims) in Iraq and Afghanistan, transfer under Section 1407 and coordination or consolidation before one district court will serve the convenience of the parties and witnesses, and promote the just and efficient conduct of the actions. Consolidation will avoid inconsistent pretrial rulings, including rulings on class certification and on the specialized defenses available to Movants including (but not limited to) the government contractor defense, the political question doctrine, and the *Daubert* standards. Because the Pending Actions involve complex political and military issues, including government battlefield operations and state secrets, consolidation would be particularly beneficial.

**1. The Actions are Premised on Identical Factual Allegations**

The presence of common questions of fact is the "litmus test" for transferability and coordination under §1407. *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979); *see also In re Travel Agent Comm'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) (nuances among claims will not negate the existence of common questions of fact). The presence of common questions is presumed where, as here, "two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events." *In re Air West Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974).

The Pending Actions clearly meet this standard. Indeed, in each of the Pending Actions plaintiffs' counsel has inserted essentially identical "burn pit" allegations against each of the Movants. All of the Pending Actions contain central claims based on the alleged "burn pit" activities of the four Movants in Iraq, and twelve of the thirteen raise essentially identical allegations regarding the operation of burn pits in Afghanistan. *See Lackey Compl.* ¶¶ 12-19 (alleging that Movants failed properly to handle and incinerate waste in Afghanistan and Iraq); *Guilmette Compl.* ¶¶ 10-18 (same); *Moore Compl.* ¶¶ 10-17 (same); *Olson Compl.* ¶¶ 10-18

(same); *Atkinson Compl.* ¶¶ 14-21 (same); *Auw Compl.* ¶¶ 11-19 (same); *Bittel Compl.* ¶¶ 10-18 (same); *Brister Compl.* ¶¶ 11-19 (same); *Cain Compl.* ¶¶ 15-23 (same); *Eller Compl.* ¶¶ 40-45 (same); *Massman Compl.* ¶¶ 11-18 (same); *Metzgar Compl.* ¶¶ 34-40 (same regarding burn pits in Iraq); *Ochs Compl.* ¶¶ 16-24 (same).

Likewise, the plaintiffs in all Pending Actions allege that the Movants' misconduct physically harmed the plaintiffs. *See Lackey Compl.* ¶¶ 20-26; *Guilmette Compl.* ¶ 19-25 (same); *Moore Compl.* ¶ 18-23 (same); *Olson Compl.* ¶ 19-25 (same); *Atkinson Compl.* ¶ 22-32 (same); *Auw Compl.* ¶ 20-26 (same); *Bittel Compl.* ¶ 19-26 (same); *Brister Compl.* ¶ 20-31 (same); *Cain Compl.* ¶ 24-33 (same); *Eller Compl.* ¶ 46-50 (same); *Massman Compl.* ¶ 19-24 (same); *Metzgar Compl.* ¶ 41-47 (same); *Ochs Compl.* ¶ 25-36 (same).[5]

Complaints predicated upon similar factual allegations are particularly appropriate for consolidation. *In re St. Jude Med., Inc., Silzone Heart Valves Prods. Liab. Litig.*, Docket No. 1396, 2001 U.S. Dist. LEXIS 5226, at *2-*3 (J.P.M.L. April 18, 2001) (Section 1407 transfer appropriate where the actions "are brought as class actions . . . and arise from the same factual milieu").

[5] Of course, this is not to say that there are "typical" class claims. Rather, the claims occur in the context of two separate wars in two separate countries (*i.e.*, Afghanistan and Iraq), over various years, involving injury to vastly different categories of alleged victims (soldiers, contractor employees, nationals of many countries). The claims involve different allegations of wrongdoing (negligence, battery, intentional and negligent infliction of emotional distress, outrage, etc.), and widely varied alleged injuries (cancer, wrongful death, depression, post traumatic stress disorder, sleep apnea, multiple chemical sensitivity, etc.) at dozens of different sites that operated in substantially different times under substantially different management and under varying strategic conditions. It is true, however, that discovery of these matters will address similar information; *i.e.*, operation of burn pits in the war theatres of Afghanistan and Iraq.

### 2. Transfer and Coordination or Consolidation Would Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Actions.

Coordination or consolidation of the Pending Cases would serve the "primary" interest of judicial efficiency. *See* 28 U.S.C. 1407(a); *In re Tobacco/Governmental Health Care Costs Litig.*, 76 F. Supp. 2d 5 (D.D.C. 1999) (key factor in consolidation is promotion of just and efficient conduct of the litigation); *In re Phenylpropanolamine Prods. Liab. Litig.*, No. MDL 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004) (MDL should "maximize efficiency and fairness" by minimizing the number of rulings required and resolving discrepancies). Much of the discovery in the Pending Actions will inevitably be duplicative, as, with only two exceptions, all of the injuries are alleged to have occurred as a result of operation of "burn pits" in Iraq and Afghanistan.[6] Although this is an extraordinarily broad subject, the gravamen of each Pending Action is that the Movants, as government contractors in the War Zones of Iraq and/or Afghanistan, negligently operated government-mandated "burn pits." Thus, the discovery for each Pending Action is certain to include the contracts under which the burn pits were operated, documents relating to their operations, government records regarding the establishment and management of the burn pits, and testimony from contractor employees and military and government officials involved in the management and oversight of the burn pit operations. In sum, evidence and testimony in the Pending Actions is likely to overlap almost completely.

The same is true regarding discovery required from plaintiffs. The class allegations in the Pending Actions are essentially identical, as are the demands, including the demand for

---

[6] As noted above, plaintiffs in two cases, *Metzgar* and *Eller*, also allege injury from allegedly impure water and/or food supplied by Movants in Iraq. However, those complaints also raise virtually identical allegations of injuries related to burn pit activities and arise from the same set of facts and contractual obligations as the other Pending Actions.

disgorgement of the monies paid to operate the burn pits. *See e.g., Lackey Compl.* ¶ 12, Prayer for Relief (plaintiffs seek exemplary damages "in an amount sufficient to strip Defendants of all of the revenue and profits earned" from an alleged pattern of wanton and outrageous misconduct). Although some of the allegations of the individual class plaintiffs vary, the proofs of common injuries, such as alleged respiratory illnesses, will be essentially identical.

Finally, Movants anticipate that key government and military personnel will be required to testify as to the government's control over the Movants' actions, including the military and strategic considerations that provided the basis of their directions to the Movants. Thus, it makes little sense for discovery in the thirteen Pending Cases to proceed duplicatively, inefficiently and potentially inconsistently, and for the same military and civilian government personnel to be subjected to multiple requests for information, multiple subpoenas, and multiple depositions. Even more crucially, having identical legal issues addressed by separate district courts would raise a severe risk of inconsistent judgments, not only on the parties' claims, but also on key defenses such as justiciability of political questions or the application of the government contractor defense to battlefield support contracts.

In sum, a single court should handle discovery proceedings in the Pending Cases, as they involve the same defendants, the same factual background, co-extensive time periods, and substantially similar evidence. *See In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F. Supp. 2d 1372, 1373 (J.P.M.L. 2009) (consolidation appropriate to avoid overlapping and duplicative discovery); *see also In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (Section 1407 transfer ordered to prevent duplication of discovery); *In re "Factor VIII or IX Concentrate Blood Prods.", Prods. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) (ordering consolidation to reduce duplicative discovery,

prevent inconsistent pretrial rulings and conserve resources of litigants and court); *see also In re Temporomandibular Joint (TMJ) Implants*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) (same).

### 3. The Need for Uniform Class Treatment Warrants Consolidated MDL Treatment

Movants also believe it would be efficient for class claims in the Pending Actions to be determined in one experienced forum. *See, e.g., In Re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 404, 417 (E.D.N.Y. 2004) (consolidation of class matters appropriate to "prevent inconsistent rulings and to promote judicial efficiency"); *See In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (consolidation "appropriate, if not necessary, where the possibility of inconsistent class determinations exists."); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (consolidation of class claims is especially useful, as "[i]t is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest.").

Each of the named plaintiffs in the thirteen Pending Actions purports to represent an essentially identical, extraordinarily broad class.[7] There is much efficiency and consistency to be gained if these multiple claims were addressed by a single, experienced court, and a correspondingly great risk if multiple courts were to issue inconsistent determinations of the rights of putative class members, or order inconsistent class relief. This risk is particularly troublesome here, as the Pending Actions have broad ramifications for military readiness, review

[7] The typical request is that the court certify a class consisting of at least 100,000 individuals who "were exposed to the actions of Defendants" in Iraq or Afghanistan since 2004 and "have suffered, or have a basis for fear that they may in the future suffer, physical injury as a result." (*Lackey Compl.* ¶ 33.) The other Pending Actions have identical or substantially identical class definitions. *See Guilmette Compl.* ¶ 31 (same); *Moore Compl.* ¶ 29 (same); *Olson Compl.* ¶ 31 (same); *Atkinson Compl.* ¶ 38 (same); *Auw Compl.* ¶ 32 (same); *Bittel Compl.* ¶ 32 (same); *Brister Compl.* ¶ 37 (same); *Cain Compl.* ¶ 39 (same); *Eller Compl.* ¶ 15 (same); *Massman Compl.* ¶ 30 (same); *Metzgar Compl.* ¶ 21 (same); *Ochs Compl.* ¶ 42 (same).

of discretionary decisions of military and civilian officials, national security, and international affairs.

**4. No Parties Will Be Prejudiced by Consolidation of The Pending Actions Before a Single Court**

While consolidation will assist in the goal of efficient discovery for all parties, this goal will be accomplished without prejudice to the existing plaintiffs. Indeed, they are likely to benefit from the efficiencies and cost savings that will result from coordination of their cases with similar actions. This is particularly true as all of the plaintiffs are represented by the same law firm, Burke O'Neil LLC in Washington, D.C. and Movants are represented by national defense counsel McKenna Long & Aldridge LLP in Washington, D.C. The named plaintiffs could be deposed in their home states with their cases remanded for trial, if necessary, at an appropriate time.

**B. The District of Maryland Is The Most Appropriate Transferee Forum And Judge Roger W. Titus Is The Most Appropriate Transferee Judge**

The Pending Actions should be transferred to Judge Roger W. Titus of the District of Maryland. The District of Maryland, which has significant experience in MDL actions, is located near the Pentagon and key military and government witnesses and documents. The District is served by three major airports and is readily accessible to the parties in the thirteen Pending Actions, which range geographically from Alaska to Alabama, and from Southern California to Northern New York.

Because the Baltimore-Washington Corridor is a political, military, and transportation center, the District of Maryland offers easy access to witnesses from around the country and around the world. It seems inevitable that witnesses and much evidence will have to come from the war zones in Iraq and Afghanistan where all of the Movants' alleged misconduct is said to have taken place. The testimony and documentary evidence of military officers and civilian

officials based in Washington, D.C., the Pentagon, and Maryland, as well as Iraq and Afghanistan, will also be crucial to full discovery in these cases, and is most efficiently addressed in the District of Maryland. When considered in conjunction with the District's significant MDL experience and highly-efficient and relatively unburdened docket, the District of Maryland is the most appropriate venue for consolidation of the Pending Actions.

**1. The District of Maryland is Readily Accessible to the Parties and Located Near Key Witnesses and Pertinent Documents**

Because the parties and witnesses in the Pending Actions are dispersed throughout the United States and the world, it is relevant that the District of Maryland is served by three major airports (Dulles International Airport, Baltimore-Washington International Airport, and Ronald Reagan National Airport), allowing parties and witnesses to travel to and from the District with relative ease. In addition, the District of Maryland is well served by convenient regional transit, trains, and roads. Further, as previously noted, both lead counsel for plaintiffs and lead counsel for Movants are located in nearby Washington, D.C. As the Panel has observed on several occasions, the District of Maryland is an appropriate transferee court in nationwide litigations because it is located in a conveniently accessible, metropolitan district. *See In re Protegen Sling and Vesica Sys. Prod. Liab. Litig.*, Nos. 1387, 5:00cv00343HLJ, 2001 WL 34131354 (J.P.M.L. Feb. 23, 2001); *In re Microsoft Corp. Windows Operating Sys. Antitrust Litig.*, No. 1332, 99-76056, 2000 WL 34448877 (J.P.M.L. Apr. 25, 2000) (same). As the Panel has noted repeatedly, the accessibility of a particular location is an important consideration in determining the appropriate district for consolidation of a nationwide litigation. *See, e.g., In re Traysol Prod. Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (in nationwide litigation, consolidation is appropriate in an "accessible metropolitan location"); *see also In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L. 2005) (same).

### 2. Maryland's Proximity to Washington, D.C., the Pentagon, and Movants' Virginia Offices Support Consolidation in Maryland.

Because the Pending Actions are inextricably linked to Movants' contracts with the U.S. Government, key witnesses will include military officers and civilian officials located in Maryland, Washington, D.C. and Northern Virginia (the Pentagon). Critical documents and evidence also will be located at nearby government and military facilities, the plaintiff's and Movant's attorney's D.C. offices, and at the Movants' substantial offices in Northern Virginia. As the Panel has noted, the District of Maryland is an appropriate location for consolidation where the pending actions relate to the U.S. Government. *See In re Practice of Naturopathy Litig.*, 434 F. Supp. 1240 (J.P.M.L. 1977) (consolidating in Maryland where the named defendants were all federal entities); *see also In re Cruciferous Sprout Patent Litig.*, No. 1388, 2001 WL 34834424 (J.P.M.L. Feb. 7, 2001) (consolidating patent action in the District of Maryland because witnesses and documents were likely to be located nearby).

### 3. The District of Maryland's Efficient Docket Will Not Be Overburdened By the Pending Actions.

The District of Maryland's docket is efficient, and is not overburdened. In fact, it is one of the fastest dockets in the nation, particularly in comparison to other districts with significant MDL experience where Pending Actions are sited. According to the Administrative Office of U.S. Courts, the District of Maryland had only 3,723 pending cases in the 12-month period ending on September 30, 2008. *See* U.S. District Court - Judicial Caseload Profile for the District of Maryland (Exhibit B). Of the "Pending Action" districts with significant MDL experience, Maryland had one of the lowest number of pending actions per judgeship for the same time period. *Id.*

Notably, while the District of Maryland currently has seven MDLs on its docket, only two involve more than 30 individual cases.[8] In that regard, the Panel has observed that the District is equipped with the resources to handle complex dockets involving a large number of individual claims. *See In re Protegen Sling*, 2001 WL 34131354; *In re Microsoft Corp. Windows Operating Sys.*, 2000 WL 34448877; *see also In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (consolidating 429 individual actions in the District of Maryland due to its "capacity and experience to steer [the] litigation on a prudent course.").

In 2008, the median disposition time for civil cases in the District of Maryland was the twelfth fastest in the United States out of 94 U.S. District Courts, providing another strong reason for selecting it as the transferee forum. *See In re AT&T Corp. Sec. Litig.*, 2001 WL 34834425, at *1 (J.P.M.L. 2001) (selecting district on the basis that "actions pending there are proceeding apace"); *see also In re Amtel, Inc. Sec. Litig.*, 447 F. Supp. 466, 468 (J.P.M.L. 1978) (comparison of civil action dockets is an appropriate factor in choosing a transferee court).

**4. Judge Roger W. Titus is the Most Appropriate Judge to Preside Over the Litigation.**

Judge Titus has extensive judicial experience, having served on the federal bench since 2003. He is personally experienced in MDL management as the appointed judge for *In re Michelin North America, Inc., PAX System Marketing and Sales Practices Litigation*, MDL-1911, a small marketing and sales practices MDL. In addition, the District of Maryland, which currently efficiently manages seven MDLs and has experience in a wide variety of complex consolidated litigations, including antitrust, investment, product liability, consumer, and

---

[8] As of March 10, 2009, *In re Janus Mutual Funds Investment Litigation*, MDL-1586 consisted of 423 pending actions and *In re Royal Ahold N.V. Securities & "ERISA" Litigation*, MDL-1539 consisted of 37 pending actions.

securities matters, is experienced at presiding over multidistrict litigation, and Judge Titus would be able to draw upon the extensive experience of his colleagues.

Judge Titus's efficiency in managing his docket is another positive factor. In 2008, Judge Titus had 419 initiated dockets, only slightly more than the 400 new cases per year filed before the average district court judge.[9] In addition less than one third of Judge Titus' cases were criminal cases subject to "speedy trial" demands.

Finally, because the *Metzgar* Action was the second Pending Action filed, and was filed several months before most of the other complaints, Judge Titus has already had some opportunity to become acquainted with the issues raised in the Pending Actions. *See In re Tyson Foods, Inc. Chicken Raised Without Antibiotics Consumer Litig.*, 582 F. Supp. 2d 1378 (J.P.M.L. 2008) (consolidating actions before judge already familiar with the litigation); *see also In re Protegen Sling*, 2001 WL 34131354 (same); *In re Microsoft Corp. Windows Operating Sys.*, 2000 WL 34448877 (same). Moreover, the *Metzgar* Complaint is one of the broadest complaints filed to date, and Judge Titus has had the opportunity to become familiar with the breadth of claims in the Pending Actions. *See In re Michelin North Am., Inc.*, 536 F. Supp. 2d 1365 (J.P.M.L. 2008) (consolidating actions before Judge Titus where the wave of class actions began in Maryland and Judge Titus was familiar with the issues).

## CONCLUSION

Transfer for coordination or consolidation of the pending actions at this time, before discovery has commenced in the majority of the cases, will serve the convenience of the parties and witnesses, promote the just and efficient conduct of the litigation, and prevent inconsistent

---

[9] *See* Frequently Asked Questions section on the Administrative Office of U.S. Courts web site, available at http://www.uscourts.gov/faq.html, last visited June 3, 2009.

rulings. The District of Maryland is the most appropriate transferee forum. Accordingly, the Movants respectfully requests that the Panel transfer the pending Battlefield Waste Disposal Litigation cases to Judge Titus of the District of Maryland for coordinated or consolidated pretrial proceedings.

DATED: June 10, 2009

Respectfully submitted,

Ray M. Aragon by [illegible] w/permission

Raymond B. Biagini
Ray M. Aragon
Bikram Bandy
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500
Fax: (202) 496-7756

Counsel for Movants KBR, Inc.,
Kellogg Brown & Root LLC,
Kellogg Brown & Root Services, Inc.
and Halliburton Company

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 12 2009

FILED
CLERK'S OFFICE

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 10, 2009, I caused a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF TRANSFER AND COORDINATION OR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407 to be sent via first class mail to the individuals identified on the attached Proof of Service.

Bikram Bandy

RECEIVED
CLERK'S OFFICE
2009 JUN 10 P 2: 21
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 12 2009

FILED
CLERK'S OFFICE

**Before the Judicial Panel on Multidistrict Litigation**
**MDL-______- In re Battlefield Waste Disposal Liability Litigation**

**SCHEDULE OF ACTIONS**

| Case Caption | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:**<br>Richard Ronald Guilmette, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root Services, Inc.; Kellogg, Brown & Root LLC; Halliburton Co. | M.D. Alabama | 1:09-cv-00507 | Wallace Capel, Jr. |
| **Plaintiffs:**<br>William G. Brister, Jr., Henry J. O'Neill, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root Services, Inc.; Kellogg, Brown & Root LLC; Halliburton Co. | D. Alaska | 3:09-cv-00097 | Ralph R. Beistline |
| **Plaintiffs:**<br>Michael Auw, Cory Casalegno, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root Services, Inc.; Kellogg, Brown & Root LLC; Halliburton Co. | S.D. California | 3:09-cv-01167 | James Lorenz |

RECEIVED
CLERK'S OFFICE
2009 JUN 10 P 2:21
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

| | | | |
|---|---|---|---|
| **Plaintiffs:**<br>Michael Douglas Moore, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root Services, Inc.; Kellogg, Brown & Root LLC; Halliburton Co. | S.D. Georgia | 4:09-cv-00097 | B. Avant Edenfield |
| **Plaintiffs:**<br>David U. Lackey, Randall L. Robinson, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root LLC; Kellogg, Brown & Root Services, Inc.; Halliburton Co. | N.D. Illinois | 1:09-cv-03262 | David Coar |
| **Plaintiffs:**<br>Alan Metzgar, Paul Parker, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root, LLC; Halliburton Co. | D. Maryland | 8:09-cv-00744 | Roger W. Titus |
| **Plaintiffs:**<br>Dean Guy Olson, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root LLC; Kellogg, Brown & Root Services, Inc.; Halliburton Co. | D. Minnesota | 0:09-cv-01261 | James Rosenbaum |
| **Plaintiffs:**<br>Albert Paul Bittel III, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root Services, Inc.; Kellogg, Brown & Root LLC; Halliburton Co. | W.D. Missouri | 3:09-cv-05041 | John T. Maughmer |
| **Plaintiffs:**<br>Fred Atkinson, Jr.; Robyn Sachs, personal representative of Christopher Sachs, deceased; Jennifer Montijo; Steve A. Flowers; John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root | W.D. New York | 1:09-cv-513 | William Skretny |

| | | | |
|---|---|---|---|
| LLC; Kellogg, Brown & Root Services, Inc.; Halliburton Co. | | | |
| **Plaintiffs:**<br>James Ochs, Melissa Ochs, James Morgan, David Newton, Chris Boggiano, Earl Chavis, Benny Lyle Reynolds, John and Jane Does 1-1000<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root LLC; Kellogg, Brown & Root Services, Inc.; Halliburton Co. | E.D. North Carolina | 5:09-cv-00237 | Terrence Boyle |
| **Plaintiffs:**<br>Joshua Eller, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root, LLC; Halliburton Co. | S.D. Texas | 4:08-cv-03495 | Lynn Hughes |
| **Plaintiffs:**<br>Robert Cain, Craig Henry, Francis Jaeger, David McMenomy, Mark Posz, El Kevin Sar, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root Services, Inc.; Kellogg, Brown & Root LLC; Halliburton Co. | W.D. Texas | 5:09-cv-00435 | Fred Biery |
| **Plaintiffs:**<br>Glenn S. Massman, Wendy L. McBreairty, John and Jane Does 1-1000, and all others similarly situated<br>**Defendants:**<br>KBR, Inc.; Kellogg, Brown & Root Services, Inc.; Kellogg, Brown & Root LLC; Halliburton Co. | D. Wyoming | 2:09-cv-00117 | Alan B. Johnson |

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 12 2009

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:**<br><br>**BATTLEFIELD WASTE DISPOSAL LIABILITY LITIGATION** | **MDL DOCKET NO. _____** |

**PROOF OF SERVICE**

I hereby certify that a copy of the foregoing Motion, Brief, Schedule of Actions and this Proof of Service was served by First Class Mail on June 10, 2009 to the following:

Clerk, Middle District of Alabama
Montgomery, AL

Clerk, District of Alaska
Anchorage, AK

Clerk, Southern District of California
San Diego, CA

Clerk, Southern District of Georgia
Savannah, GA

Clerk, Northern District of Illinois
Chicago, IL

RECEIVED
CLERK'S OFFICE
2009 JUN 10 P 2:21
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

Clerk, District of Maryland
Greenbelt, MD

Clerk, District of Minnesota
Minneapolis, MN

Clerk, Western District of Missouri
Springfield, MO

Clerk, Western District of New York
Buffalo, NY

Clerk, Eastern District of North Carolina
Raleigh, North Carolina

Clerk, Southern District of Texas
Houston, TX

Clerk, Western District of Texas
San Antonio, TX

Clerk, District of Wyoming
Cheyenne, Wyoming

| **CASE NAME/CASE NUMBER** | **COUNSEL SERVED** |
|---|---|
| **Guilmette v. KBR, Inc.**, M.D. Ala.,<br>1:09-cv-00507 | George W. Walker, III<br>Copeland, Franco, Screws & Gill, PA<br>P.O. Box 347<br>Montgomery, AL 36101-0347<br><br>Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Richard Ronald Guilmette, John and Jane Does 1-1000, and all others similarly situated** |

| CASE NAME/CASE NUMBER | COUNSEL SERVED |
|---|---|
| **Brister v. KBR, Inc.**, D. Alaska, 3:09-cv-00097 | Neil T. O'Donnell<br>Atkinson, Conway & Gagnon<br>420 L Street, Suite 500<br>Anchorage, AK 99501<br><br>Susan L. Burke<br>William T. O'Neil<br>Elizabeth M. Burke<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: William G. Brister, Jr., Henry J. O'Neill, John and Jane Does 1-1000; and all others similarly situated** |
| **Auw v. KBR, Inc.**, S.D. Cal., 3:09-cv-01167 | Susan L. Burke<br>William T. O'Neil<br>Patrick C. O'Brien<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Michael Auw, Cory Casalegno, John and Jane Does 1-1000; and all others similarly situated** |
| **Moore v. KBR, Inc.**, S.D. Ga., 4:09-cv-00097 | Billy N. Jones<br>Jones, Osteen & Jones<br>P.O. Box 800<br>Hinesville, Georgia 31310-0800<br><br>Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Michael Douglas Moore, John and Jane Does 1-1000, and all others similarly situated** |

| CASE NAME/CASE NUMBER | COUNSEL SERVED |
|---|---|
| **Lackey v. KBR, Inc.**, N.D. Ill., 1:09-cv-03262 | J. Bryan Wood<br>The Law Office of J. Bryan Wood<br>53 W. Jackson Blvd, Ste. 660<br>Chicago, IL 60604<br><br>Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: David U. Lackey, Randall L. Robinson, John and Jane Does 1-1000, and all others similarly situated** |
| **Metzgar v. KBR, Inc.**, D. Md., 8:09-cv-00744 | Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Alan Metzgar, Paul Parker, John and Jane Does 1-1000, and all others similarly situated** |
| **Olson v. KBR, Inc.**, D. Minn., 0:09-cv-01261 | Stephen J. Smith<br>Smith, Tollefson & Rahrick<br>108 West Park Square, Suite A<br>P.O. Box 271<br>Owatonna, MN 55060<br><br>Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Dean Guy Olson, John and Jane Does 1-1000, and all others similarly situated** |

| **<u>CASE NAME/CASE NUMBER</u>** | **<u>COUNSEL SERVED</u>** |
|---|---|
| **<u>Bittel v. KBR, Inc.</u>**, W.D. Mo., 3:09-cv-05041 | Edward L. Dowd, Jr.<br>James F. Bennett<br>Megan S. Heinsz<br>7733 Forsyth St., Ste. 1410<br>St. Louis, MO 63105<br><br>Susan L. Burke<br>William T. O'Neil<br>Elizabeth M. Burke<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Albert Paul Bittel III, John and Jane Does 1-1000; and all others similarly situated** |
| **<u>Atkinson v. KBR, Inc.</u>**, W.D.N.Y., 1:09-cv-513 | Genevieve McCormack<br>Susan L. Burke<br>William T. O'Neil<br>Elizabeth M. Burke<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Fred Robert Atkinson, Jr.; Robyn Sachs, personal representative of Christopher Sachs, deceased; Jennifer Montijo; Steven A. Flowers; John and Jane Does 1-1000; and all others similarly situated** |

| CASE NAME/CASE NUMBER | COUNSEL SERVED |
|---|---|
| **Ochs v. KBR, Inc.**, E.D.N.C.,<br>5:09-cv-00237 | John S. Austin<br>The Law Offices of John Austin, PLLC<br>P.O. Box 6580<br>300 West Millbrook Road, Suite 202<br>Raleigh, NC 27609<br><br>Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: James Ochs, Melissa Ochs, James Morgan, David Newton, Chris Boggiano, Earl Chavis, Benny Lyle Reynolds, John and Jane Does 1-1000, and all others similarly situated** |
| **Eller v. KBR, Inc.**, S.D. Tex.,<br>4:08-cv-03495 | Phillip A. Werner<br>David Ayers<br>Werner Ayers, LLP<br>2000 West Loop South, Suite 1550<br>Houston, Texas 77027<br><br>Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Joshua Eller, John and Jane Does 1-1000, and all others similarly situated** |

| CASE NAME/CASE NUMBER | COUNSEL SERVED |
|---|---|
| **Cain v. KBR, Inc.**, W.D. Tex., 5:09-cv-00435 | Phillip A. Werner<br>David Ayers<br>Werner Ayers, LLP<br>2000 West Loop South, Suite 1550<br>Houston, Texas 77027<br><br>Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Robert Cain, Craig Henry, Francis Jaeger, David McMenomy, Mark Posz, El Kevin Sar, John and Jane Does 1-1000, and all others similarly situated** |
| **Massman v. KBR, Inc.**, D. Wyo., 2:09-cv-00117 | Timothy C. Kingston<br>Graves, Miller and Kingston<br>408 W. 23rd Street<br>Cheyenne, WY 82001<br><br>Susan L. Burke<br>William T. O'Neil<br>Burke O'Neil LLC<br>1000 Potomac Street, Suite 150<br>Washington, D.C. 20007<br><br>**Counsel for Plaintiffs: Glenn S. Massman, Wendy L. McBreairty, John and Jane Does 1-1000, and all others similarly situated** |

DATED: June 10, 2009

Respectfully submitted,

Ray M. Aragon by BB w/permission

Raymond B. Biagini
Ray M. Aragon
Bikram Bandy
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006

(202) 496-7500
Fax: (202) 496-7756

Counsel for Movants KBR, Inc.,
Kellogg Brown & Root LLC,
Kellogg Brown & Root Services, Inc.
and Halliburton Company

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 12 2009

FILED
CLERK'S OFFICE

# EXHIBIT A

## Memorandum
## in Support
## of Transfer

RECEIVED
CLERK'S OFFICE
2009 JUN 10 P 2:22
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

ELECTRONICALLY FILED
4/28/2009 11:56 AM
CV-2009-900036.00
CIRCUIT COURT OF
COFFEE COUNTY, ALABAMA
MICKEY COUNTS, CLERK

IN THE CIRCUIT COURT OF ALABAMA
TWELFTH JUDICIAL CIRCUIT
COFFEE COUNTY

| | |
|---|---|
| Richard Ronald Guilmette<br>306 East Silveroak Drive<br>Enterprise, AL 36330<br><br>and all others similarly situated;<br><br>v.<br><br>KBR, Inc.<br>601 Jefferson Street<br>Suite 3400<br>Houston, Texas 77002<br><br>Kellogg, Brown & Root Services, Inc.<br>4100 Clinton Drive<br>Houston, Texas 77020<br><br>Kellogg, Brown & Root LLC<br>505 E. Huntland Dr., Suite 100<br>Austin, Texas 78752<br><br>Halliburton Company<br>5 Houston Center<br>1401 McKinney, Suite 24<br>Houston, Texas 77010 | CASE NUMBER:<br><br><br><br>JURY DEMAND |

COMPLAINT

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., Kellogg Brown and Root Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of

2009 JUN 10 P 2:22
RECEIVED
CLERK'S OFFICE

serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

**PARTIES**

2. Plaintiff Richard Ronald Guilmette, whose address is 306 East Silver Oak Drive, Enterprise, AL 36330, is a U.S. citizen who is a permanent resident of the State of Alabama.

3. Plaintiffs John and Jane Does 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury. The Class includes soldiers and employees of all nationalities who work for government contractors. The Class members are so numerous that joinder of all members of the class is impracticable.

4. Defendant KBR, Inc. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR does business throughout the United States and the rest of the world. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of Alabama and is subject to this Court's jurisdiction pursuant to Al. R. Civ. P. 4.2(b).

5. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100, Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this

action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC regularly transacts business in the State of Alabama and is subject to this Court's jurisdiction pursuant to Al. R. Civ. P. 4.2(b).

6. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of Alabama and is subject to this Court's jurisdiction pursuant to Al. R. Civ. P. 4.2(b).

7. Defendant Halliburton is a publicly traded corporation with offices at 1990 Hays Lane, Woodland, California 95776. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly transacts business in the State of Alabama and is subject to this Court's jurisdiction under Al. R. Civ. P. 4.2(b).

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction over the subject matter of this action pursuant to Alabama Code, Section 12-11-30 (1975).

9. Venue is proper pursuant to the Code of Alabama, Sections 6-3-7(a)(3), 6-3-7(b) and 6-3-7(c).

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

10. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of all waste in a method designed to minimize safety risks, to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

11. Defendants failed to fulfill any of the promises they made to the United States government. Defendants burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

12. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, petroleum-oil-lubricant ("POL") products, metals, hydraulic fluids, munitions boxes, medical waste, biohazard materials including human corpses, latrine waste, medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel in order to make it ignite.

13. As one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The

smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

14. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan operated by Defendants. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

15. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emit dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

16. Defendants operated burn pits that released known carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

17. Defendants knew or should have known that operating open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as thousands of contractor employees supporting them. Numerous reports and articles called Defendants' attention to the known hazards of operating large open air burn pits.

18. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use all available incinerators, or to install additional incinerators, in order to achieve a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

19. Defendants' misconduct physically harmed the Plaintiff and the Class Members.

20. Plaintiff Richard Ronald Guilmette was deployed to Afghanistan with the U.S. Army and was stationed at Kandahar from March 31, 2004 to March 31, 2005. For a year, Plaintiff Guilmette lived in a tent close to a burn pit. Prevailing winds blew the thick black smoke and toxic fumes from the burn pit over the camp, and the smoke hung in the tent where Plaintiff Guilmette lived and slept. He noted the constant presence of a horrible smell of burning plastics.

21. As a direct result of exposure to toxic emissions from the burn pit, in July 2004, Plaintiff Giulmette developed severe chest pain. Thereafter, also as a direct result of exposure to the toxic emissions from the burn pit, Plaintiff Giulmette began to experience extreme, uncontrollable diarrhea, which greatly embarrassed and concerned him, and a constant cough with black phlegm and mucus.

22. As a direct result of exposure to toxic emissions from the burn pit, Plaintiff Guilmette has suffered from asthma, sleep apnea, and severe, debilitating migraine headaches. He is dependent upon a breathing machine. He has been treated with high doses of steroids, but still suffers from low pulmonary function. He has been treated aggressively for his migraine headaches but continues to frequently be

incapacitated from them. Plaintiff Guilmette has lost mental functioning and experienced significant memory loss. He is currently on disability for mental impairment. Plaintiff Guilmette's conditions are a direct result of his exposure to the toxic emissions from the burn pits.

23. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

24. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

25. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes, and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

26. Plaintiffs satisfy all of the conditions for a class action under Alabama law. Al. R. Civ. P. 23.

27. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

28. This action should be certified as a class action pursuant to Alabama Rule of Civil Procedure 23(b)(1)(A) because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members that would establish incompatible standards of conduct for the defendants.

29. This action should be certified as a class action pursuant to Alabama Rule of Civil Procedure 9-123(b)(1)(B) because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

30. This action should be certified as a class action pursuant to Alabama Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

31. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

**COUNT ONE: NEGLIGENCE**

32. Paragraphs 1-31 are hereby incorporated by reference.

33. Defendants owed a duty to safely and properly dispose of various forms of waste, in order to protect others against unreasonable risks of harm.

34. Defendants negligently failed to safely and properly dispose of waste.

35. Plaintiffs suffered harm from prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

36. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

37. All allegations and facts in paragraphs 1-36 are hereby incorporated by reference.

38. Defendants contaminated the air by burning unsafe substances in an open burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires, that the contact would be offensive to Plaintiffs, and that Plaintiffs would not consent to such contact.

39. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

40. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and offensive contact with hazardous substances.

**COUNT THREE: NUISANCE**

41. All allegations and facts in paragraphs 1-40 are hereby incorporated by reference.

42. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned on open air burn pits.

43. Defendants substantially and unreasonable interfered with those rights when they improperly operated open air burn pits.

44. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

45. Defendants' actions are the proximate cause of Plaintiffs injuries.

**COUNT FOUR: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

46. All allegations and facts in paragraphs 1-45 are hereby incorporated by reference.

47. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

48. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

49. Defendants' conduct in operating the burn pits was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

50. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

51. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases, and in some cases have died from the physical injuries and diseases, caused by the exposure to hazardous smoke and fumes.

**COUNT FIVE: WILFUL AND WANTON CONDUCT**

52. All allegations and facts in paragraphs 1-52 are hereby incorporated by reference.

53. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

54. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

55. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

56. Defendants demonstrated either, a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

**COUNT SIX: NEGLIGENT HIRING, TRAINING AND SUPERVISION**

57. All allegations and facts in paragraphs 1-56 are hereby incorporated by reference.

58. Defendants had a duty to properly train their personnel in safe waste disposal.

59. Defendants failed to implement any of the required training.

60. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

**COUNT SEVEN: BREACH OF DUTY TO WARN**

61. All allegations and facts in paragraphs 1-60 are hereby incorporated by reference.

62. Defendants had a duty to warn United States personnel when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

63. Defendants failed to warn United States personnel of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

**COUNT EIGHT: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES**

64. All allegations and facts in paragraphs 1-62 are hereby incorporated by reference.

65. Defendants entered into contractual agreements with the United States Department of Defense.

66. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

67. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed in these locations, were intended Third Party Beneficiaries of these contracts.

68. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

69. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants' contractual obligations.

70. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, past and future loss of wages, emotional distress, pain and suffering, past and future medical expenses including the need for continued medical treatment and monitoring;

Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants

to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air; ;

Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit; and

Grant such additional and further relief as the Court deems just and proper.

s/ George W. Walker, III
George W. Walker, III (WAL097)

**Counsel for Plaintiff**

OF COUNSEL:

COPELAND, FRANCO, SCREWS & GILL, P.A.
P. O. Box 347
Montgomery, AL 36101-0347
Telephone: (334) 834-1180
Facsimile: (334) 834-3172
Email: walker@copelandfranco.com

Susan L. Burke
William O'Neil
Elizabeth M. Burke
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington, D.C. 20007

Telephone: (202) 232-5504
Facsimile: (202) 232-5513
Email: eburke@burkeoneil.com

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL COUNTS.**

s/ George W. Walker, III
George W. Walker, III (WAL097)

NEIL T. O'DONNELL
ATKINSON, CONWAY & GAGNON
Attorneys for William G. Brister, Jr., Henry J. O'Neill
and All Others Similarly Situated
420 L Street, Suite 500
Anchorage, Alaska 99501-1968
Phone: (907) 276-1700
Fax: (907) 272-2082
nto@acglaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| WILLIAM G. BRISTER, JR., HENRY J. O'NEILL, and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KBR, INC.; KELLOGG, BROWN & ROOT SERVICES, INC.; KELLOGG, BROWN & ROOT LLC; and HALLIBURTON COMPANY,<br><br>Defendants. | Case No. 3:09-cv-_______________ |

**COMPLAINT**

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg, Brown & Root, LLC; KBR, Inc.; Kellogg Brown & Root Services, Inc.; and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of

serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

**PARTIES**

2. Plaintiff William G. Brister, Jr., whose address is 12825 Allison Court, Palmer, Alaska, 99645 is a U.S. citizen who is a permanent resident of the State of Alaska.

3. Plaintiff Henry J. O'Neill, whose address is 3739C Gray Loop, Elmendorf AFB, Alaska 99506, is a U.S. citizen who is a permanent resident of the State of Alaska.

4. Plaintiffs John and Jane Does 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury. The Class includes soldiers and employees of all nationalities who work for government contractors. The Class members are so numerous that joinder of all members of the class is impracticable.

5. Defendant KBR, Inc., is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR does business throughout the United States and the rest of the world. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly

transacts business in the State of Alaska and is subject to this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

6. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100, Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC regularly transacts business in the State of Alaska and has been issued a certificate of authority pursuant to the Alaska Statutes, AS 10.06.705 (2008). Defendant Kellogg, Brown & Root LLC is subject to this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

7. Defendant Kellogg, Brown & Root Services, Inc., is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc., does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc., acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc., regularly transacts business in the State of Alaska and has been issued a certificate of authority pursuant to

the Alaska Statutes, AS 10.06.705 (2008). Defendant Kellogg, Brown & Root Services, Inc., is subject to this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

8. Defendant Halliburton is a publicly traded corporation with headquarters located at 1401 McKinney, Suite 24, Houston, Texas 77010. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly transacts business in the State of Alaska and has been issued a certificate of authority pursuant to the Alaska Statutes, AS 10.06.705 (2008). Defendant Halliburton is subject to this Court's jurisdiction under 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

10. Venue is proper pursuant to 28 U.S.C. § 1391 et seq.

## DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE

11. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of all waste in a method designed to minimize safety risks, to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

12. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

13. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, Styrofoam, paper, wood, rubber, petroleum-oil-lubricating "POL" products, metals, hydraulic fluids, munitions boxes, medical waste, biohazard materials including human corpses, medical supplies used during smallpox inoculations, latrine waste, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds of thousands of plastic water bottles.

14. As just one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

15. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered

## DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS

20. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

21. Plaintiff William G. Brister, Jr., was deployed to Iraq by his employer, Defendant KBR, Inc. He lived and worked in Diwaniya for over two years, deploying three times. In addition, Mr. Brister was temporarily stationed at Camp Scania, and his final duty station was Camp Bucca.

22. Plaintiff Brister was exposed to hazardous smoke, fumes and ash from the Diwaniya burn pit on a constant basis. The first time he saw the smoke plume and inhaled the ash from the burn pit, Mr. Brister thought that Diwaniya had been hit by a chemical weapon attack. During his stay at Camp Scania, Mr. Brister was housed in a flimsy tent located less than 40 yards from the toxic burn pit.

23. As a result of his constant exposure to the hazardous smoke from the burn pits at Diwaniya, Scania and Bucca, Plaintiff Brister experienced burning eyes, sharp pain in his lungs when inhaling and exhaling, lesions inside his nostrils, severe cold symptoms, dizziness, and frequent coughing fits so violent that he lost consciousness. These symptoms have continued unabated to date. He also suffers from chronic upper respiratory congestion and infections, as well as tightness and pressure in his chest.

24. Prior to his deployment, Plaintiff Brister was fit and healthy. After arriving at Diwaniya and since his return from Iraq, Mr. Brister has been suffering from

chronic respiratory illness and distress caused by constant inhalation of the hazardous emissions from the Diwaniya burn pit.

25. Plaintiff Henry J. O'Neill was deployed to Iraq in January 2008 with the 443rd Civil Affairs division of the United States Army. While in Iraq, he was the battalion communications supervisor. Master Sergeant O'Neill was stationed at Camp Speicher, and traveled on monthly supply missions to Balad, where he was also housed. His deployment ended on July 26, 2008.

26. Plaintiff O'Neill endured the smoke, ash and fumes from the burn pit at Camp Speicher on a daily basis. The smell of burning plastic was constant, and the fumes stung his eyes and often made it impossible to complete his work outdoors. During his monthly visits to Balad, Master Sergeant O'Neill was housed in a temporary tent. The emissions from the burn pit at Balad were overwhelming, filling the tent with smoke and choking its inhabitants.

27. As a result of constant exposure to the toxic smoke from the burn pits at Camp Speicher and Balad, Plaintiff O'Neill has suffered from a chronic, debilitating headache syndrome which has escalated to the point that it required hospitalization. In addition, he has experienced significant respiratory difficulty and pain during breathing, which has also required emergency medical attention. Master Sergeant O'Neill has been diagnosed with asthma and sleep apnea, and is dependent upon an inhaler and a breathing machine at night.

28. When Plaintiff O'Neill was deployed, he was healthy. Now, in spite of recently being selected for a promotion by the Army, Plaintiff O'Neill faces a Medical Board review based on the neurological and respiratory ailments he contracted through exposure to toxic smoke from the burn pits at Camp Speicher and Balad. He reasonably fears that he will face a mandatory early retirement and the loss of a complete pension as a result. His symptoms continue unabated.

29. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

30. Plaintiffs are aware that many other U.S. soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

31. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes, and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

32. Plaintiffs satisfy all of the conditions for a class action under federal law.

33. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

34. This action should be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(A) because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the Defendants.

35. This action should be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(B) because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

36. This action should be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

37. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

**COUNT ONE: NEGLIGENCE**

38. Paragraphs 1 – 37 are hereby incorporated by reference.

39. Defendants owed a duty to safely and properly dispose of various forms of waste.

40. Defendants negligently failed to properly dispose of waste.

41. Plaintiffs suffered harm from prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

42. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

43. All allegations and facts in paragraphs 1 – 42 are hereby incorporated by reference.

44. Defendants contaminated the air by burning unsafe substances in an open burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires and that they would not consent to such contact.

45. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

46. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances.

**COUNT THREE: NUISANCE**

47. All allegations and facts in paragraphs 1 – 46 are hereby incorporated by reference.

48. Plaintiffs had a right to be free from irritating and hazardous smoke from an improperly operated open air burn pit and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned on an open air burn pit.

49. Defendants substantially and unreasonably interfered with those rights when they improperly operated open air burn pits.

50. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

51. Defendants' actions are the proximate cause of Plaintiffs' injuries.

**COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

52. All allegations and facts in paragraphs 1-51 are hereby incorporated by reference.

53. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

54. Plaintiffs have suffered physical harm and severe emotional distress due to these injuries.

55. Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

56. Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress.

## COUNT FIVE: OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57. All allegations and facts in paragraphs 1 – 56 are hereby incorporated by reference.

58. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

59. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

60. Defendants' conduct in dumping medical waste in an open burn pit and allowing body parts to be taken, carried and likely eaten by wild dogs was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in

burning hazardous materials in an open air burn pit and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

61. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

62. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

**COUNT SIX: WILLFUL AND WANTON CONDUCT**

63. All allegations and facts in paragraphs 1 – 62 are hereby incorporated by reference.

64. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

65. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

66. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

67. Defendants demonstrated either, a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

## COUNT SEVEN: NEGLIGENT HIRING, TRAINING AND SUPERVISION

68. All allegations and facts in paragraphs 1 – 67 are hereby incorporated by reference.

69. Defendants had a duty to properly train their personnel in safe waste disposal.

70. Defendants failed to implement any of the required training.

71. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

**COUNT EIGHT: BREACH OF DUTY TO WARN**

72. All allegations and facts in paragraphs 1 – 71 are hereby incorporated by reference.

73. Defendants had a duty to warn United States forces when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

74. Defendants failed to warn U.S. Forces of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

**COUNT NINE: MEDICAL MONITORING**

75. All allegations and facts in paragraphs 1 – 74 are hereby incorporated by reference.

76. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

77. This exposure has resulted in serious physical health problems for Plaintiffs.

78. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

79. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

80. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

**COUNT TEN: FUTURE MEDICAL EXPENSES**

81. All allegations and facts in paragraphs 1 – 80 are hereby incorporated by reference.

82. Plaintiffs have been exposed to dangerous levels of unknown hazardous substances in the air as a direct result of the conduct of Defendants.

83. This exposure has resulted in physical health problems for Plaintiffs.

84. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

85. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

86. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**COUNT ELEVEN: BREACH OF CONTRACT:**
**THIRD PARTY BENEFICIARIES**

87. All allegations and facts in paragraphs 1 – 86 are hereby incorporated by reference.

88. Defendants entered into contractual agreements with the United States Department of Defense.

89. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

90. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed in these locations, were intended Third Party Beneficiaries of these contracts.

91. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

92. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants' contractual obligations.

93. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Award Plaintiffs monetary damages in excess of $100,000, exclusive of interest and costs, to compensate each Plaintiff for his or her physical injuries, emotional distress, fear of future disease, and need for continued medical treatment and monitoring;

2. Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air;

3. Award attorneys' fees and costs to Plaintiffs for legal services provided in the pursuit of this suit; and

4. Grant such additional and further relief as the Court deems just and proper.

DATED this 15th day of May, 2009.

ATKINSON, CONWAY & GAGNON
Attorneys for William G. Brister, Jr., Henry J. O'Neill and All Others Similarly Situated

By s/Neil T. O'Donnell
420 L Street, Suite 500
Anchorage, AK 99501
Phone: (907) 276-1700
Fax: (907) 272-2082
E-mail: nto@acglaw.com
ABA No. 8306049

Susan L. Burke
William O'Neil
Elizabeth M. Burke (pro hac vice application forthcoming)
Burke O'Neil LLC
1000 Potomac Street, Suite 150
Washington D.C. 20007
202-232-5504
202-232-5513 (fax)
eburke@burkeoneil.com

Susan L. Burke (Pro Hac Vice motion pending)
William T. O'Neil (Pro Hac Vice motion pending)
Patrick C. O'Brien, SBN 208191
BURKE O'NEIL LLC
1000 Potomac Street, SW, Suite 150
Washington, DC 20007
Telephone: (202) 445-1409
sburke@burkeoneil.com

Attorneys for Plaintiffs,
MICHAEL AUW and CORY CASALEGNO,
and all other similarly situated

FILED
CIVIL BUSINESS OFFICE
CENTRAL DIVISION

2009 APR 29 PM 2:29

SAN DIEGO COUNTY, CA

VIA FAX

**SUPERIOR COURT OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| MICHAEL AUW and CORY CASALEGNO, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KBR, INC.;<br>KELLOGG, BROWN & ROOT SERVICES, INC.;<br>KELLOGG, BROWN & ROOT LLC; and<br>HALLIBURTON COMPANY; and<br>DOES 1-1000, inclusive,<br><br>Defendants. | **CASE NO**37-2009-00089814-CU-PO-CTL<br><br>CASE TYPE: CIVIL<br>JURISDICTION: Over $25,000<br>CLASS ACTION<br><br>**COMPLAINT FOR:**<br><br>**1. Negligence**<br>**2. Battery**<br>**3. Nuisance**<br>**4. Negligent Infliction of Emotional Distress**<br>**5. Outrageous/Intentional Infliction of Emotional Distress**<br>**6. Willful and Wanton Conduct**<br>**7. Negligent Hiring, Training and Supervision**<br>**8. Breach of Duty to Warn**<br>**9. Medical Monitoring**<br>**10. Future Medical Expenses**<br>**11. Breach of Contract; Third Party Beneficiaries** |

Plaintiffs, MICHAEL AUW and CORY CASALEGNO (hereinafter referred to as "Auw", "Casalegno" or "Plaintiffs"), hereby allege as follows:

**PRELIMINARY ALLEGATIONS**

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., KBR

Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

## PARTIES

2. Plaintiff MICHAEL AUW, whose address is P.O. Box 400571, Hesperia, CA, is a U.S. citizen who is a permanent resident of the state of California.

3. Plaintiff CORY CASALEGNO, whose address is 16046 Turtleback Road, San Diego, CA 92127, is a U.S. citizen who is a permanent resident of the state of California.

4. Plaintiffs JOHN and JANE DOES 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury. The Class includes soldiers and employees of all nationalities who work for government contractors. The Class members are so numerous that joinder of all members of the class is impracticable.

5. Defendant KBR, INC. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR does business throughout the United States and the rest of the world. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of California and is subject to this Court's jurisdiction pursuant to California Code of Civil Procedure section 410.10.

6. Defendant KELLOGG, BROWN & ROOT LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100, Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC

regularly transacts business in the State of California and is subject to this Court's jurisdiction pursuant to California Code of Civil Procedure, Section 410.10.

7. Defendant KELLOGG, BROWN & ROOT SERVICES, INC. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the state of California and is subject to this Court's jurisdiction pursuant to California Code of Civil Procedure section 410.10.

8. Defendant HALLIBURTON is a publicly traded corporation with offices at 1990 Hays Lane, Woodland, California 95776. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly transacts business in the state of California and is subject to this Court's jurisdiction under California Code of Civil Procedure section 410.10.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the subject matter of this action pursuant to California Constitution, Article 6, Section 10.

10. Venue is proper pursuant to California Code of Civil Procedure section 395.

## DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE

11. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of all waste in a method designed minimize safety risks, to minimize the

environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

12. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

13. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, petroleum-oil-lubricant ("POL") products, metals, hydraulic fluids, munitions boxes, latrine waste, medical waste, biohazard materials including human corpses, medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel in order to make it ignite.

14. As but one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

15. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

16. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emit dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and

particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

17. Defendants operated burn pits that released known carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

18. Defendants knew or should have known that operating open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as thousands of contractor employees supporting them. Numerous reports and articles called Defendants' attention to the known hazards of operating large open air burn pits.

19. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use all available incinerators, or to install additional incinerators, in order to achieve a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

20. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

21. Plaintiff Michael Auw, a soldier, was deployed to Iraq and was stationed at Balad Air Force Base from April 2004 to October 2005. During that time, Plaintiff Auw was a guard in the guard tower located directly above the burn pit. On a regular basis, the guard tower completely filled with thick black smoke. Plaintiff Auw was regularly exposed to large amounts of smoke, haze, fumes and toxic emissions from the burn pits.

22. As a direct result of exposure to toxic emissions from the burn pit, Plaintiff Auw began suffering from a chronic cough and other respiratory symptoms. As a direct result of exposure to toxic emissions from the burn pit, Plaintiff Auw experienced severe neurological damage. Plaintiff Auw is now completely disabled with permanent severe neurological damage that directly resulted from exposure to toxic emissions from the burn pits.

23. Plaintiff Cory Casalegno was stationed at Balad Air Force Base in Iraq between August 2004 and December 2004. During that time, he was constantly exposed to toxic emissions from the burn pit. As a direct result of the exposure to toxic emissions, Plaintiff Casalegno experienced constant cold-like symptoms, chronic coughing, headaches, muscle aches, sleep disturbances and gastrointestinal distress.

24. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

25. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

26. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes, and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

27. Plaintiffs satisfy all of the conditions for a class action under California law.

28. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

29. This action should be certified as a class action pursuant to California Code of Civil Procedure section 382 because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members that would establish incompatible standards of conduct for the defendants.

30. This action should be certified as a class action pursuant to California Code of Civil Procedure section 382 because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

31. This action should be certified as a class action pursuant to California Code of Civil Procedure section 382 because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

32. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

**FIRST CAUSE OF ACTION**

**(NEGLIGENCE)**

33. Paragraphs 1-32 are hereby incorporated by reference as if set forth in full herein.

34. Defendants owed a duty to safely and properly dispose of various forms of waste.

35. Defendants negligently failed to properly dispose of waste.

36. Plaintiffs suffered harm from prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

37. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**SECOND CAUSE OF ACTION**

**(BATTERY)**

38. All allegations and facts in paragraphs 1-37 are hereby incorporated by reference as if set forth in full herein.

39. Defendants contaminated the air by burning unsafe substances in an open burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires and that they would not consent to such contact.

40. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

41. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances.

**THIRD CAUSE OF ACTION**

**(NUISANCE)**

42. All allegations and facts in paragraphs 1-41 are hereby incorporated by reference as if set forth in full herein.

43. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned in open air burn pits.

44. Defendants substantially and unreasonable interfered with those rights when they improperly operated open air burn pits.

45. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

46. Defendants' actions are the proximate cause of Plaintiffs injuries.

**FOURTH CAUSE OF ACTION**

**(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

47. All allegations and facts in paragraphs 1-46 are hereby incorporated by reference as if set forth in full herein.

48. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

49. Plaintiffs have suffered physical harm and severe emotional distress due to these injuries.

50. Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs'

fears and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

51. Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress.

**FIFTH CAUSE OF ACTION**

**(OUTRAGEOUS/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

52. All allegations and facts in paragraphs 1-51 are hereby incorporated by reference as if set forth in full herein.

53. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

54. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

55. Defendants' conduct in operating the burn pits was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

56. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

57. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and

uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases and in some cases have died from the physical injuries and diseases, caused by the exposure to hazardous smoke and fumes.

**SIXTH CAUSE OF ACTION**

**(WILLFUL AND WANTON CONDUCT)**

58. All allegations and facts in paragraphs 1-57 are hereby incorporated by reference as if set forth in full herein.

59. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

60. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

61. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

62. Defendants demonstrated either, a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

**SEVENTH CAUSE OF ACTION**

**(NEGLIGENT HIRING, TRAINING AND SUPERVISION)**

63. All allegations and facts in paragraphs 1-62 are hereby incorporated by reference as if set forth in full herein.

64. Defendants had a duty to properly train their personnel in safe waste disposal.

65. Defendants failed to implement any of the required training.

66. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

**EIGHTH CAUSE OF ACTION**

**(BREACH OF DUTY TO WARN)**

67. All allegations and facts in paragraphs 1-66 are hereby incorporated by reference as if set forth in full herein.

68. Defendants had a duty to warn United States personnel when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

69. Defendants failed to warn United States personnel of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

**NINTH CAUSE OF ACTION**

**(MEDICAL MONITORING)**

70. All allegations and facts in paragraphs 1-69 are hereby incorporated by reference as if set forth in full herein.

71. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

72. This exposure has resulted in serious physical health problems for Plaintiffs.

73. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

74. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

75. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

76. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

77. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances. Such medical monitoring procedures are reasonably necessary according to contemporary

scientific principals, and these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

**TENTH CAUSE OF ACTION**

**(FUTURE MEDICAL EXPENSES)**

78. All allegations and facts in paragraphs 1-77 are hereby incorporated by reference as if set forth in full herein.

79. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

80. This exposure has resulted in physical health problems for Plaintiffs.

81. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

82. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

83. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**ELEVENTH CAUSE OF ACTION**

**(BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES)**

84. All allegations and facts in paragraphs 1-83 are hereby incorporated by reference as if set forth in full herein.

85. Defendants entered into contractual agreements with the United States Department of Defense.

86. Defendants had a duty under these contracts to dispose of waste, including but not limited to medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

87. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed at these locations, were intended Third Party Beneficiaries of these contracts.

88. Defendants breached their obligations under these contracts by failing to dispose of waste, including but not limited to medical waste, safely and in accordance with the requirements of the contract and military standards.

89. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants' contractual obligations.

90. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, past and future lost wages, emotional distress, past and future medical expenses, fear of future disease, and need for continued medical treatment and monitoring;

2. Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans and other serving and working in Iraq and Afghanistan who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air;

3. Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit;

4. All issues to be tried by jury; and,

5. Grant such additional and further relief as the Court deems just and proper.

///

DATED: April 29, 2009

BURKE O'NEIL LLC

By: [signature]

Susan L. Burke (Pro Hac Vice motion pending)
William T. O'Neil (Pro Hac Vice motion pending)
Patrick C. O'Brien
Attorneys or Plaintiffs,
MICHAEL AUW and CORY CASALEGNO

IN THE STATE COURT OF LIBERTY COUNTY

STATE OF GEORGIA

2009 APR 28 PM 1:11

Michael Douglas Moore
1325 Loblolly Drive
Hinesville, GA 31313

and all others similarly situated;

v.

KBR, Inc.
601 Jefferson Street
Suite 3400
Houston, Texas 77002

Kellogg, Brown & Root Services, Inc.
4100 Clinton Drive
Houston, Texas 77020

Kellogg, Brown & Root LLC
505 E. Huntland Dr., Suite 100
Austin, Texas 78752

Halliburton Company
5 Houston Center
1401 McKinney, Suite 24
Houston, Texas 77010

CASE NUMBER: 09-SV-169

JURY DEMAND

COMPLAINT

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., KBR Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

## PARTIES

2. Plaintiff Michael Douglas Moore, whose address is 1325 Loblolly Drive Hinesville, Georgia 31313, is a U.S. citizen who is a permanent resident of the State of Georgia.

3. Plaintiffs John and Jane Does 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury. The Class includes soldiers and employees of all nationalities who work for government contractors. The Class members are so numerous that joinder of all members of the class is impracticable.

4. Defendant KBR, Inc. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR does business throughout the United States and the rest of the world. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of Georgia and is subject to this Court's jurisdiction pursuant to Ga. Code Ann. § 9-10-91(1).

5. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100, Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root

LLC regularly transacts business in the State of Georgia and is subject to this Court's jurisdiction pursuant to Ga. Code Ann. § 90-10-91(1).

6. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of Georgia and is subject to this Court's jurisdiction pursuant to Ga. Code Ann. § 90-10-91(1).

7. Defendant Halliburton is a publicly traded corporation with offices at 1990 Hays Lane, Woodland, California 95776. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly transacts business in the State of Georgia and is subject to this Court's jurisdiction under Ga. Code Ann. § 90-10-91(1).

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the subject matter of this action pursuant to the Georgia Constitution, Article 6, Section 4, ¶ 1, and Ga. Code Ann. § 15-6-8.

9. Venue is proper pursuant to the Georgia Constitution Article 6, Section 2, ¶ VI, and Ga. Code Ann. §§ 9-10-93 and 14-2-510.

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

10. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of all waste in a method designed minimize safety risks, to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp. They also promised to keep everyone in and near the waste operations safe from physical harms.

11. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

1. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, POL products, metals, hydraulic fluids, munitions boxes, boxes that held U2 depleted rounds, medical waste, biohazard materials including human corpses, medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous

chemicals, and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel in order to make it ignite.

12. As one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

13. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

14. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emit dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

15. Defendants operated burn pits that released known carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

16. Defendants knew or should have known that operating open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and

Afghanistan, as well as thousands of contractor employees supporting them. Numerous reports and articles called Defendants' attention to the known hazards of operating large open air burn pits.

17. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use all available incinerators, or to install additional incinerators, in order to achieve a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

18. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

19. Plaintiff Michael Douglas Moore was deployed to Iraq with the U.S. Army and was stationed at Balad Air Force Base in 2005 and 2006. During that time, Plaintiff Moore's living and working location was near the burn pits and he was exposed to large quantities of thick black smoke and toxic fumes. He developed a chronic, hacking cough and would wake up in the night choking and coughing. His condition deteriorated and he was evacuated from Balad Air Force Base with a diagnosis of post traumatic stress disorder. He was given a sleep study and diagnosed with severe sleep apnea and breathing problems. Plaintiff Moore underwent jaw surgery in an effort to address his breathing problems and sleep apnea and was left with facial scars. He has taken many courses of steroid treatments in an effort to control his condition. Plaintiff Moore's breathing problems and subsequent sleep disorder and surgery were caused by his exposure to the toxic emissions and smoke from the burn pits.

20. Since Plaintiff Moore's return from Iraq, he has been plagued by chronic coughing, sleep apnea, decreased lung capacity, physical scars and post-traumatic stress disorder. Plaintiff suffers from recurrent bronchitis which has required hospitalizations. He is dependent on a sleep machine at night and has chronic pain which requires medication to control. Plaintiff is in physical therapy to help regain movement in his jaw and may need another surgery. Plaintiffs continuing medical problems are the result of his exposure to the burn pits.

21. Prior to his deployment, Plaintiff was in excellent health and physical shape, running six miles every day. After living for nine months less than 50 yards from the burn pit, he is unable to walk to even his mailbox without pain. Plaintiff fears the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

22. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

23. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes, and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

24. Plaintiffs satisfy all of the conditions for a class action under Georgia law. Ga. Code Ann. § 9-11-23.

25. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

26. This action should be certified as a class action pursuant to the Georgia Code, Section 9-11-23(b)(1)(A) because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

27. This action should be certified as a class action pursuant to the Georgia Code, Section 9-11-23(b)(1)(B) because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

28. This action should be certified as a class action pursuant to Georgia Code, Section 9-11-23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

29. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

## COUNT ONE: NEGLIGENCE

30. Paragraphs 1-29 are hereby incorporated by reference.

31. Defendants owed a duty to safely and properly dispose of various forms of waste, in order to protect others against unreasonable risks of harm.

32. Defendants negligently failed to safely and properly dispose of waste.

33. Plaintiffs suffered harm from prolonged exposure to prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

34. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

35. All allegations and facts in paragraphs 1-34 are hereby incorporated by reference.

36. Defendants contaminated the air by burning unsafe substances in an open burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires, that the contact would be offensive to Plaintiffs, and that Plaintiffs would not consent to such contact.

37. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

38. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and offensive contact with hazardous substances.

**COUNT THREE: NUISANCE**

39. All allegations and facts in paragraphs 1-38 are hereby incorporated by reference.

40. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned on open air burn pits.

41. Defendants substantially and unreasonable interfered with those rights when they improperly operated open air burn pits.

42. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

43. Defendants' actions are the proximate cause of Plaintiffs injuries.

**COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

44. All allegations and facts in paragraphs 1-43 are hereby incorporated by reference.

45. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to the physical impact of smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

46. Plaintiffs have suffered physical harm and severe emotional distress due to these injuries.

47. Plaintiffs have suffered severe emotional distress as a result of the physical harm they experienced from prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases, and in some cases

have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

48. Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress.

**COUNT FIVE: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

49. All allegations and facts in paragraphs 1-48 are hereby incorporated by reference.

50. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

51. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

52. Defendants' conduct in dumping medical waste in open burn pits and allowing body parts to be taken, carried and likely eaten by wild dogs was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

53. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

54. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases, and in some cases have died from the physical injuries and diseases, caused by the exposure to hazardous smoke and fumes.

**COUNT SEVEN: WILFUL AND WANTON CONDUCT**

55. All allegations and facts in paragraphs 1-54 are hereby incorporated by reference.

56. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

57. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

58. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

59. Defendants demonstrated either a deliberate intent to harm Plaintiffs or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

## COUNT EIGHT: NEGLIGENT HIRING, TRAINING AND SUPERVISION

60. All allegations and facts in paragraphs 1-59 are hereby incorporated by reference.

61. Defendants had a duty to properly train their personnel in safe waste disposal.

62. Defendants failed to implement any of the required training.

63. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

## COUNT NINE: BREACH OF DUTY TO WARN

64. All allegations and facts in paragraphs 1-63 are hereby incorporated by reference.

65. Defendants had a duty to warn United States forces when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

66. Defendants failed to warn U.S. Forces of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

## COUNT TEN: MEDICAL MONITORING

67. All allegations and facts in paragraphs 1-66 are hereby incorporated by reference.

68. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

69. This exposure has resulted in serious physical health problems for Plaintiffs.

70. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

71. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

72. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

73. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

74. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances. Such medical monitoring procedures are reasonably necessary according to contemporary scientific principals, and these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

**COUNT ELEVEN: FUTURE MEDICAL EXPENSES**

75. All allegations and facts in paragraphs 1-74 are hereby incorporated by reference.

76. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

77. This exposure has resulted in physical health problems for Plaintiffs.

78. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

79. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

80. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**COUNT TWELVE: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES**

81. All allegations and facts in paragraphs 1-80 are hereby incorporated by reference.

82. Defendants entered into contractual agreements with the United States Department of Defense.

83. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

84. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed in these locations, were intended Third Party Beneficiaries of these contracts.

85. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

86. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants' contractual obligations.

87. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, emotional distress, fear of future disease, and need for continued medical treatment and monitoring;

Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air; ;

Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit; and,

Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted on behalf of
Plaintiffs
and all others similarly situated,

JONES, OSTEEN AND JONES

By: ______________________
Billy N. Jones
State Bar No. 398800

Dated: April 28, 2009

P.O. Box 800
Hinesville, Georgia 31313
(912) 876-0888

Susan L. Burke (pro hac vice application forthcoming)
William O'Neil (pro hac vice application forthcoming)
Elizabeth M. Burke (pro hac vice application forthcoming)
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington D.C 20007
202-232-5504
202-232-5513 (fax)
sburke@burkeoneil.com
eburke@burkeoneil.com

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**LAW DIVISION**

2009 APR 29 PM 1:45

| | | |
|---|---|---|
| **David U. Lackey and** **Randall L. Robinson**, individually and on behalf of all others similarly situated; Plaintiffs | ) | **Case:** |
| v. | ) | |
| **KBR, Inc.,** **Kellogg, Brown & Root LLC** **Kellogg, Brown & Root Services, Inc.** **and Halliburton Company** Defendants | ) | DAMAGES IN EXCESS OF JURISDICTIONAL LIMITS OF LAW DIVISION JBW |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs DAVID U. LACKEY and RANDALL L. ROBINSON, on behalf of themselves and all others similarly situated, by their attorneys BURKE O'NEIL LLC (pro hac vice application forthcoming) and THE LAW OFFICE OF J. BRYAN WOOD, set forth the following as their class action complaint pursuant to 735 ILCS 5/2-801 *et seq.* and jury demand against Defendants:

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., KBR Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

## PARTIES

2. Plaintiff David U. Lackey is a United States citizen who is a permanent resident of the State of Illinois, residing at 4114 35th Avenue, Moline, Illinois 61265.

3. Plaintiff Randall L. Robinson is a United States citizen who is a permanent resident of the State of Illinois, residing at 4571 Lindbloom Lane, Cherry Valley, Illinois 61016.

4. Plaintiffs John and Jane Does 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury. The Class includes soldiers and employees of all nationalities who work for government contractors. The Class members are so numerous that joinder of all members of the class is impracticable.

5. Defendant KBR, Inc. is a publicly traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006 and was a wholly owned subsidiary of the Halliburton Company until April, 2007. Defendant KBR does business throughout the United States and the rest of the world. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of Illinois and is subject to the jurisdiction of this Court.

6. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100 Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC regularly conducts business in the State of Illinois and is subject to the jurisdiction of this Court.

7. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of Illinois.

8. Defendant Halliburton is a publicly traded corporation with headquarters located at 5 Houston Center, 1401 McKinney, Suite 2400, Houston Texas 77010 and offices located at 9000 Rockville Pike, Besthesda, Maryland. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly conducts business in the State of Illinois.

**JURISDICTION AND VENUE**

9. This Court has original jurisdiction over the subject matter of this action pursuant to the Constitution of the State of Illinois, Article 6, Section 9.

10. This Court has personal jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209 because Defendants, acting through their agents or apparent agents, committed one of more of the following: (a) transacted business in the State of Illinois; (b) owned, used or possessed real estate situated in the State of Illinois; (c) made or performed a contract or promise within the State of Illinois; (d) do business in and within Illinois; or (e) requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice.

11. Venue is proper pursuant to 735 ILCS §§ 5/2-101 and/or 5/2-102(a).

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

12. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of all waste in a method designed minimize safety risks, to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

13. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, petroleum-oil-lubricant ("POL") products, metals, hydraulic fluids, munitions boxes, latrine waste, medical waste, biohazard materials including human corpses, medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel in order to make it ignite.

14. As but one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The smoke reduced visibility to only a few yards. The flames were often colored blue or green from the

burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

15. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

16. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emits dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulates that can interact in an infinite variety of ways and cause many different toxicities and injuries.

17. Defendants operated burn pits that released known carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

18. Defendants knew or should have known that operating vast open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as the thousands of contractor employees supporting them. Numerous reports and articles called Defendants attention to the known hazards of operating large open air burn pits.

19. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs or others located near the burn pits. Defendants willfully failed to use all available incinerators, or install additional incinerators, in order to achieve a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

20. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

21. Plaintiff David Lackey was deployed by the United States Army and stationed at Balad Air Force Base in Iraq from March 2004 through August 2004, where he was exposed to the toxic smoke and fumes from a burn pit. He also served another tour in Taji in Iraq in 2008, where he was also exposed to a burn pit.

22. As a direct result of exposure to toxic emissions from the burn pit, Plaintiff Lackey began to suffer from chronic cough and respiratory problems. As a direct result of exposure to toxic emissions from the burn pit, Plaintiff Lackey, after his return from Iraq, continued to suffer from upper respiratory problems and auto immune system conditions, and developed brain cancer. Plaintiff Lackey was forced to undergo brain surgery to have the tumor removed.

23. Plaintiff Randall Robinson was deployed by the United States Army to Iraq and was stationed at many bases around the country including Balad, Striker and Adder. He was repeatedly exposed to the hazardous emissions of the burn pits. As a direct result of exposure to toxic emissions from the burn pits, Plaintiff Randall Robinson began to experience chronic coughing, respiratory infections and chronic debilitating headaches. His respiratory problems continue and he continues to need inhalers to breathe comfortably. He is currently deployed near Kabul, Afghanistan and continues to suffer as a result of exposure to the burn pits.

24. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

25. Plaintiffs' are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and

potentially fatal diseases and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

26. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

27. This action should be certified as a class because Plaintiffs satisfy all of the conditions for a class action under Illinois Rules of Civil Procedure, 735 ILCS § 2-801 *et seq.*

28. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

29. This action should be certified as a class action because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members that would establish incompatible standards of conduct for the Defendants.

30. This action should be certified as a class action because adjudication with respect to individual Plaintiffs would, as a practical matter, be dispositive of the interests of the other putative Class Members.

31. This action should be certified as a class action because common questions of law and fact predominate over any questions affecting only individual members and a class action is appropriate and superior to other methods for the fair and efficient adjudication of the controversy.

32. Joinder of individual Class Members is impracticable, if not impossible, given the number of individuals affected by Defendants' conduct.

33. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) have suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

**COUNT ONE: NEGLIGENCE**

34. Paragraphs 1- 33 are hereby incorporated by reference.

35. Defendants owed a duty to safely and properly dispose of various forms of waste.

36. Defendants negligently failed to properly dispose of waste.

37. Plaintiffs suffered harm from prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

38. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

39. Paragraphs 1-38 are hereby incorporated by reference.

40. Defendants contaminated the air by burning unsafe substances in an open air burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires and that they would not consent to such contact.

41. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

42. Defendants' actions were unlawful acts and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances.

## COUNT THREE: NUISANCE

43. Paragraphs 1-42 are hereby incorporated by reference.

44. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned on open air burn pits.

45. Defendants substantially and unreasonable interfered with those rights when they improperly operated open air burn pits.

46. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

47. Defendants' actions are the proximate cause of Plaintiffs injuries.

## COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

48. Paragraphs 1-47 are hereby incorporated by reference.

49. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

50. Plaintiffs have suffered physical harm and severe emotional distress from knowing they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

51. Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by these exposures and by Plaintiffs'

awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

52. Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress.

**COUNT FIVE: OUTRAGEOUS/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

53. Paragraphs 1-52 are hereby incorporated by reference.

54. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

55. Defendants' conduct was intentional and reckless and defendants knew or should have known that injury and emotional distress would likely result from their conduct.

56. Defendants' conduct in operating the burn pits was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

57. Plaintiffs have suffered severe emotional distress from knowing they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

58. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by this exposure and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

**COUNT SIX: WILFUL AND WANTON CONDUCT**

59. Paragraphs 1-58 are hereby incorporated by reference.

60. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

61. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

62. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

63. Defendants demonstrated either a deliberate intent to harm Plaintiffs or an utter indifference and conscious disregard for the welfare of Plaintiffs.

**COUNT SEVEN: NEGLIGENT HIRING, TRAINING AND SUPERVISION**

64. Paragraphs 1-63 are hereby incorporated by reference.

65. Defendants had a duty to properly train their personnel in safe waste disposal.

66. Defendants failed to implement any of the required training.

67. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

## COUNT EIGHT: BREACH OF DUTY TO WARN

68. Paragraphs 1-67 are hereby incorporated by reference.

69. Defendants had a duty to warn United States personnel when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pit.

70. Defendants failed to warn United States personnel of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

## COUNT NINE: MEDICAL MONITORING

71. Paragraphs 1- 70 are hereby incorporated by reference.

72. Plaintiffs have been exposed to more than background levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

73. This exposure has resulted in serious physical health problems for Plaintiffs.

74. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

75. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

76. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

77. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

78. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances, such medical monitoring procedures are reasonably necessary according to contemporary scientific

principals, and these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

**COUNT TEN: FUTURE MEDICAL EXPENSES**

79. Paragraphs 1- 78 are hereby incorporated by reference.

80. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

81. This exposure has resulted in physical health problems for Plaintiffs.

82. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

83. Plaintiffs' injuries will result in Plaintiffs' incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their exposure to the prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

84. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**COUNT ELEVEN: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES**

85. Paragraphs 1-84 are hereby incorporated by reference.

86. Defendants entered into contractual agreements with the United States Department of Defense.

87. Defendants had a duty under these contracts to dispose of waste, including but not limited to medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

88. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed at these locations, were intended Third Party Beneficiaries of these contracts.

89. Defendants breached their obligations under these contracts by failing to dispose of waste, including but not limited to medical waste, safely and in accordance with the requirements of the contract and military standards.

90. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants contractual obligations.

91. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Award Plaintiffs monetary damages to compensate each Plaintiff for their physical injuries, future and lost wages, emotional distress, fear of future disease, past and future medical expenses and need for continued medical treatment and monitoring;

B. Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants not to create hazardous conditions and to release toxins in the air;

C. Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit;

D. All issues to be tried by a jury; and,

E. Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted on behalf of Plaintiffs
and all others similarly situated,

By: ______________________
J. Bryan Wood

Dated: April 28, 2009

J. Bryan Wood (Attorney No. 44257)
THE LAW OFFICE OF J. BRYAN WOOD
53 W. Jackson Blvd, Ste. 660
Chicago, IL 60604
312-545-1420
312-577-0749 (fax)
bryan@jbryanwoodlaw.com

Susan L. Burke (pro hac vice application forthcoming)
William O'Neil (pro hac vice application forthcoming)
Elizabeth M. Burke (pro hac vice application forthcoming)
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington D.C 20007
202-232-5504
202-232-5513 (fax)
sburke@burkeoneil.com
woneil@burkeoneil.com
eburke@burkeoneil.com

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

Alan Metzgar
1121 University Blvd.
Apartment 407
Silver Spring, MD 20902,

Paul Parker
404 Gateshead Ct.
Edgewood, MD 21040

and all others similarly situated;

v.

KBR, Inc.
601 Jefferson Street
Suite 3400
Houston, Texas 77002

Kellogg, Brown & Root LLC
505 E. Huntland Dr., Suite 100
Austin, Texas 78752

Halliburton Company
5 Houston Center
1401 McKinney, Suite 24
Houston, Texas 77010

RECEIVED
JAN 2 1 2009
Clerk of the Circuit Court
Montgomery County, Md.

CASE NUMBER: 307658

JURY DEMAND

COMPLAINT

1. Plaintiffs Alan Metzgar and Paul Parker file this complaint on behalf of themselves and all others similarly situated (hereinafter referred to as "Plaintiffs") to seek redress from the defense contractors named above (Defendants). Defendants promised the United States government that they would supply safe water for hygienic and recreational uses and properly and safely dispose of waste products on U.S. bases in Iraq.

Defendants utterly failed to perform their promised duties. Instead, Defendants negligently and intentionally exposed thousands of soldiers, contract employees and other persons to unsafe water and hazardous conditions caused by improper waste disposal. Defendants acted egregiously merely to make more money for themselves. This action seeks compensatory and punitive damages against all Defendants.

PARTIES

2. Plaintiff Alan Metzgar is a U.S. citizen living in Maryland at 1121 University Blvd, Apt. 407, Silver Spring, Maryland. Mr. Metzgar was employed by the US Army and was stationed in Iraq.

3.. Plaintiff Paul Parker is a U.S. citizen living in Maryland at 404 Gateswood Ct., Edgewood, Maryland. He was employed by KBR and was stationed in Iraq.

4. Other members of the class of plaintiffs currently known include Benjamin Boeke, David Keehan, Dennis Gogel, and George Hartwell.

5. Plaintiffs John and Jane Does 1-1000 are the Class of persons who have been exposed while serving in Iraq to contaminated water, and/or to improperly operated burn pits and who have suffered injuries as a result of their exposure. Plaintiffs 1-1000 may include U.S. military personnel, U.S. government contractors and third country nationals employed by the military or contractors. Unknown Plaintiffs 1-1000 share common questions of law and fact and are so numerous that joinder of all members of the class is impracticable.

6. Defendant KBR, Inc. is a publicly traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006 and was a wholly owned subsidiary of the

Halliburton Company until April, 2007. KBR is a leading global engineering, construction and services company supporting the energy, petrochemicals, government services and civil infrastructure sectors. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR."

7. Defendant KBR, Inc. regularly transacts business in the State of Maryland.

8. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100 Austin, Texas and offices located at Guilford Rd, Annapolis, Maryland.

9. Defendant Kellogg, Brown & Root LLC regularly conducts business in the State of Maryland.

10. Defendant Halliburton is a publicly traded corporation with headquarters located at 5 Houston Center, 1401 McKinney, Suite 2400, Houston Texas 77010 and offices located at 9000 Rockville Pike, Besthesda, Maryland. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton."

11. Defendant Halliburton regularly conducts business in the State of Maryland.

JURISDICTION AND VENUE

12. This Court has original jurisdiction over the subject matter of this action pursuant to Maryland Code Section 1-505 and 6-103.

13. Venue is proper pursuant to Maryland Code Section 6-201(b) and 6-202(3).

CLASS ALLEGATIONS

14. This action should be certified as a class action pursuant to Maryland Rule 2-231(a) which permits the certification of a class if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. MD Rule 2-231.

15. This action should be certified as a class action pursuant to MD Rule 2-231(b)(1)(A) which permits the certification of a class if the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

16. This action should be certified as a class action pursuant to MD Rule 2-231(b)(1)(B), which permits the certification of a class when adjudication with respect to individual Plaintiffs would, as a practical matter, be dispositive of the interests of the other putative Class Members.

17. This action should be certified as a class action pursuant to MD Rule 2-231(b)(2) which permits the certification of a class when the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

18. This action should be certified as a class action pursuant to MD Rule 2-231(b)(3) because common questions of law and fact predominate over any questions

affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

19. This action should be certified as a class because Plaintiffs satisfy all of the prerequisites to a class action set forth in the MD Rule 2-231(a). Specifically,

(a) the class is so numerous that joinder of all member is impracticable;

(b) there are questions of law common to the class;

(c) there are questions of fact common to the class;

(d) the claims of the named Plaintiff are typical of the claims of the class;

(e) the representative party will fairly and adequately protect the interest of the class.

20. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

21. There should be at least one class certified. The class should be defined as a Class which consists of persons who 1). have been deployed to Iraq as part of the U.S. military or as a U.S. government contractor or third country national serving the U.S. forces, 2). who were exposed to the actions of Defendants and 3). were injured as a result of this exposure. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

22. There may be additional subclasses suitable for certification.

DEFENDANTS PROVIDED CONTAMINATED WATER TO U.S. FORCES

23. Defendants are the main providers of bulk water used in dining, medical, personal hygiene and recreation facilities. KBR's Government and Infrastructure ("G&I") business unit provides program and project management logistics to the U.S. military

operating in Iraq. In August, 2006 KBR was awarded a $3.5 billion task order under the LogCap III contract, a government contract awarded in support of military operations in the Middle East. In 2006, Iraq related work contributed $4.7 billion to the consolidated revenues of KBR and KBR was further awarded $120 million in award fees during that year. Revenue from their operations in Iraq represented 45% of all KBR revenues in 2006.

24. U.S. military standards, including but not limited to TB MED 577, establish field water quality standards and water certification processes and define operational and oversight rules. KBR was contractually required to comply with these and other water safety standards. The standards provide detailed requirements for the sanitary control and quality surveillance of land-based field water support. All water used for drinking, cooking and medical facilities must be potable. Water used for laundry and personal hygiene, bathing, and cleaning may be non-potable but must meet certain minimum safety standards as outlined in TB MED 577.

25. KBR was required to monitor and maintain the quality of water it distributed to meet the established standards. KBR was required to inspect and maintain distribution and storage tanks, chlorinate water supplied and ensure proper levels of chlorine residual. The water distribution and point-of-use storage containers were an integral part of the water supply system and were required to be installed, operated and maintained in accordance with applicable Army regulations. Defendants knew that failure to meet proper standards of water safety would jeopardize the health and safety of the U.S. Forces and injury resulting from exposure was reasonably forseeable.

26. KBR failed to meet the applicable standards and supplied water which was contaminated, untreated, and unsafe. Water quality tests were not performed and disinfection residual levels were not monitored and maintained at point-of-use storage containers and water was not properly treated or chlorinated to ensure safety to users.

27. Senator Dorgan requested that the Department of Defense Inspector General review allegations that KBR supplied unsafe water to the U.S. forces in Iraq. The audit revealed that KBR failed to properly supply, maintain, and test the water it supplied to U.S. forces during the audited period. *See DoD Inspector General Report No. D-2008-060, attached as Exhibit 1.*

28. A report entitled *Report of Findings & Root Cause, Water Mission B4 Ar Ramadi*, prepared by Wil Granger, KBR's water quality manager for Iraq, dated May 13, 2005, indicates that no disinfection to non-potable water was occurring for water designated for showering purposes. "This caused an unknown population to be exposed to potentially harmful water for an undetermined amount of time." *See Report attached as Exhibit 2 at p. 3.*. The report confirms that "The deficiencies of the camp where the event occurred is not exclusive to that camp, meaning that countrywide, all camps suffer to some extent from all or some of the deficiencies noted." *Ex. 2 at 4.*

29. KBR failed to properly train its personnel in proper water operations, despite its acceptance of a contract to provide safe water to the U.S. force in Iraq. "Theatre wide there is no formalized training for anyone at any level in concerns to water operations." *Ex. 2 at 5.*

30. KBR relied on "semi-skilled" labor to maintain the water operations and paid them at the level of unskilled workers in the KBR compensation classification structure. *Ex. 2 at p. 6.*

31. KBR generated or retained little or no documentation regarding water safety issues, water inventories, chemistries, audits, safety standards, procedures or orders. "This lack of documentation shows a lack of oversight and understanding as to the requirements necessary for the production, distribution, consumption, and uses of water; both potable and non-potable. Documentation is necessary to validate the quality of our services to prevent both liability and injury." *Ex. 2 at 6.*

32. Former KBR employees and water quality specialists Ben Carter and Ken May told HalliburtonWatch that KBR knowingly exposed troops and civilians to contaminated water from the Euphrates and Tigris Rivers. Ben Carter, a water quality specialist who worked for KBR at Junction City, testified that he tested water and found it was polluted with sewage and other contaminates and that it was not being chlorinated. He then treated the tanks for the KBR employees and told company managers the military should be alerted so they could treat their tanks as well. Carter told the media that he was ordered by his KBR supervisor to concern himself only with the health and safety of KBR personnel. KBR was supposed to test the water three times daily to confirm safety but, according to Carter, such testing never occurred.

33. Defendants provided water to fill the swimming pools located at Balad Air Force base. These swimming pools were used during recreation time for the U.S. forces. Defendants supplied unsafe water for the pools and failed to properly test or chlorinate the water, thereby exposing U.S Forces to unsafe water for swimming.

DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE

34. Reasonable discovery will show that Defendants were required to properly handle and incinerate the medical wastes and all other waste that arose on some or all of the U.S. bases or camps in Iraq.

35. Defendants failed to properly and timely install, operate, and maintain incinerators designed to ensure the safe disposal of medical or other waste at Balad Air Force base, which operated a busy front- line military hospital.

36. Instead, Defendants merely dug an enormous open air burn pit and burned in the open air hazardous medical waste and vast quantities of other waste not appropriate for open air burning, thereby creating hazardous conditions for individuals exposed to heavy smoke, fumes and ash. Defendants knew that failure to properly contain and control the burn pit would result in hazardous conditions and that injury to those exposed was reasonably foreseeable from constant exposure to hazardous smoke, fumes and ash.

37. On at least one occasion, Defendants were attempting to improperly dispose of medical waste at the open air burn pit by backing a truck full of medical waste up to the pit and emptying the contents onto the fire. The truck caught fire. Defendants' fraudulent actions were thereby discovered by the military.

38. Defendants burned medical waste that contained human body parts on the open air burn pit. Wild dogs in the area raided the burn pit and carried off human remains. The wild dogs could be seen roaming the base with body parts in their mouths, to the great distress of the U.S. forces.

39. Defendants illegally burned biohazard materials, hydraulic fluids, lithium batteries and other hazardous materials on the open air burn pits, causing noxious and

unsafe smoke to drift over the base. Defendants burned tires, trucks, munitions boxes, and items containing pesticide residue.

40. The smoke from the enormous burn pit at Balad Air Force Base was often so thick it filled the nearby living quarters with smoke and haze. The smoke was often so heavy that it reduced visibility to only a few yards. The flames were often colored blue or green from the hazardous chemicals that were put on the burn pit. The smoke from the pit also turned a thick black or a white depending on what was being burned. The smell from the pit was often of plastic or chemicals burning and was extremely noxious.

DEFENDANTS' ACTIONS CAUSED PLAINTIFFS' ILLNESS

41. Plaintiff Alan Metzgar was deployed to Iraq with the U.S. Army and was stationed at Balad Air Force Base. Plaintiff Metzgar was exposed to heavy smoke and fumes and suffered from chronic dry cough and irritated throat.

42. Plaintiff Paul Parker was employed in Iraq by KBR and was stationed at Balad Air Force Base. Plaintiff Parker was exposed to the heavy smoke and fumes and suffered from chronic respiratory illnesses. He developed sleep apnea from his exposure and is dependent on a machine to monitor his breathing at night. He suffers from chronic shortness of breath.

43. Plaintiff Dennis Gogel was deployed to Iraq with the U.S. Army and was stationed at Balad Air Force Base. Plaintiff Gogel was a medic for his unit. Plaintiff Gogel suffered constant recurring upper respiratory infections as a result of the heavy smoke. Due to the chronic infections he was on antibiotics approximately every few weeks for the entire year of his stay at Balad. As a medic, Plaintiff Gogel regularly treated other soldiers with antibiotics for chronic respiratory infections. Plaintiff Gogel

continues to suffer from throat infections and respiratory problems. Plaintiff Gogel also suffered severe gastrointestinal illness and lost over 40 pounds in six months time. He suffers from thickening of the wall of his stomach due to his gastrointestinal illness. As a medic, Plaintiff Gogel treated other soldiers for chronic gastrointestinal distress while at Balad Air Force Base.

44. Plaintiff David Keehan was deployed to Iraq with the U.S. Air Force and was stationed at Balad Air Force Base. While there he developed a serious skin rash with weeping lesions on his arms and feet.

45. Plaintiff Benjamin Boeke was deployed to Iraq with the U.S. Air Force and was stationed at Bald Air Force Base. As a biomedical engineer, he worked at night very close to the burn pit. The burn pit was fired 24 hours a day with some of the heaviest burning occurring at night. Since his exposure to the smoke from the burn pit he has been diagnosed with reactive airways disease and is dependent on an inhaler for treatment. He suffers from allergic reactions which cause respiratory distress.

46. Plaintiff George Hartwell was deployed to Iraq with the U.S. Army and was stationed at Balad and other installations in Iraq. Plaintiff Hartwell suffers from chronic, long term shortness of breath since his exposure to heavy smoke from the burn pit.

47. Plaintiffs all fear the long term effects of constant exposure to contaminated water and heavy, toxic smoke and will require medical monitoring of their health for the foreseeable future.

## COUNT ONE: NEGLIGENCE

49. Paragraphs 1-47 are hereby incorporated.

50. Defendants owed a duty to provide water safe for swimming and hygienic purposes, and to safely and properly dispose of medical and other waste.

51. Defendants negligently failed to provide safe water and to properly dispose of waste.

52. Plaintiffs suffered harm from prolonged exposure to unsafe water and prolonged exposure to heavy smoke, fumes and ash from the burn pit.

53. Defendants negligence was the proximate cause of harm to all Plaintiffs.

COUNT TWO: BATTERY

54. All allegations and facts in paragraphs 1-53 are hereby incorporated.

55. Defendants supplied water contaminated with hazardous substances knowing that such water would come into contact with Plaintiffs and knowing that Plaintiffs would not consent to such contact. Defendants also contaminated the air by burning hazardous substances in an open air burn pit, creating constant, heavy smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires and that they would not consent to such contact.

56. Plaintiffs did not consent to contact with contaminated water while using the hygiene facilities supplied for showering, shaving and brushing teeth or while swimming in the pools or to contact with heavy smoke, fumes and haze from the burn pit.

57. Defendants' actions were unlawful acts and Defendants acted in willful disregard of Plaintiffs right to be free of exposure to hazardous substances.

COUNT THREE: NUISANCE

58. All allegations and facts in paragraphs 1-57 are hereby incorporated

59. Plaintiffs and all residents of U.S. bases in Iraq had the right to have water that met the applicable military standards and air that was free of hazardous smoke, fumes and haze.

60. Defendants substantially and unreasonably interfered with those rights when they knowingly failed to provide safe water in which to bathe and swim.

61. Plaintiffs had a right to be free from irritating and hazardous smoke from an improperly operated open air burn pit and to be free of the hazards that arise when chemicals, plastics, and medical waste are burned on an open air burn pit.

62. Defendants substantially and unreasonable interfered with those rights when they improperly burned an open air burn pit constantly and improperly burned hazardous waste and medical waste from the nearby front line military hospital.

63. Plaintiffs suffered from injuries, both physical and emotional, due to Defendants egregious conduct in placing contaminated water into the swimming pools and the hygiene units. Plaintiffs suffered injuries from the illegal operation of the open air burn pit.

64. Defendants actions are the proximate cause of Plaintiffs injuries.

COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

65. All allegations and facts in paragraphs 1-64 are hereby incorporated

66. Plaintiffs have been diagnosed with injuries as a result of Defendants' conduct in supplying unsafe water and in creating hazardous conditions through the negligent operation of the open air pit.

67. Plaintiffs have suffered from emotional distress due these injuries.

68. Defendants negligent conduct is the cause of the Plaintiffs' emotional distress.

COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69. All allegations and facts in paragraphs 1-68 are hereby incorporated.

70. Plaintiffs have suffered from extreme stress due to Defendants outrageous actions.

71. Defendants conduct was intentional and reckless.

72. Defendants' conduct in providing sewage water for the U.S. Forces to swim and bath in and taking millions of taxpayer dollars as payment was outrageous and intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct in dumping medical waste in an open burn pit and allowing body parts to be taken, carried and likely eaten by wild dogs was outrageous, intolerable and certainly offends generally accepted standards of decency and morality.

73. Defendants' conduct caused Plaintiffs' emotional distress. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

74. Plaintiffs suffered severe emotional distress from learning they were bathing and brushing teeth with sewage water. Plaintiffs have suffered emotional distress from knowing they were constantly exposured to heavy smoke, fumes and haze which contained unknown chemicals and hazardous substances.

COUNT SIX: STRICT PRODUCT LIABILITY

75. All allegations and facts in paragraphs 1-74 are hereby incorporated.

76. Under different contracts with the U.S. government, Defendants were responsible for supplying U.S. bases in Iraq with all manner of items designed to safeguard the Morale, Welfare, and Recreation of the U.S. Forces. Under such contracts, Defendants sold to the U.S. water and waste disposal services. Defendants handled these large government contracts in their regular course of business.

77. The water that Defendants sold the U.S. for use by the U.S. Forces in Iraq was unreasonably dangerous when used for swimming, bathing, brushing teeth and shaving. Since Defendants put contaminated water in swimming pools and the field hygiene units, it was reasonably anticipated that the water would be used in this manner.

78. Defendants did not give adequate warning of the danger of the water, even after they were confronted with its dangers by members of their own corporation.

79. Plaintiffs used the contaminated water in a reasonably anticipated manner.

80. Plaintiffs were injured by their exposure to contaminated water. Plaintiffs' injuries are a direct result of Defendants defective products.

COUNT SEVEN: WILFULL AND WANTON CONDUCT

81. All allegations and facts in paragraphs 1-80 are hereby incorporated.

82. Defendants owed Plaintiffs a duty to provide safe water, and waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs

83. Defendants were conscious of their conduct in failing to adequately supply safe water and waste disposal services.

84. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

85. Defendants demonstrated either a deliberate intent to harm Plaintiffs or an utter indifference and conscious disregard for the welfare of Plaintiffs.

## COUNT EIGHT: NEGLIGENT HIRING, TRAINING AND SUPERVISION

86. All allegations and facts in paragraphs 1-85 are hereby incorporated.

87. Defendants had a duty to properly train their personnel in water supply safety and military water standards and in proper testing, reporting and administrative procedures, and proper maintenance and oversight procedures.

88. Defendants failed, as reported by their own employee, to implement any of the required training of personnel.

89. Defendants wholesale failure to set up a water supply system that was adequately overseen, trained, maintained and policed was the direct and proximate cause of injury to Plaintiffs.

## COUNT NINE: BREACH OF DUTY TO WARN

90. All allegations and facts in paragraphs 1-89 are hereby incorporated.

91. Defendants had a duty to warn U.S. Forces when Defendants learned there were safety issues with the water supply, when they learned there were safety issues with the smoke, fumes and haze from the open air burn pit.

92. Defendants failed to warn U.S. Forces of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

COUNT TEN: MEDICAL MONITORING

93. All allegations and facts in paragraphs 1-92 are hereby incorporated.

94. Plaintiffs have been exposed to unknown hazardous substances in the water and air as a direct result of the conduct of Defendants.

95. This exposure has resulted in physical health problems for Plaintiffs.

96. Plaintiffs face an increased risk of contracting future diseases as a result of the exposure to contaminated water and the prolonged and constant exposure to heavy smoke, fumes and haze which contained hazardous substances.

97. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

Award Plaintiffs monetary damages to compensate each Plaintiff for their physical injuries, emotional distress, fear of future disease, and need for continued medical treatment and monitoring;

Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq who depend on Defendants supply of the basic necessities of life;

Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit; and,

Grant such additional and further relief as the Court deems just and proper.

Date: January 21, 2009

/s/ William T. O'Neil

William O'Neil
Bar # 16555
Susan L Burke
Elizabeth M. Burke
BURKE O'NEIL LLC
1718 20th Street
Washington D.C. 20009
Counsel for Plaintiff

STATE OF MINNESOTA | DISTRICT COURT-CIVIL DIVISION

COUNTY OF STEELE | THIRD JUDICIAL DISTRICT

[PERSONAL INJURY]

Dean Guy Olson,

and all others similarly situated,

Plaintiffs,

v.

KBR, Inc.; Kellogg, Brown & Root LLC; Kellogg, Brown & Root Services, Inc.; and Halliburton Company,

Defendants.

Court File No.: 74 CV09 1613

**COMPLAINT**

Jury Demand

STATE OF MINNESOTA
COUNTY OF STEELE
I certify this to be a true copy of the official record in my custody.
Dated at Owatonna MN
Robert L Langer
Court Administrator
By
Deputy

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., KBR Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

## PARTIES

2. Plaintiff Dean Guy Olson is a U.S. citizen who is a permanent resident of the State of Minnesota, residing at 1695 Cornerstone Lane SE, Owatonna, MN 55060.

3. Plaintiffs John and Jane Does 1-1000 are the Class of persons who have been exposed while serving in Iraq and Afghanistan to improperly operated burn pits and who have suffered injuries as a result of their exposure. Plaintiffs 1-1000 may include U.S. military personnel, U.S. government contractors and third country nationals employed by the military or contractors. Unknown Plaintiffs 1-1000 share common questions of law and fact and are so numerous that joinder of all members of the class is impracticable.

4. Defendant KBR, Inc. is a publicly traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006 and was a wholly owned subsidiary of the Halliburton Company until April, 2007. KBR is a leading global engineering, construction and services company supporting the energy, petrochemicals, government services and civil infrastructure sectors. KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of Minnesota and is subject to the jurisdiction of this Court. M.S.A. § 543.19.

5. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100 Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC regularly conducts business in the State of Minnesota and is subject to the jurisdiction of this Court. M.S.A. § 543.19.

6. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of Minnesota and is subject to this Court's jurisdiction pursuant to M.S.A. § 543.19.

7. Defendant Halliburton is a publicly traded corporation with headquarters located at 5 Houston Center, 1401 McKinney, Suite 2400, Houston, Texas 77010. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly conducts business in the State of Minnesota and is subject to the jurisdiction of this Court. MSA § 543.19

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the subject matter of this action pursuant to the Constitution of the State of Minnesota, Article 6 section 3, and Minnesota Code § 484.01.

9. Venue is proper pursuant to Minnesota Code § 542.09.

## DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE

10. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of

all waste in a method designed minimize safety risks, to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

11. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

12. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, petroleum-oil-lubricant (POL) products, metals, hydraulic fluids, munitions boxes, medical waste, biohazard materials including human corpses, latrine waste, medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel in order to make it ignite.

13. As but one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

14. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered with the military

mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

15. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emit dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

16. Defendants operated burn pits that released known and unknown carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

17. Defendants knew or should have known that operating open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as thousands of contractor employees supporting them. Numerous reports and articles called Defendants' attention to the known hazards of operating large open air burn pits.

18. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use all available incinerators, or to install additional incinerators, in order to achieve a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

19. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

20. Plaintiff Dean Guy Olson was deployed by the U.S. Army and stationed at Balad Air Force Base in Iraq in 2006-2007. He was constantly exposed to the hazardous emissions from the burn pit since his living and work locations were located very near the pits.

21. Plaintiff Dean Guy Olson experienced days at Balad Air Force Base when the smoke and fumes from the burn pit were so pervasive that soldiers and other personnel had to disable their residential smoke alarms, which were sounding in response to the heavy smoke and fumes.

22. Prior to his deployment, Plaintiff Dean Guy Olson had no health problems. As a direct result to his exposure to toxic emissions from the burn pits, Plaintiff Olson began to experience chronic cough and respiratory symptoms due to his exposure to the smoke from the burn pits. He experienced burning of this throat due to the smoke inhalation. As a direct result of his exposure to toxic emissions from the burn pits, Plaintiff Dean Guy Olson has continued to have respiratory issues and throat discomfort and suffers from joint pain and was diagnosed with diabetes. He also contracted skin cancer and other skin problems which he believes are a result of the constant exposure of his skin to the toxic emissions from the burn pit.

23. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

24. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

25. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes, and their fears and uncertainty regarding their own

health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

26. This action should be certified as a class because Plaintiffs satisfy all of the conditions for a class action under Minnesota law, including Minnesota Rules of Civil Procedure, Rule 23.

27. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

28. This action should be certified as a class action because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

29. This action should be certified as a class action because adjudication with respect to individual Plaintiffs would, as a practical matter, be dispositive of the interests of the other putative Class Members.

30. This action should be certified as a class action because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

31. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered , or have a basis for fear that they may in the future

suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

## COUNT ONE: NEGLIGENCE

32. Paragraphs 1-31 are hereby incorporated by reference.

33. Defendants owed a duty to safely and properly dispose of various forms of waste.

34. Defendants negligently failed to properly dispose of waste.

35. Plaintiffs suffered harm from prolonged exposure to prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

36. Defendants' negligence was the direct and proximate cause of harm to all Plaintiffs.

## COUNT TWO: BATTERY

37. All allegations and facts in paragraphs 1-36 are hereby incorporated by reference.

38. Defendants contaminated the air by burning unsafe substances in open burn pits, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires and that they would not consent to such contact.

39. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pits.

40. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances, directly and proximately causing harm to Plaintiffs.

## COUNT THREE: NUISANCE

41. All allegations and facts in paragraphs 1-40 are hereby incorporated by reference.

42. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned in open air burn pits.

43. Defendants substantially and unreasonably interfered with those rights when they improperly operated open air burn pits.

44. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

45. Defendants' actions are the direct and proximate cause of Plaintiffs injuries.

**COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

46. All allegations and facts in paragraphs 1-45 are hereby incorporated by reference.

47. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

48. Plaintiffs have suffered physical harm and severe emotional distress due to these injuries.

49. Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases, and in

some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

50. Defendants' negligent conduct is the direct and proximate cause of the Plaintiffs' emotional distress.

## COUNT FIVE: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51. All allegations and facts in paragraphs 1-50 are hereby incorporated by reference.

52. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

53. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

54. Defendants' conduct in operating the burn pits was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

55. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

56. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases and in some cases have died from the physical injuries and diseases, caused by the exposure to hazardous smoke and fumes.

**COUNT SIX: WILFUL AND WANTON CONDUCT**

57. All allegations and facts in paragraphs 1-56 are hereby incorporated by reference.

58. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

59. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

60. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

61. Defendants demonstrated either, a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs, directly and proximately causing harm to Plaintiffs.

**COUNT SEVEN: NEGLIGENT HIRING, TRAINING AND SUPERVISION**

62. All allegations and facts in paragraphs 1-61 are hereby incorporated by reference.

63. Defendants had a duty to properly train their personnel in safe waste disposal.

64. Defendants failed to implement any of the required training.

65. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

**COUNT EIGHT: BREACH OF DUTY TO WARN**

66. All allegations and facts in paragraphs 1-65 are hereby incorporated by reference.

67. Defendants had a duty to warn United States personnel when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

68. Defendants failed to warn United States personnel of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

**COUNT NINE: MEDICAL MONITORING**

69. All allegations and facts in paragraphs 1-68 are hereby incorporated by reference.

70. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

71. This exposure has resulted in serious physical health problems for Plaintiffs.

72. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

73. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

74. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

75. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

76. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances. Such medical monitoring procedures are reasonably necessary according to contemporary scientific principals, and these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

**COUNT TEN: FUTURE MEDICAL EXPENSES**

77. All allegations and facts in paragraphs 1-76 are hereby incorporated by reference.

78. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

79. This exposure has resulted in physical health problems for Plaintiffs.

80. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

81. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

82. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

## COUNT ELEVEN: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES

83. All allegations and facts in paragraphs 1-82 are hereby incorporated by reference.

84. Defendants entered into contractual agreements with the United States Department of Defense.

85. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

86. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed at these locations, were intended Third Party Beneficiaries of these contracts.

87. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

88. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn pits operated by Defendants in breach of Defendants' contractual obligations.

89. Plaintiffs' injuries were directly and proximately caused by Defendants' breaches of their contractual obligations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, including past and future loss of earnings, loss of earning capacity, and disability, emotional distress, past and future pain, suffering, and loss of enjoyment of life, fear of future disease, past and future medical expenses, and need for continued medical treatment and monitoring.

2. Award attorney's fees, costs, and disbursements incurred in the pursuit of this action;

3. Such additional and further relief as the Court deems just and proper.

Plaintiffs request trial by jury on all issues.

Dated: April 28, 2009.

Susan L. Burke
William O'Neil
Elizabeth M. Burke
(pro hac vice applications forthcoming)
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington D.C. 20007
Phone: 202-232-5504
Fax: 202-232-5513
sburke@burkeoneil.com
woneil@burkeoneil.com
eburke@burkeoneil.com

SMITH, TOLLEFSON & RAHRICK

By: ______________________
Stephen J. Smith (#102799)
108 West Park Square, Suite A
P.O. Box 271
Owatonna, MN 55060
Phone: 507-451-6540

*ATTORNEYS FOR PLAINTIFFS*

IN THE CIRCUIT COURT OF MISSOURI
THIRTY NINTH JUDICIAL CIRCUIT
BARRY COUNTY

FILED
MAY - 4 2009
CRAIG WILLIAMS
CIRCUIT CLERK, BARRY COUNTY, MO

09BR-CC00034

Albert Paul Bittel III
25321 FR 2265
Golden, MO 65658

and all others similarly situated;

v.

KBR, Inc.
601 Jefferson Street
Suite 3400
Houston, Texas 77002

Kellogg, Brown & Root Services, Inc.
4100 Clinton Drive
Houston, Texas 77020

Kellogg, Brown & Root LLC
505 E. Huntland Dr., Suite 100
Austin, Texas 78752

Halliburton Company
5 Houston Center
1401 McKinney, Suite 24
Houston, Texas 77010

CASE NUMBER:

JURY DEMAND

COMPLAINT

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., KBR Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

**PARTIES**

2. Plaintiff Albert Paul Bittel III, whose address is 25321 FR 2265 Golden, MO 65658, is a U.S. citizen who is a permanent resident of the State of Missouri.

3. Plaintiffs John and Jane Does 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury. The Class includes soldiers and employees of all nationalities who work for government contractors. The Class members are so numerous that joinder of all members of the class is impracticable.

4. Defendant KBR, Inc. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR does business throughout the United States and the rest of the world. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of Missouri and is subject to this Court's jurisdiction pursuant to Mo. Ann. Stat. § 506.500.

5. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100, Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root

LLC regularly transacts business in the State of Missouri and is subject to this Court's jurisdiction pursuant to Mo. Ann. Stat. § 506.500.

6. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of Missouri and is subject to this Court's jurisdiction pursuant to Mo. Ann. Stat. § 506.500.

7. Defendant Halliburton is a publicly traded corporation with offices at 1990 Hays Lane, Woodland, California 95776. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly transacts business in the State of Missouri and is subject to this Court's jurisdiction under Mo. Ann. Stat. § 506.500.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the subject matter of this action pursuant to Mo. Ann. Stat. § 478.070.

9. Venue is proper pursuant to Mo. Ann. Stat. § 508.010.

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

10. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of all waste in a method designed minimize safety risks, to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

11. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

12. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, petroleum-oil-lubricant (POL) products, metals, hydraulic fluids, munitions boxes, medical waste, biohazard materials including human corpses, latrine waste medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel in order to make it ignite.

13. As one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The

smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

14. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

15. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emit dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

16. Defendants operated burn pits that released known carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

17. Defendants knew or should have known that operating open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as thousands of contractor employees supporting them. Numerous reports and articles called Defendants' attention to the known hazards of operating large open air burn pits.

18. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use all available incinerators, or to install additional incinerators, in order to achieve a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

19. Defendants' misconduct physically harmed the Plaintiff and the Class Members.

20. Plaintiff Albert Paul Bittel III was deployed by the U.S. Army with the 110th Engineering Battalion and stationed at Balad Air Force Base in Iraq in 2006, where he was exposed to the toxic smoke and fumes from the burn pit.

21. As a direct result of his exposure to toxic emissions from the burn pit, Plaintiff Bittel experienced breathing problems such as tightness in his chest and a cough. Plaintiff was a squad leader and observed that many of the soldiers in his command suffered from a persistent cough and complained about the smoke and haze.

22. Upon his return from Iraq, Plaintiff Bittel was diagnosed with seminoma, a cancer which was detected at first in one testicle but soon spread to the other testicle, and then to the stomach and lymph nodes. Plaintiff Bittel had to undergo surgical removal of the testicles, radiation therapy, and chemotherapy. Plaintiff Bittel continues to suffer from memory problems and chronic numbing and swelling of his feet and hands. Due to these conditions, Plaintiff could no longer continue with his military career.

23. Plaintiff believes that his cancer was a direct result of his exposure to the toxic emissions from the burn pits. Plaintiff knows that seven soldiers from his unit

suffer from cancers thought to be linked to their exposures to the toxic emissions from the burn pits.

24. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

25. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

26. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes, and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

27. Plaintiffs satisfy all of the conditions for a class action under Missouri law. Mo. Ann. Rules § 52.08.

28. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

29. This action should be certified as a class action pursuant to the Missouri Rules, Section 52.08(b)(1)(A) because the lack of a class could lead to inconsistent or

varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

30. This action should be certified as a class action pursuant to the Missouri Rules, Section 52.08(b)(1)(B) because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

31. This action should be certified as a class action pursuant to Missouri Rules, Section 52.08(b)(3) because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

32. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

## COUNT ONE: NEGLIGENCE

33. Paragraphs 1-30 are hereby incorporated by reference.

34. Defendants owed a duty to safely and properly dispose of various forms of waste, in order to protect others against unreasonable risks of harm.

35. Defendants negligently failed to safely and properly dispose of waste.

36. Plaintiffs suffered harm from prolonged exposure to prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

37. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

## COUNT TWO: BATTERY

38. All allegations and facts in paragraphs 1-35 are hereby incorporated by reference.

39. Defendants contaminated the air by burning unsafe substances in an open burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires, that the contact would be offensive to Plaintiffs, and that Plaintiffs would not consent to such contact.

40. Plaintiffs did not consent to offensive contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

41. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and offensive contact with hazardous substances.

## COUNT THREE: NUISANCE

42. All allegations and facts in paragraphs 1-39 are hereby incorporated by reference.

43. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned on open air burn pits.

44. Defendants substantially and unreasonably interfered with those rights when they improperly operated open air burn pits.

45. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

46. Defendants' actions are the proximate cause of Plaintiffs injuries.

**COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

47. All allegations and facts in paragraphs 1-44 are hereby incorporated by reference.

48. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to the physical impact of smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

49. Plaintiffs have suffered physical harm and severe emotional distress due to these injuries.

50. Plaintiffs have suffered severe emotional distress as a result of the physical harm they experienced from prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes. The emotional distress and mental injury is medically significant.

51. Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress. Defendants should have realized that their conduct involved an unreasonable risk of causing distress.

## COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52. All allegations and facts in paragraphs 1-49 are hereby incorporated by reference.

53. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

54. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

55. Defendants' conduct in operating the burn pits was extreme, outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

56. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

57. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and

uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases, and in some cases have died from the physical injuries and diseases, caused by the exposure to hazardous smoke and fumes.

## COUNT SIX: WILFUL AND WANTON CONDUCT

58. All allegations and facts in paragraphs 1-55 are hereby incorporated by reference.

59. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

60. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

61. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

62. Defendants demonstrated either, a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

## COUNT SEVEN: NEGLIGENT HIRING, TRAINING AND SUPERVISION

63. All allegations and facts in paragraphs 1-60 are hereby incorporated by reference.

64. Defendants had a duty to properly train their personnel in safe waste disposal.

65. Defendants failed to implement any of the required training.

66. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

**COUNT EIGHT: BREACH OF DUTY TO WARN**

67. All allegations and facts in paragraphs 1-64 are hereby incorporated by reference.

68. Defendants had a duty to warn United States personnel when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

69. Defendants failed to warn United States personnel of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

**COUNT NINE: MEDICAL MONITORING**

70. All allegations and facts in paragraphs 1-67 are hereby incorporated by reference.

71. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

72. This exposure has resulted in serious physical health problems for Plaintiffs.

73. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

74. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

75. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

76. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

77. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances. Such medical monitoring procedures are reasonably necessary according to contemporary scientific principals, and these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

## COUNT TEN: FUTURE MEDICAL EXPENSES

78. All allegations and facts in paragraphs 1-75 are hereby incorporated by reference.

79. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

80. This exposure has resulted in physical health problems for Plaintiffs.

81. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

82. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

83. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**COUNT ELEVEN: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES**

84. All allegations and facts in paragraphs 1-81 are hereby incorporated by reference.

85. Defendants entered into contractual agreements with the United States Department of Defense.

86. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

87. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed in these locations, were intended Third Party Beneficiaries of these contracts.

88. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

89. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants' contractual obligations.

90. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, past and future wage loss, emotional distress, fear of future disease, past and future medical expenses and need for continued medical treatment and monitoring;

Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air; ;

Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit;

All issues to be tried by jury, and,

Grant such additional and further relief as the Court deems just and proper.

**DOWD BENNETT LLP**

By: Edward L. Dowd

Edward L. Dowd, Jr. #2668
James F. Bennett, #65673
Megan S. Heinsz, #506333
7733 Forsyth St., Ste. 1410
St. Louis, MO 63105
(314) 889-7300 (phone)
(314) 863-2111 (fax)

OF COUNSEL:

Susan L. Burke
William O'Neil
Elizabeth M. Burke
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington, D.C. 20007
Telephone: (202) 232-5504
Facsimile: (202) 232-5513
Email: eburke@burkeoneil.com

IN THE SUPREME COURT OF THE STATE OF NEW YORK, 8th DISTRICT, ERIE COUNTY

Fred Robert Atkinson, Jr.
19 Kennedy Ave
Plattsburgh, NY 12901

Robyn Sachs, personal representative of
Christopher Sachs, deceased
258 Villa Avenue
Buffalo, NY 14216

Jennifer Montijo
133 Central Street
Watertown, NY 13601

Steven A. Flowers
E-6
Contract Gate VCC Clerk
PSC 103 Box 213 APO AE 09603

and all others similarly situated;

v.

KBR, Inc.
601 Jefferson Street
Suite 3400
Houston, Texas 77002

Kellogg, Brown & Root LLC
505 E. Huntland Dr., Suite 100
Austin, Texas 78752

Kellogg, Brown & Root Services, Inc.
4100 Clinton Drive
Houston, Texas 77020

Halliburton Company
5 Houston Center
1401 McKinney, Suite 24
Houston, Texas 77010

CASE NUMBER:

JURY DEMAND

COMPLAINT

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., Kellog, Brown and Root Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death

**PARTIES**

2. Plaintiff Fred Robert Atkinson, Jr. is a U.S. citizen who is a permanent resident of the State of New York, residing at 19 Kennedy Ave., Plattsburgh, NY 12901.

3. Plaintiff Robyn Sachs, personal representative of Christopher J. Sachs, deceased, is a U.S. citizen who is a permanent resident of the State of New York, residing at 258 Villa Avenue, Buffalo, NY 14216.

4. Jennifer Montijo is a U.S. citizen who is a permanent resident of the State of New York, residing at 133 Central Street, Watertown, NY 13601.

5. Steven A. Flowers is a U.S. citizen who is a permanent resident of the State of New York, residing at Contract Gate VCC Clerk, PSC 103 Box 213 APO AE 09603.

6. Plaintiffs John and Jane Does 1-1000 are the Class of persons who have been exposed while serving in Iraq and Afghanistan to improperly operated burn pits and who have suffered injuries as a result of their exposure. Doe Plaintiffs 1-1000 may include U.S. military personnel, U.S. government contractors, third country nationals employed by the military or contractors, and others exposed to harm as a result of Defendants' misconduct. Unknown

Plaintiffs 1-1000 share common questions of law and fact and are so numerous that joinder of all members of the class is impracticable.

7. Defendant KBR, Inc. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006 and was a wholly owned subsidiary of the Halliburton Company until April, 2007. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of New York and is subject to the jurisdiction of this Court. N.Y. McKinney's C.P.L.R. § 302(a).

8. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100 Austin, Texas. Defendant Kellogg Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC regularly conducts business in the State of New York and is subject to the jurisdiction of this Court. N.Y. McKinney's C.P.L.R. § 302(a).

9. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg Brown & Roost Services, Inc, acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root

Services, Inc. regularly transacts business in the State of New York and is subject to the jurisdiction of this Court. N.Y. McKinney's C.P.L.R. § 302(a).

10. Defendant Halliburton is a publicly-traded corporation with headquarters located at 5 Houston Center, 1401 McKinney, Suite 2400, Houston Texas 77010 and offices located at 9000 Rockville Pike, Besthesda, Maryland. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly conducts business in the State of New York and is subject to the jurisdiction of this Court. N.Y. McKinney's C.P.L.R. § 302(a).

**JURISDICTION AND VENUE**

12. This Court has original jurisdiction over the subject matter of this action pursuant to New York State Constitution, Article 7, Section 7.

13. Venue is proper pursuant to New York McKinney's C.P.L.R. § 503.

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

14. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

15. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

16. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, petroleum-oil-lubrictant (POL) products, metals, hydraulic fluids, munitions boxes, medical waste, biohazard materials including human corpses, latrine waste, medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel in order to make it ignite.

17. As but one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

18. Similar conditions existed at burn pits on U.S. bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

19. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emit dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

20. Defendants knew or should have known that operating vast open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as the thousands of contractor employees supporting them. Numerous reports and articles called Defendants attention to the known hazards of operating large open air burn pits.

21. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use available incinerators that would have been a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

22. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

23. Plaintiff Fred Robert Atkinson, Jr. was stationed at Al Qayyarah, Iraq at Forward Operating Base Q-West from August 1, 2007 through May 2, 2008. Plaintiff Atkinson worked at the Ammunition Supply Point which was within 1/2 mile from the Forward Operating Base burn pit operated by Defendants. Plaintiff Atkinson was regularly exposed to the toxic emissions from the burn pits. As a direct result of his exposure to the toxic emissions from the burn pits in Iraq, Plaintiff Atkinson began suffering chronic throat irritation, chronic cough and other respiratory symptoms. He had difficulty breathing due to the heavy smoke and regularly coughed up black mucous. As a further direct result of his exposure to the toxic emissions from the burn pits, Plaintiff Atkinson has developed extreme allergic sensitivities to 25 different substances and has continuing respiratory problems including chronic cough and asthma.

24. Plaintiff Jennifer Montijo was stationed in Iraq from October 2007 to November 2008 and was deployed at Speicher and Balad. Plaintiff Montijo was regularly exposed to the toxic emissions from the burn pits. As a direct result of her exposure to the toxic emissions from

the burn pits in Iraq, Plaintiff Montijo began to develop respiratory problems. Plaintiff has experienced respiratory problems, been diagnosed with restrictive airways disease and needs to use an inhaler in order to exercise.

25. Plaintiff Steven A. Flowers was deployed to Camp Bucca and LSA Adder/Tallil AB I. Plaintiff Flowers was regularly exposed to the toxic emissions from burn pits. At Camp Bucca, there were times the smoke from the burn pits became so thick that it limited visibility. As a direct result of exposure to the toxic emissions from the burn pits in Iraq, Plaintiff Flowers began to experience severe coughing and chronic respiratory symptoms. Plaintiff Flowers continued to suffer from chronic respiratory symptoms. He has been diagnosed with decreased lung capacity and sleep apnea, and experiences an excessive phlegm buildup in his chest, lungs and nose during the night. Plaintiff Flowers literally vomits this buildup in order to breathe properly.

26. Decedent Christopher J. Sachs served in the United States Military in Iraq at Tikrit, Iraq, Balad Air Force Base, Iraq, FOB Speicher, Iraq, Hadithah Dam, Iraq, Samarra, and Beiji Iraq. As a direct result of exposure to the toxic emissions from the burn pits in Iraq, Christopher J. Sachs became seriously ill, and died on November 2, 2008.

27. Plaintiff Robyn Sachs is the surviving spouse and personal representative of decedent Christopher J. Sachs. Christopher J. Sachs is survived by no minor children.

28. Decedent Christopher J. Sachs died testate on November 2, 2008. Plaintiff Robyn Sachs was appointed executor of his estate by the New York State Surrogate's Court

29. Decedent Christopher J. Sachs' principal place of residence when not stationed with the United States Military was 258 Villa Avenue, Buffalo, NY 14216.

30. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

31. Plaintiffs are aware that many other U.S. soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

32. Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other U.S. soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

33. Plaintiffs satisfy all of the conditions for a class action under New York law.

34. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

35. This action should be certified as a class action pursuant to New York Civil Practice Law and Rules § 901, because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

36. This action should be certified as a class action pursuant to New York Civil Practice Law and Rules § 901 because adjudication with respect to individual Plaintiffs would, as a practical matter, be dispositive of the interests of the other putative Class Members.

37. This action should be certified as a class action pursuant to New York Civil Practice Law and Rules § 901 because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

38. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

**COUNT ONE: NEGLIGENCE**

39. Paragraphs 1-39 are hereby incorporated by reference. Defendants owed a duty to safely and properly dispose of various forms of waste.

40. Defendants negligently failed to properly dispose of waste.

41. Plaintiffs suffered harm from prolonged exposure to prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

42. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

43. All allegations and facts in paragraphs 1-43 are hereby incorporated by reference.

44. Defendants contaminated the air by burning unsafe substances in an open burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires and that they would not consent to such contact.

45. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

46. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances.

**COUNT THREE: NUISANCE**

47. All allegations and facts in paragraphs 1-50 are hereby incorporated by reference.

48. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned in open air burn pits.

49. Defendants substantially and unreasonable interfered with those rights when they improperly operated open air burn pits.

50. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

51. Defendants' actions are the proximate cause of Plaintiffs injuries.

**COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

52. All allegations and facts in paragraphs 1-52 are hereby incorporated by reference.

53. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

54. Plaintiffs have suffered physical harm and severe emotional distress due to these injuries.

55. Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs' fears

and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

56. Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress.

**COUNT FIVE: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

57. All allegations and facts in paragraphs 1-56 are hereby incorporated by reference.

58. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

59. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

60. Defendants' callous disregard for the safety of Plaintiffs was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' misconduct directly caused Plaintiffs' severe emotional distress. Defendants' conduct is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

61. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

62. Plaintiffs' severe emotional distress directly resulted from the prolonged exposure to hazardous smoke and fumes. Plaintiffs are fearful and uncertain regarding their own health risks caused by this exposure. Plaintiffs are aware that that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases and in some cases have died from the physical injuries and diseases, as a direct result of exposure to the toxic emissions from the burn pits.

**COUNT SIX: WILFUL AND WANTON CONDUCT**

63. All allegations and facts in paragraphs 1-62 are hereby incorporated by reference.

64. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

65. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

66. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

67. Defendants demonstrated either, a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

**COUNT SEVEN: NEGLIGENT HIRING, TRAINING AND SUPERVISION**

68. All allegations and facts in paragraphs 1-67 are hereby incorporated by reference.

69. Defendants had a duty to properly train their personnel in safe waste disposal.

70. Defendants failed to implement any of the required training.

71. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

## COUNT EIGHT: BREACH OF DUTY TO WARN

72. All allegations and facts in paragraphs 1-71 are hereby incorporated by reference.

73. Defendants had a duty to warn United States personnel when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

74. Defendants failed to warn United States personnel. Defendants' failure to warn was the direct and proximate cause of injury to Plaintiffs.

## COUNT NINE: MEDICAL MONITORING

75. All allegations and facts in paragraphs 1-74 are hereby incorporated by reference.

76. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the misconduct of Defendants.

77. This exposure has resulted in serious physical health problems for Plaintiffs.

78. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

79. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

80. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

81. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

82. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances. Such medical monitoring procedures are reasonably necessary according to contemporary scientific

principals, and these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

**COUNT TEN: FUTURE MEDICAL EXPENSES**

83. All allegations and facts in paragraphs 1-82 are hereby incorporated by reference.

84. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

85. This exposure has resulted in physical health problems for Plaintiffs.

86. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

87. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

88. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**COUNT ELEVEN: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES**

89. All allegations and facts in paragraphs 1-89 are hereby incorporated by reference.

90. Defendants entered into contractual agreements with the United States Department of Defense.

91. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

92. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed at these locations, were intended Third Party Beneficiaries of these contracts.

93. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

94. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants' contractual obligations.

95. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

**COUNT TWELVE ON BEHALF OF THE ESTATE OF CHRISTOPHER SACHS: WRONGFUL DEATH**

96. All allegations and facts in paragraphs 1-99 are hereby incorporated by reference.

97. Plaintiff Robyn Sachs, as personal representative of the estate of Christopher Sachs, is authorized to bring this wrongful death action against Defendants on behalf of decedents' estates and on behalf of decedents' survivors as statutory beneficiaries.

98. Plaintiff Robyn Sachs seeks damages for the wrongful death of decedent Christopher J. Sachs who died as a result of illnesses contracted as a result of his prolonged and repeated exposure to extremely hazardous substances, to which he was exposed as a direct result of Defendants' wrongful actions, including negligence, battery, breach of contract and breach of duty to warn.

99. Christopher J. Sachs' illness and death were proximately caused by Defendants' wrongful acts, including but not limited to negligence, battery, breach of contract, breach of duty to warn. Defendants caused the illness and death of Christopher J. Sachs by exposing him to hazardous substances and chemicals.

100. As a result of Defendants' negligence and other wrongful acts, Christopher J. Sachs' surviving spouse, Robyn Sachs, has suffered a loss of support based upon Decedent's earning potential over the remainder of his life had his premature death not been proximately caused by Defendants' wrongful actions.

101. As a result of Defendants' negligence and other wrongful acts, Christopher J. Sachs' surviving spouse, Robyn Sachs, has suffered and now suffers a lack of companionship and protection provided by Christopher J. Sachs.

102. As a result of Defendants' negligence and other wrongful acts, Christopher J. Sachs' spouse has suffered severe mental pain and suffering during the illness of Christopher J. Sachs since the date of Decedent's death November 2, 2008.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, past and future loss of wages, emotional distress, fear of future disease, and past and future medical expenses, need for continued medical treatment and monitoring, and, where applicable, loss of consortium, loss of companionship and protection and loss of support;

Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct

and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air;

Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit;

All issues to be tried by jury, and,

Grant such additional and further relief as the Court deems just and proper.

s/ Genevieve McCormack
Genevieve McCormack
**Counsel for Plaintiff**

OF COUNSEL:

Genevieve McCormack
Susan L. Burke
William O'Neil
Elizabeth M. Burke
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington, D.C. 20007
Telephone: (202) 232-5504
Facsimile: (202) 232-5513
Email: gmccormack@burkeoneil.com

0 ... 0312

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | CASE NO: |

| | |
|---|---|
| JOANNE OCHS, MELISSA OCHS, JAMES MORGAN, DAVID NEWTON, CHRIS BOGGIANO, EARL CHAVIS AND BENNY LYLE REYNOLDS, | |
| | COMPLAINT |
| v. | (JURY DEMAND) |
| KBR, INC., KELLOGG, BROWN & ROOT LLC, KELLOGG, BROWN & ROOT SERVICES, INC. and HALLIBURTON COMPANY | |

## COMPLAINT

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root Services Inc., Kellogg Brown and Root, LLC, KBR, Inc., and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

## PARTIES

2. Plaintiff Joanne Ochs is the personal representative of Steven Ochs who died a resident of the State of North Carolina. Joanne Ochs resides at 138 W. French Avenue, Burnside Kentucky 42519 and brings this wrongful death action under N.C.G.S. § 28A-18-2.

3. Plaintiff Melissa Ochs is the surviving spouse of Steven Ochs who died a resident of the State of North Carolina. Melissa Ochs resides at 112 Powell Drive, Fuquay Varina, Wake County.

4. Plaintiff James Morgan is a U.S. citizen who is a permanent resident of the State of North Carolina, residing at 2812 Findley Road, Statesville, Iredell County.

5. Plaintiff David Newton is a U.S. citizen who is a permanent resident of the State of North Carolina, residing at 1119 Riverside Circle, Spring Lake, Cumberland County.

6. Plaintiff Chris Boggiano is a U.S. citizen who is a permanent resident of the State of North Carolina, residing at 8720 Camberly Rd, Huntersville, Mecklenberg County.

7. Plaintiff Benny Lyle Reynolds, Jr. is a U.S. citizen who is a permanent resident of the State of North Carolina, residing at 2 Arnhem Way, Fort Bragg, Cumberland County.

8. Plaintiff Earl Chavis is a U.S. citizen who is a permanent resident of the State of North Carolina, residing at 379 Reedie Lane, Pembroke, Robeson County.

9. Plaintiffs John and Jane Does 1-1000 are the Class of persons who have been exposed while serving in Iraq and Afghanistan to improperly operated burn pits and who have suffered injuries as a result of their exposure. Plaintiffs 1-1000 include U.S. military personnel, U.S. government contractors and third country nationals employed by the military or contractors. Unknown Plaintiffs 1-1000 share common questions of law and fact and are so numerous that joinder of all members of the class is impracticable.

10. Defendant KBR, Inc. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR does business throughout the United States and the rest of the world. Defendant KBR acted at all times relevant to this action through individual

agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of North Carolina and is subject to this Court's jurisdiction pursuant to N.C.G.S. § 1-75.4.

11. Defendant Kellogg, Brown & Root LLC is a limited liability company with headquarters located at 505 E. Huntland Dr., Suite 100, Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC regularly transacts business in the State of North Carolina and is subject to this Court's jurisdiction pursuant to N.C.G.S. § 1-75.4.

12. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of North Carolina and is subject to this Court's jurisdiction pursuant to N.C.G.S. § 1-75.4.

13. Defendant Halliburton Company is a publicly traded corporation with offices at 5 Houston Center, 1401 McKinney, Suite 24, Houston, Texas 77010. Defendant Halliburton Company was formed and incorporated under the laws of Delaware. Defendant Halliburton Company does business throughout the United States and the rest of the world. Defendant

Halliburton Company acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly transacts business in the State of North Carolina and is subject to this Court's jurisdiction under N.C.G.S. § 1-75.4.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over the subject matter of this action pursuant to N.C.G.S. § 7A-240.

15. Venue is proper pursuant to N.C.G.S. § 1-82.

## DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE

16. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of all waste in a method designed to minimize safety risks, to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

17. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

18. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, hydraulic fluids, munitions boxes, petroleum-oil-lubricant (POL) products, medical waste, biohazard materials including human corpses, latrine waste, medical supplies used during smallpox inoculations, paints, solvents,

asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with fuel in order to make it ignite.

19. As but one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. At times the smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

20. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan operated by Defendants. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

21. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emit dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

22. Defendants operated burn pits that released known carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

23. Defendants knew or should have known that operating open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as thousands of contractor employees supporting them. Numerous reports

and articles called Defendants' attention to the known hazards of operating large open air burn pits.

24. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use all available incinerators, or to install additional incinerators, in order to achieve a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

25. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

26. Plaintiff James Morgan was deployed to Balad Air Force base in Iraq and was stationed as a guard in the guard tower located directly above the burn pit. As a result he was exposed to constant smoke, fumes and haze in large quantities. At times the guard tower would fill with smoke and the soldiers would have to abandon the post because they could not see or breathe through the smoke. As a direct result of his exposure to toxic emissions from the burn pit, Plaintiff Morgan suffered from chronic cough and respiratory problems due to his exposure to the smoke. After his return, he developed cancer of the lung. The cancer spread and he now also suffers from cancer in his back. Plaintiff believes that his cancer is directly related to his exposure to toxic emissions and smoke from the burn pits.

27. Plaintiff David Newton was deployed to Balad Air Force Base in Iraq, was exposed to hazardous substances from the burn pits during his deployment. As a direct result of his exposures to the toxic emissions from the burn pit, Plaintiff Newton suffers from asthma, reactive airway disease, chronic cough with bloody and black expectorant and frequent vomiting from the accumulation of mucous.

28. Plaintiff Chris Boggiano was deployed to two Forward Operating Bases in Baqubah, Iraq, was exposed to hazardous substances from the burn pits during his deployment. As a direct result of exposures to toxic emissions from the burn pit, Plaintiff Boggiano suffers serious respiratory complications and breathing problems including chronic shortness of breath.

29. Plaintiff Earl Chavis was employed by KBR in Iraq at the Balad Air Force Base. As a truck driver he would regularly pass the burn pits and the cab of his truck would fill with smoke. As a direct result of exposures to the toxic emissions from the burn pit, Plaintiff Chavis began to suffer from respiratory problems and continues to suffer from asthma, restrictive airways disease, sleep disorder, migraine headaches, weight loss and joint pain.

30. Plaintiff Benny Lyle Reynolds, Jr. was deployed to Iraq, including to Al Taquaddum, where he was exposed to smoke and hazardous substances from the burn pits. As a direct result of his exposures to the toxic emissions from the burn pits, Plaintiff Reynolds began to suffer from cough and respiratory problems. (He also developed a heart condition and was medically evacuated for left ventricular tachycardia and non-contraction.) As a direct result of his exposures to the toxic emissions from the burn pits, Plaintiffs Reynolds continues to suffer from upper respiratory problems including a very severe case of pneumonia, constant coughing, bronchial spasms, shortness of breath and sinus problems. He has been diagnosed with asthma and suffers from sleep apnea.

31. Decedent Steven Ochs, who is represented by his surviving spouse Melissa Ochs and his personal representative, Joanne Ochs, was deployed to Iraq and Afghanistan, including to Balad Air Force Base in Iraq, was exposed to the burn pits during his deployment. As a direct result of his exposures to the toxic emissions from the burn pits, Steven Ochs became seriously ill with cancer, severe congestion, sinus problems and other illnesses, and died on July 12, 2008.

32. Decedent, Steven Ochs, is survived by his surviving spouse, Melissa Ochs, and his minor child, Annelise Ochs.

33. Plaintiff Joanne Ochs, mother of Steven Ochs has filed to be named as personal representative of Steven Ochs, deceased, in North Carolina for purposes of maintaining a wrongful death action under N.C.G.S. 28A-18-2.

34. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

35. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

36. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes, and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

**CLASS ALLEGATIONS**

37. Plaintiffs satisfy all of the conditions for a class action under North Carolina Rules of Civil Procedure, N.C.G.S. § 1A-1, Rule 23.

38. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

39. This action should be certified as a class action because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

40. This action should be certified as a class action because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

41. This action should be certified as a class action because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

42. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

**COUNT ONE: NEGLIGENCE**

43. Paragraphs 1-42 are hereby incorporated by reference.

44. Defendants owed a duty to safely and properly dispose of various forms of waste.

45. Defendants negligently failed to properly dispose of waste.

46. Plaintiffs suffered harm from prolonged exposure to prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

47. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

48. All allegations and facts in paragraphs 1-47 are hereby incorporated by reference.

49. Defendants contaminated the air by burning unsafe substances in an open burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires and that they would not consent to such contact.

50. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

51. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances.

**COUNT THREE: NUISANCE**

52. All allegations and facts in paragraphs 1-51 are hereby incorporated by reference.

53. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned in open air burn pits.

54. Defendants substantially and unreasonable interfered with those rights when they improperly operated open air burn pits.

55. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

56. Defendants' actions are the proximate cause of Plaintiffs injuries.

**COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

57. All allegations and facts in paragraphs 1-56 are hereby incorporated by reference.

58. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

59. Plaintiffs have suffered from extreme stress, mental anguish and severe emotional distress due to their injuries and their experiences with the burn pits.

60. Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

61. Defendants' conduct in operating open air burn pits was negligent. It was reasonably foreseeable that such negligent conduct would cause injuries and that emotional distress would likely result from their conduct. Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress.

**COUNT FIVE: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

62. All allegations and facts in paragraphs 1-61 are hereby incorporated by reference.

63. Plaintiffs have suffered from extreme stress, mental anguish and severe emotional distress due to Defendants' outrageous actions.

64. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct. It was reasonably foreseeable that such intentional and reckless conduct would cause severe emotional distress or mental anguish.

65. Defendants' conduct in operating the burn pits was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct

caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to foresee that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

66. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

67. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases and in some cases have died from the physical injuries and diseases, caused by the exposure to hazardous smoke and fumes.

**COUNT SIX: WILFUL AND WANTON CONDUCT**

68. All allegations and facts in paragraphs 1-67 are hereby incorporated by reference.

69. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

70. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

71. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

72. Defendants demonstrated either, a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

**COUNT SEVEN: NEGLIGENT HIRING, TRAINING AND SUPERVISION**

73. All allegations and facts in paragraphs 1-72 are hereby incorporated by reference.

74. Defendants had a duty to properly train their personnel in safe waste disposal.

75. Defendants failed to implement any of the required training.

76. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

**COUNT EIGHT: BREACH OF DUTY TO WARN**

77. All allegations and facts in paragraphs 1-76 are hereby incorporated by reference.

78. Defendants had a duty to warn United States forces when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

79. Defendants failed to warn United States forces of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

**COUNT NINE: MEDICAL MONITORING**

80. All allegations and facts in paragraphs 1-79 are hereby incorporated by reference.

81. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

82. This exposure has resulted in serious physical health problems for Plaintiffs.

83. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

84. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

85. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

86. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

87. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances. Such medical monitoring procedures are reasonably necessary according to contemporary scientific principals, and these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

## COUNT TEN: FUTURE MEDICAL EXPENSES

88. All allegations and facts in paragraphs 1-87 are hereby incorporated by reference.

89. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

90. This exposure has resulted in physical health problems for Plaintiffs.

91. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

92. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as

a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

93. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**COUNT ELEVEN: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES**

94. All allegations and facts in paragraphs 1-93 are hereby incorporated by reference.

95. Defendants entered into contractual agreements with the United States Department of Defense.

96. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

97. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed at these locations, were intended Third Party Beneficiaries of these contracts.

98. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

99. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants' contractual obligations.

100. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

**COUNT TWELVE: WRONGFUL DEATH**

101. All allegations and facts in paragraphs 1-100 are hereby incorporated by reference.

102. Plaintiff Melissa Ochs, as surviving spouse of Steven Ochs, and plaintiff Joanne Ochs as personal representative of the estate of Steven Ochs, are authorized to bring this wrongful death action against Defendants on behalf of decedent's estate and on behalf of decedent's survivors as statutory beneficiaries under N.C.G.S § 28A-18-2.

103. Plaintiffs Melissa Ochs and Joanne Ochs seek damages for the wrongful death of decedent Steven Ochs who died as a result of illnesses contracted as a result of his prolonged and repeated exposure to extremely hazardous substances, to which he was exposed as a direct result of Defendants' wrongful actions, including negligence, battery, breach of contract and breach of duty to warn.

104. Decedent Steven Ochs illness and death from complications of Acute Myeloid Leukemia were proximately caused by Defendants' wrongful acts, including but not limited to negligence, battery, breach of contract, breach of duty to warn, operating a burn pit which exposed Steven Ochs to hazardous substances and chemicals that resulted in his illness and death.

105. As a result of Defendants' negligence and other wrongful acts, Steven Ochs' surviving spouse, Melissa Ochs, and his surviving minor child, Annelise Ochs, have suffered a loss of support based upon Decedent's earning potential over the remainder of his life had his premature death not been proximately caused by Defendants' wrongful actions.

106. As a result of Defendants' negligence and other wrongful acts, Steven Ochs' surviving spouse, Melissa Ochs, and his surviving minor child have suffered and now suffer a lack of companionship and protection provided by Steven Ochs.

107. As a result of Defendants' negligence and other wrongful acts, Steven Ochs' spouse Melissa Ochs has suffered severe mental pain and suffering during the illness of Steven Ochs since the date of Decedent's death July 12, 2008.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully prays that this Court:

1. Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, emotional distress, fear of future disease, past and future loss of earnings, past and future loss of earning capacity, past and future pain and suffering, loss of enjoyment of life, and past and future medical expenses and the need for continued medical treatment and monitoring in an amount in excess of $10,000;
2. Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air in an amount in excess of $10,000;
3. Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit;

4. All issues to be tried by jury, and,

5. Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted on behalf of Plaintiffs and all others similarly situated on April 27, 2009.

By: ____________________
John S. Austin

John S. Austin
N.C. Bar 20826
The Law Offices of John Austin, PLLC
P.O Box 6580
300 West Millbrook Road, Suite 202
Raleigh, NC 27609
(919)278-7634
Fax (919)341-1165

Susan L. Burke
William O'Neil
Elizabeth M. Burke (pro hac vice application forthcoming)
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington D.C 20007
202-232-5504
202-232-5513 (fax)
sburke@burkeoneil.com
woneil@burkeoneil.com
eburke@burkeoneil.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| Joshua Eller | ) | CIVIL ACTION FILE NO.: ________ |
| and all others similarly situated; | ) | |
| v. | ) | |
| KBR, Inc., | ) | |
| Kellogg, Brown & Root LLC, and | ) | |
| Halliburton Company | ) | |

## COMPLAINT

1. Plaintiff Joshua Eller files this complaint on behalf of himself and all others similarly situated (hereinafter referred to as "Plaintiffs") to seek redress from the defense contractors named above ("Defendants"). Defendants promised the United States government that they would supply safe water for hygienic and recreational uses, safe food supplies and properly operate base incinerators to dispose of medical waste safely. Defendants utterly failed to perform their promised duties. Instead, Defendants intentionally and negligently exposed thousands of soldiers, contract employees and other persons to unsafe water, unsafe food, and contamination due to faulty waste disposal systems. Defendants acted egregiously merely to make more money for themselves. This action seeks compensatory and punitive damages against all Defendants.

## PARTIES

2. Plaintiff Joshua Eller is a citizen of the United States, residing at 1392 Revel Cove Drive, Conyers, Georgia 30094. Mr. Eller was deployed to Iraq to serve as a

computer aided drafting technician from the February through November, 2006. He supported the 332nd Air Force battalion.

3. Plaintiffs John and Jane Does 1-1000 are the Class of persons serving in Iraq who have been exposed to contaminated food, contaminated water, and/or improperly operated incinerators, and who have suffered injuries as a result of their exposure. Plaintiffs 1-1000 may include U.S. military personnel, U.S. government contractors and third country nationals employed by the military or contractors. Unknown Plaintiffs 1-1000 share common questions of law and fact and are so numerous that joinder of all members of the class is impracticable.

4. Defendant KBR, Inc. is a publicly traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR was a wholly owned subsidiary of the Halliburton Company until April, 2007. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR."

5. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100 Austin, Texas. Defendant Kellogg Brown Root acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellog Brown Root."

6. Defendant Halliburton is a publicly traded corporation with corporate headquarters located at 5 Houston Center, 1401 McKinney, Suite 2400, Houston Texas 77010. Defendant Halliburton was formed and incorporated under the laws of Delaware.

Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton."

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 (diversity jurisdiction); and 28 U.S.C. § 1367 (supplemental jurisdiction).

8. Venue is proper pursuant to 28 U.S.C. § 1391.

## CLASS ALLEGATIONS

9. This action should be certified as a class action pursuant to Fed. R. Civ.P. 23(b)(2), which permits the certification of a class when the defendants "have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole..." Fed.R.Civ.P. 23(b)(2).

10. This action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(1)(A) which permits the certification of a class if the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

11. This action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(1)(B), which permits the certification of a class when adjudication with respect to an individual Plaintiff would, as a practical matter, be dispositive of the interests of the other putative Class Members.

12. This action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

13. This action should be certified as a class because Plaintiff satisfies all of the prerequisites to a class action set forth in the Fed.R.Civ.P.23(a). Specifically,

(a) the class is so numerous that joinder of all member is impracticable;

(b) there are questions of law common to the class;

(c) there are questions of fact common to the class;

(d) the claims of the named Plaintiff are typical of the claims of the class;

(e) the representative party will fairly and adequately protect the interest of the class.

14. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

15. There should be at least one class certified. The class should be defined as a Class which consists of persons who 1) have been deployed to Iraq as part of the U.S. military or as a U.S. government contractor or third country national serving the U.S. forces, 2) who were exposed to the actions of Defendants and 3) were injured as a result of this exposure. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants. There may be additional subclasses suitable for certification.

**DEFENDANTS PROVIDED CONTAMINATED WATER TO U.S. FORCES**

16. Defendants are the main providers of bulk water used in dining, medical, personal hygiene and recreation facilities. KBR's Government and Infrastructure ("G&I") business unit provides program and project management logistics to the U.S. military operating in

In August, 2006 KBR was awarded a $3.5 billion task order under the LogCap III act, a government contract awarded in support of military operations in the Middle . In 2006, Iraq related work contributed $4.7 billion to the consolidated revenues of R and KBR was further awarded $120 million in award fees during that year. evenue from their operations in Iraq represented 45% of all KBR revenues in 2006.

17. U.S. military standards, including but not limited to TB MED 577, establish field water quality standards and water certification processes and define operational and oversight rules. KBR was contractually required to comply with these and other water safety standards. The standards provide detailed requirements for the sanitary control and quality surveillance of land-based field water support. All water used for drinking, cooking and medical facilities must be potable. Water used for laundry and personal hygiene, bathing, and cleaning may be non-potable but must meet certain minimum safety standards as outlined in TB MED 577.

18. KBR was required to monitor and maintain the quality of water it distributed to meet the established standards. KBR was required to inspect and maintain distribution and storage tanks, chlorinate water supplied and ensure proper levels of chlorine residual. The water distribution and point-of-use storage containers were an integral part of the water supply system and were required to be installed, operated and maintained in accordance with applicable Army regulations.

19. KBR failed to meet the applicable standards and supplied water which was contaminated, untreated, and unsafe. Water quality tests were not performed and disinfection residual levels were not monitored and maintained at point-of-use storage containers and water was not properly treated or chlorinated to ensure safety to users.

20. Senator Dorgan requested that the Department of Defense Inspector General review allegations that KBR supplied unsafe water to the U.S. forces in Iraq. The audit revealed that KBR failed to properly supply, maintain, and test the water it supplied to U.S. forces during the audited period. *See DoD Inspector General Report No D-2008-060, attached as Exhibit 1.*

21. A report entitled *Report of Findings & Root Cause, Water Mission B4 Ar Ramadi*, prepared by Wil Granger, KBR's water quality manager for Iraq, dated May 13, 2005, indicates that no disinfection to non-potable water was occurring for water designated for showering purposes. "This caused an unknown population to be exposed to potentially harmful water for an undetermined amount of time." *See Report attached as Exhibit 2 at p. 3.*. The report confirms that "The deficiencies of the camp where the event occurred is not exclusive to that camp, meaning that countrywide, all camps suffer to some extent from all or some of the deficiencies noted." *Ex. 2 at 4.*

22. KBR failed to properly train its personnel in proper water operations, despite its acceptance of a contract to provide safe water to the U.S. force in Iraq. "Theatre wide there is no formalized training for anyone at any level in concerns to water operations." *Ex. 2 at 5.*

23. KBR relied on "semi-skilled" labor to maintain the water operations and paid them at the level of unskilled workers in the KBR compensation classification structure. *Ex. 2 at p. 6.*

24. KBR generated or retained little or no documentation regarding water safety issues, water inventories, chemistries, audits, safety standards, procedures or orders. "This lack of documentation shows a lack of oversight and understanding as to the

requirements necessary for the production, distribution, consumption, and uses of water; both potable and non-potable. Documentation is necessary to validate the quality of our services to prevent both liability and injury." *Ex. 2 at 6.*

25. Former KBR employees and water quality specialists Ben Carter and Ken May publicly admitted that KBR knowingly exposed troops and civilians to contaminated water from the Euphrates and Tigris Rivers. Ben Carter, a water quality specialist who worked for KBR at Junction City, testified that he tested water. He found the water to be polluted with sewage and other contaminates. He also found KBR was not chlorinating the water as required. Mr. Carter treated the water tanks serving KBR employees and told company managers the military should be alerted so they could treat their tanks as well. Mr. Carter was ordered by his KBR supervisor to concern himself only with the health and safety of KBR personnel. KBR was supposed to test the water three times daily to confirm safety but such testing never occurred.

26. Defendants provided water to fill the swimming pools located at Balad Air Force base. These swimming pools were used during recreation time for the U.S. forces. Defendants supplied unsafe water for the pools and failed to properly test or chlorinate the water, thereby exposing U.S Forces to unsafe water for swimming.

## DEFENDANTS SUPPLIED THE US FORCES WITH SPOILED, ROTTEN, AND CONTAMINATED FOOD

28. KBR was responsible for receiving, storing, transporting, preparing and serving food and ice to the U.S. Forces in Iraq.

29. Defendants knowingly and intentionally supplied to U.S. Forces and other individuals food that was expired, spoiled, rotten, or that may have been contaminated with shrapnel, or other materials.

30. Defendants knowingly and intentionally supplied and served food that was well past its expiration date, in some cases over a year past its expiration date. Even when it was called to the attention of the KBR food service managers that the food was expired, KBR still served the food to the U.S. forces.

31. Defendants failed to properly maintain refrigeration trucks that were needed to maintain a safe food supply. Defendants would allow refrigeration trucks to run out of fuel, thereby allowing food to spoil.

32. Defendants supplied and served chicken, beef and fish that was well past its expiration date to U.S. forces.

33. Defendants supplied and served dairy products and eggs well past their expiration dates.

34. Defendants failed to follow sanitation rules from the Military Preventative Medicine programs and other U.S. military standards.

35. KBR prevented their employees from speaking with government auditors and hid employees from auditors by moving them from bases when an audit was scheduled. Defendants failed to meet with auditors as required and left base or hid when an audit was scheduled. Any employees that spoke with auditors were sent to more dangerous locations in Iraq as punishment.

36. Defendants provided eggs that were unsafe to eat. Defendants' actions caused salmonella poisoning.

37. Defendant KBR was required to provide food according to their customs for the many third country nationals working to support the U.S. effort in Iraq. Defendant KBR

routinely failed to provide proper and safe food for these individuals and gave third country nationals leftover food out of garbage cans and boxes.

38. Defendant KBR charged the U.S. government for many more meals than were actually served and charged the U.S. government for food served to Defendant KBR's own employees.

39. Trucks that have been used as mortuary trucks are never permitted to carry any food supplies. Defendants ignored this rule, and shipped ice served to the U.S. forces in trucks that had been used to carry human remains and that still had traces of body fluids and putrefied remains in them when they were loaded with ice. This ice was served to U.S. forces.

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

40. Reasonable discovery will show that Defendants were required to properly handle and incinerate the medical wastes that arose on some or all of the U.S. bases or camps in Iraq.

41. Defendants failed to properly maintain and operate the incinerator designed to ensure the safe disposal of medical waste at Balad Air Force base, which operated a busy front- line military hospital.

42. Instead, Defendants merely dug an open air burn pit and burned in the open air hazardous medical waste and other waste not appropriate for open air burning.

43. On at least one occasion, Defendants were attempting to improperly dispose of medical waste at the open air burn pit by backing a truck full of medical waste up to the pit and emptying the contents onto the fire. The truck caught fire. Defendants' fraudulent actions were thereby discovered by the military.

44. Defendants burned medical waste that contained human body parts on the open air burn pit. Wild dogs in the area raided the burn pit and carried off human remains. The wild dogs could be seen roaming the base with body parts in their mouths, to the great distress of the U.S. forces.

45. Defendants illegally burned old lithium batteries on the open air burn pits, causing noxious and unsafe blue smoke to drift over the base

**DEFENDANTS' ACTIONS CAUSED PLAINTIFF ELLER'S ILLNESS**

46. Plaintiff Joshua Eller was deployed to Iraq in February, 2006 as part of the civilian force supporting the U.S. Air Force. During his ten months in Iraq he used the swimming pools, showering and hygiene stations and dining halls which were operated and supplied by Defendants.

47. In May, 2006, Plaintiff developed lesions on his skin, these lesions spread, filled with fluid and finally burst. The lesions wept fluid to such an extent that they had to be kept covered with gauze. After treatment with antibiotics given from the Air Force Clinic, the lesions scabbed over and healed. In August, 2006 the lesions returned and a similar course and treatment were experienced.

48. Plaintiff developed blisters on his feet beginning in August 2006 and continuing to the present time. Like the earlier lesions, the blisters swell, fill with fluid and eventually burst. The blisters make it very painful to walk and curtail most physical activity for a week. After Plaintiff's return to the United States, he continued to experience the blistering on his feet. The condition returns every three to four months and each flare up lasts approximately one week.

49. Plaintiff developed severe gastrointestinal problems while in Iraq. He experienced frequent vomiting, cramping and diarrhea while stationed at Balad Air Force Base. Since his return to the United States he continues to suffer from recurring severe stomach pain and gastrointestinal problems and continues to seek medical treatment and testing to determine the cause of his illness.

50. Plaintiff witnessed the open air burn pit in operation at Balad Air Force Base. On one occasion, he witnessed a wild dog running around base with a human arm in its mouth. The human arm had been dumped on the open air burn pit by KBR. Plaintiff continues to have severe nightmares caused by this incident and is now dependent on sleeping pills to help him rest without being tormented by this image. Plaintiff has been diagnosed with adjustment disorder as a result of his continuing nightmares.

**COUNT ONE: NEGLIGENCE**

51. Paragraphs 1-50 are hereby incorporated in full.

52. Defendants owed a duty to provide water safe for swimming and hygienic purposes, to provide food safe for human consumption and to safely and properly incinerate medical and other waste.

53. Defendants negligently failed to provide safe water, safe food and ice, and to properly handle medical waste.

54. Plaintiffs suffered harm from exposure to unsafe water, unsafe and expired food, and to improperly incinerated waste.

55. Defendants negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

56. All allegations and facts in paragraphs 1-55 are hereby incorporated in full.

57. Defendants supplied water contaminated with hazardous substances knowing that such water would come into contact with Plaintiffs and knowing that Plaintiffs would not consent to such contact. Defendants also contaminated the air by burning hazardous substances in an open air burn pit, creating a constant, heavy smoke and haze. Defendants knew that Plaintiffs would come into contact with the smoke from the illegal fires and that they would not consent to such contact

58. Plaintiffs did not consent to contact with contaminated water while using the hygiene facilities supplied for showering, shaving and brushing teeth or while swimming in the pools or to contact with heavy smoke and haze from the burn pit.

59. Defendants' actions were unlawful acts and Defendants acted in willful disregard of Plaintiffs right to be free of exposure to hazardous substances.

**COUNT THREE: NUISANCE**

60. All allegations and facts in paragraphs 1-59 are hereby incorporated in full.

61. Plaintiffs and all residents of U.S bases in Iraq had the right to have water that met the applicable military standards, and food that was safe for consumption.

62. Defendants substantially and unreasonably interfered with those rights when they knowingly failed to provide safe water in which to bathe and swim and safe food to consume.

63. Plaintiffs had a public right to be free from irritating and hazardous smoke from an improperly operated open air burn pit and to be free of the hazards that arise when medical waste is burned on an open air burn pit.

64. Defendants substantially and unreasonable interfered with those rights when they improperly burned an open air burn pit constantly and improperly burned hazardous waste and medical waste from the nearby front line military hospital.

65. Plaintiffs suffered from injuries, both physical and emotional, due to Defendants egregious conduct in placing contaminated water into the swimming pools and the hygiene units. Plaintiffs suffered injuries from the illegal operation of the open air burn pit.

66. Defendants actions are the proximate cause of Plaintiffs' injuries.

## COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

67. All allegations and facts in paragraphs 1-66 are hereby incorporated in full.

68. Plaintiffs have been diagnosed with injuries as a result of Defendants' conduct in supplying unsafe food and water and in burning medical waste on an open air pit.

69. Plaintiffs have suffered from emotional distress due these injuries.

70. Defendants negligent conduct is the cause of the Plaintiffs' emotional distress.

## COUNT FIVE: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71. All allegations and facts in paragraphs 1-70 are hereby incorporated in full.

72. Plaintiffs have suffered from extreme stress due to Defendants outrageous actions.

73. Defendants conduct was intentional and reckless.

74. Defendants' conduct in providing sewage water for the U.S. Forces to swim and bath in and taking millions of taxpayer dollars as payment was outrageous and intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct in dumping medical waste in an open burn pit and allowing body parts to be

taken, carried and likely eaten by wild dogs was outrageous, intolerable and certainly offends generally accepted standards of decency and morality.

75. Defendants' conduct caused Plaintiffs' emotional distress. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

76. Plaintiffs suffered severe emotional distress from learning they were bathing and brushing teeth with sewage water. Plaintiff Eller has suffered extreme emotional distress from witnessing human body parts being carried in the mouths of wild dogs. The severe emotional distress of the U.S forces who would witness such events was the primary risk created by Defendants' reckless conduct in allowing human body parts to be burned on an open air burn pit.

## COUNT SIX: STRICT PRODUCT LIABILITY

77. All allegations and facts in paragraphs 1-76 are hereby incorporated in full.

78. Under different contracts with the U.S. government, Defendants were responsible for supplying U.S. bases in Iraq with all manner of items designed to safeguard the Morale, Welfare, and Recreation of the U.S. Forces. Under such contracts, Defendants sold to the U.S. food, water and waste disposal services. Defendants handled these large government contracts in their regular course of business.

79. The water that Defendants sold the U.S. for use by the U.S. Forces in Iraq was unreasonably dangerous when used for swimming, bathing, brushing teeth and shaving. Since Defendants put contaminated water in swimming pools and the field hygiene units, it was reasonably anticipated that the water would be used in this manner.

80. Defendants did not give adequate warning of the danger of the water, even after they were confronted with its dangers by members of their own corporation.

81. Plaintiffs used the contaminated water in a reasonably anticipated manner.

82. The expired and spoiled food that Defendants served to the U.S. for the use by the U.S. Forces in Iraq was unreasonably dangerous when ingested.

83. Plaintiffs consumption of the food was reasonably anticipated by Defendants.

84. Plaintiffs were injured by their exposure to contaminated water and their ingestion of expired or spoiled food. Plaintiffs' injuries are a direct result of Defendants defective products.

## COUNT SEVEN: WILFULL AND WANTON CONDUCT

85. All allegations and facts in paragraphs 1-84 are hereby incorporated.

86. Defendants owed Plaintiffs a duty to provide safe water, food and medical waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs

87. Defendants were conscious of their conduct in failing to adequately supply safe water and food and medical waste disposal services.

88. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

89. Defendants demonstrated either a deliberate intent to harm Plaintiffs or an utter indifference and conscious disregard for the welfare of Plaintiffs.

**COUNT EIGHT: NEGLIGENT HIRING, TRAINING AND SUPERVISION**

90. All allegations and facts in paragraphs 1-89 are hereby incorporated in full.

91. Defendants had a duty to properly train their personnel in water supply safety and military water standards and in proper testing, reporting and administrative procedures, and proper maintenance and oversight procedures.

92. Defendants failed, as reported by their own employee, to implement any of the required training of personnel.

93. Defendants wholesale failure to set up a water supply system that was adequately overseen, trained, maintained and policed was the direct and proximate cause of injury to Plaintiffs.

**COUNT NINE: BREACH OF DUTY TO WARN**

94. All allegations and facts in paragraphs 1-93 are hereby incorporated in full.

95. Defendants had a duty to warn U.S. Forces when Defendants learned there were safety issues with the water supply, when they learned there were safety issues with the food supply and when they learned that the incinerator was not properly functioning.

96. Defendants failed to warn U.S. Forces of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

**JURY DEMAND**

Plaintiffs request a Jury Trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

Award Plaintiffs monetary damages to compensate each Plaintiff for their physical injuries, emotional distress, fear of future disease, and need for continued medical treatment and monitoring;

Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq who depend on Defendants supply of the basic necessities of life;

Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit; and,

Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted,

By: ***/s/ Philip A. Werner***
Philip A. Werner
Texas State Bar No. 21190200

OF COUNSEL:

WERNER AYERS, L. L. P.
2000 West Loop South, Suite 1550
Houston, Texas 77027
(713) 626-2233
(713) 626-9708 (fax)

Susan L. Burke
Elizabeth M. Burke
BURKE O'NEIL LLC
1718 20th Street
Washington D.C. 20009
(215) 487-6596

ATTORNEYS FOR PLAINTIFF

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Joshua Eller and all others similarly situated

(b) County of Residence of First Listed Plaintiff: Rockdale County
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Werner Ayers, LLP, 2000 W. Loop So., #1550, Houston TX 77027

**DEFENDANTS**
KBR, Inc., Kellogg, Brown & Root, LLC and Halliburton Company

County of Residence of First Listed Defendant: Harris County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332 and 1367
Brief description of cause:
Negligence, battery, nuisance, etc

**VII. REQUESTED IN COMPLAINT:** ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 DEMAND $ CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions) JUDGE DOCKET NUMBER

DATE: 11/27/2008 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

4 cits + pps q ID

2009CI07144 -P00001
09 April 30 P2:27
Margaret G. Montemayor
District Clerk
Bexar District
Accepted by:
Veronica Rodriguez

CAUSE NO.: 2009ci 07144

| | | |
|---|---|---|
| Robert Cain<br>330 Summer Mountain Drive<br>San Marcos, Texas 78666 | ) | IN THE DISTRICT COURT OF |
| Craig Henry<br>400 East Guenther, #1202<br>San Antonio, Texas 78210 | ) | |
| Francis Jaeger<br>5912 Echo Bluff Drive<br>Haltom City, Texas 76137 | ) | |
| David McMenomy<br>408 West 2nd Street<br>Lampasas, Texas 76550 | ) | |
| Mark Posz<br>9511 Milbrook Drive<br>San Antonio, Texas 78245 | ) | |
| El Kevin Sar<br>5807 Ettrick Drive<br>Houston, Texas 77035 | ) | BEXAR COUNTY, TEXAS |
| and all others similarly situated; | ) | |
| v. | ) | |
| KBR, Inc.<br>601 Jefferson Street<br>Suite 3400<br>Houston, Texas 77002 | ) | |
| Kellogg, Brown & Root Services, Inc.<br>4100 Clinton Drive<br>Houston, Texas 77020 | ) | |
| Kellogg, Brown & Root LLC<br>505 E. Huntland Dr., Suite 100<br>Austin, Texas 78752 | ) | |
| Halliburton Company<br>5 Houston Center<br>1401 McKinney, Suite 2400<br>Houston, Texas 77010 | ) | 407th JUDICIAL DISTRICT |

CRT PROCESS DEPT.

## PLAINTIFFS' ORIGINAL PETITION

1. This action seeks redress for American soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown & Root LLC, KBR, Inc., Kellogg, Brown & Root Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

## PARTIES

2. Plaintiff Robert Cain, whose address is 330 Summer Mountain Drive, San Marcos, Texas 78666, is a U.S. citizen who is a permanent resident of the State of Texas.

3. Plaintiff Craig Henry, whose address is 400 East Guenther, #1202, San Antonio, Texas 78210, is a U.S. citizen who is a permanent resident of the State of Texas.

4. Plaintiff Francis Jaeger, whose address is 5912 Echo Bluff Drive, Haltom City, Texas 76137, is a U.S. citizen who is a permanent resident of the State of Texas.

5. Plaintiff David McMenomy, whose address is 408 West 2nd Street, Lampasas, Texas 76550, is a U.S. citizen who is a permanent resident of the State of Texas.

6. Plaintiff Mark Posz, whose address is 9511 Milbrook, San Antonio, Texas, 78245, is a U.S. citizen who is a permanent resident of the State of Texas.

7. Plaintiff El Kevin Sar, whose address is 5807 Ettrick Drive, Houston, Texas 77035, is a U.S. citizen who is a permanent resident of the State of Texas.

8. Plaintiffs John and Jane Does 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury. The Class includes soldiers

and employees of all nationalities who work for government contractors. The Class members are so numerous that joinder of all members of the class is impracticable.

9. Defendant KBR, Inc. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR, Inc. was incorporated in Delaware on March 21, 2006. Defendant KBR, Inc. does business throughout the United States and the rest of the world. Defendant KBR, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR, Inc." Defendant KBR, Inc. regularly transacts business in the State of Texas and is subject to this Court's jurisdiction.

10. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100, Austin, Texas 78752. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC regularly transacts business in the State of Texas and is subject to this Court's jurisdiction.

11. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of Texas and is subject to this Court's jurisdiction.

12. Defendant Halliburton Company is a publicly traded corporation with offices at 5 Houston Center, 1401 McKinney, Suite 2400, Houston, Texas 77010. Defendant Halliburton Company was formed and incorporated under the laws of Delaware. Defendant Halliburton Company does business throughout the United States and the rest of the world. Defendant Halliburton Company acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton Company." Defendant Halliburton Company regularly transacts business in the State of Texas and is subject to this Court's jurisdiction.

**JURISDICTION AND VENUE**

13. This Court has original jurisdiction over the subject matter of this action pursuant to Texas Constitution, Article 5, Section 8.

14. Venue is proper pursuant to Texas Civil Practice and Remedies Code, Section 15.002 and Section 15.005.

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

15. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to dispose of all waste in a method designed to minimize safety risks, to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

16. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

17. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, petroleum-oil-lubricant (POL) products, metals, hydraulic fluids, munitions boxes, medical waste, latrine waste, biohazard materials including human corpses, medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel to ignite it.

18. As one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

19. Similar conditions existed at burn pits on United States bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

20. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emits dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

21. Defendants operated burn pits that released known carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

22. Defendants knew or should have known that operating open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as thousands of contractor employees supporting them. Numerous reports and articles called Defendants' attention to the known hazards of operating large open air burn pits.

23. Defendants knew or should have known that they could have disposed of the waste in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use all available incinerators, or to install additional incinerators, in order to achieve a safer method of waste disposal.

## DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS

24. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

25. Plaintiff Robert Cain was stationed at Balad Air Force Base in Iraq and Camp Anaconda in Iraq. He was exposed to thick black smoke and toxic fumes from the burn pit. As a direct result of his exposure to the toxic emissions from the burn pit, he has developed a respiratory condition that continues to the present and limits his military career.

26. Plaintiff Craig Henry was also stationed at Balad Air Force Base in Iraq and Camp Anaconda in Iraq. He was exposed to the toxic smoke and fumes from the burn pit. As a direct result of his exposure to the toxic emissions from the burn pit, he has been plagued by chronic coughing and cold-like symptoms, and has developed a respiratory condition that continues to the present.

27. Plaintiff Francis Jaeger was stationed at Forward Operating Base Sykes in Iraq. He was exposed to the toxic smoke and fumes from the burn pit. As a direct result of his exposure to the toxic emissions from the burn pit, he developed a burning sensation in his lungs and chronic respiratory infections, and has been plagued by a respiratory condition, sleep apnea and vision loss that continue to the present.

28. Plaintiff David McMenomy was stationed at Camp Al Taji, Iraq. He was exposed to the toxic smoke and fumes. As a direct result of his exposure to the toxic emissions from the burn pits, he experienced chronic coughing, headaches and sinus problems, and has developed acute abdominal pains, and high blood pressure. He developed a fast growing tumor on his hip which grew in a short time to be the size of a football. He underwent surgery to remove the tumor and had a drain surgically implanted to help healing. The drain remained in place for over a month. He continues to have a significant hole in his thigh from the surgery.

29. Plaintiff Mark Posz worked as the foreman at the Ar Ramadi burn pit. He was constantly exposed to the toxic emissions from the burn pit. As a direct result of his exposure to the toxic emissions, Plaintiff Posz began coughing up blood and suffering from a severe respiratory condition. Plaintiff Posz suffered blisters and burns in the areas where his skin was in constant direct contact with the ash from the burn pit.

30. Plaintiff El Kevin Sar was stationed in Iraq and exposed to the toxic smoke and fumes. As a direct result of his exposure to the toxic emissions from the burn pits, he developed chronic coughing, headaches and cold-like symptoms, and has been plagued by pulmonary problems.

31. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

32. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

33. Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes, and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

34. Plaintiffs satisfy all of the conditions for a class action under Texas law. Texas Rules of Civil Procedure, Rule 42.

35. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

36. This action should be certified as a class action pursuant to Texas Rules of Civil Procedure, Rule 42(b)(1)(A) because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

37. This action should be certified as a class action pursuant to Texas Rules of Civil Procedure, Rule 42(b)(1)(B) because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

38. This action should be certified as a class action pursuant to Texas Rules of Civil Procedure, Rule 42(b)(3) because common questions of law and fact predominate over any

questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

39. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

**COUNT ONE: NEGLIGENCE**

40. Paragraphs 1-39 are hereby incorporated by reference.

41. Defendants owed a duty to safely and properly dispose of various forms of waste in order to protect others against unreasonable risks of harm.

42. Defendants negligently failed to safely and properly dispose of waste.

43. Plaintiffs suffered harm from prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

44. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

45. All allegations and facts in paragraphs 1-44 are hereby incorporated by reference.

46. Defendants contaminated the air by burning unsafe substances in an open burn pit, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires, that the contact would be offensive to Plaintiffs, and that Plaintiffs would not consent to such contact.

47. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

48. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances.

## COUNT THREE: NUISANCE

49. All allegations and facts in paragraphs 1-48 are hereby incorporated by reference.

50. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned on open air burn pits.

51. Defendants substantially and unreasonably interfered with those rights when they improperly operated open air burn pits.

52. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

53. Defendants' actions are the proximate cause of Plaintiffs injuries.

## COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

54. All allegations and facts in paragraphs 1-53 are hereby incorporated by reference.

55. Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to the physical impact of smoke, haze and fumes containing hazardous substances through the negligent operation of the open air pits.

56. Plaintiffs have suffered physical harm and severe emotional distress due to these injuries.

57. Plaintiffs have suffered severe emotional distress as a result of the physical harm they experienced from prolonged exposure to hazardous smoke and fumes. This distress has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious

and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

58. Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress.

**COUNT FIVE: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

59. All allegations and facts in paragraphs 1-58 are hereby incorporated by reference.

60. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

61. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

62. Defendants' conduct in operating the burn pits was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

63. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

64. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty

regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

## COUNT SIX: WILLFUL AND WANTON CONDUCT

65. All allegations and facts in paragraphs 1-64 are hereby incorporated by reference.

66. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

67. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

68. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

69. Defendants demonstrated either a deliberate intent to harm Plaintiffs or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

## COUNT SEVEN: NEGLIGENT HIRING, TRAINING AND SUPERVISION

70. All allegations and facts in paragraphs 1-70- are hereby incorporated by reference.

71. Defendants had a duty to properly train their personnel in safe waste disposal.

72. Defendants failed to implement any of the required training.

73. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

## COUNT EIGHT: BREACH OF DUTY TO WARN

74. All allegations and facts in paragraphs 1-73 are hereby incorporated by reference.

75. Defendants had a duty to warn United States personnel when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

76. Defendants failed to warn United States personnel of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

## COUNT NINE: MEDICAL MONITORING

77. All allegations and facts in paragraphs 1-76 are hereby incorporated by reference.

78. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

79. This exposure has resulted in serious physical health problems for Plaintiffs.

80. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

81. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

82. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

83. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

84. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances. Such medical monitoring procedures are reasonably necessary according to contemporary scientific principles, and these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

**COUNT TEN: FUTURE MEDICAL EXPENSES**

85. All allegations and facts in paragraphs 1-84 are hereby incorporated by reference.

86. Plaintiffs have been exposed to dangerous levels of unknown hazardous substances in the air as a direct result of the conduct of Defendants.

87. This exposure has resulted in physical health problems for Plaintiffs.

88. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

89. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

90. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**COUNT ELEVEN: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES**

91. All allegations and facts in paragraphs 1-88 are hereby incorporated by reference.

92. Defendants entered into contractual agreements with the United States Department of Defense.

93. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

94. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or

as contract employees stationed in these locations, were intended Third Party Beneficiaries of these contracts.

95. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

96. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn bit operated by Defendants in breach of Defendants' contractual obligations.

97. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, emotional distress, fear of future disease, and need for continued medical treatment and monitoring;

Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air;

Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit; and,

Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted,

WERNER AYERS, L.L.P.

By:____________________________________

Philip Werner
State Bar No. 21190200
David Ayers
State Bar No. 00783576
2000 W. Loop South, Suite 1550
Houston, TX 77027
713/626-2233
713/626-9708 (fax)
ATTORNEYS FOR PLAINTIFFS

CRT PROCESS DEPT.

Timothy Kingston, No. 6-2720
Graves, Miller and Kingston
408 W. 23rd Street
Cheyenne, WY 82001
T. (307) 638-8885
kingston@rockymtnlaw.com

Susan L. Burke
William O'Neil
Elizabeth Burke
Burke O'Neil LLC
1000 Potomac Street, Suite 150
Washington, DC 20007
T. (202) 232-5504

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT,
LARAMIE COUNTY, WYOMING

Glen S. Massman, SMSgt, USAF
1810 Gettysburg Drive
Cheyenne, WY 82007

Wendy L. McBreairty, SSgt.
74 Julianna Road
Cheyenne, WY 82007

John and Jane Does 1-1000,
and all others similarly situated;

v.

KBR, Inc.
601 Jefferson Street
Suite 3400
Houston, Texas 77002

Kellogg, Brown & Root Services, Inc.
4100 Clinton Drive
Houston, Texas 77020

Kellogg, Brown & Root LLC
505 E. Huntland Dr., Suite 100
Austin, Texas 78752

Halliburton Company
5 Houston Center
1401 McKinney, Suite 24
Houston, Texas 77010

FILED
APR 29 2009
GERRIE E. BISHOP
CLERK OF THE DISTRICT COURT

CASE NUMBER: 173-845

## COMPLAINT

The Plaintiffs, by and through their attorneys Susan Burke, William O'Neil and Elizabeth Burke of Burke O'Neil LLC and Timothy C. Kingston of Graves, Miller and Kingston, hereby state for their Complaint as follows.

1. This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., KBR Services, Inc. and Halliburton Company (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes. These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

## PARTIES

2. Plaintiff Glen S. Massman is a U.S. citizen who is a permanent resident of the State of Wyoming, residing at 1810 Gettysburg Drive, Cheyenne, WY 82007.

3. Plaintiff Wendy McBreairty is a U.S. citizen who is a permanent resident of the State of Wyoming, residing at 74 Julianna Road, Cheyenne, WY 82007.

4. Plaintiffs John and Jane Does 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury. The Class includes soldiers and employees of all nationalities who work for government contractors. The Class members are so numerous that joinder of all members of the class is impracticable.

5. Defendant KBR, Inc. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware

on March 21, 2006 and was a wholly owned subsidiary of the Halliburton Company until April, 2007. KBR is a leading global engineering, construction and services company supporting the energy, petrochemicals, government services and civil infrastructure sectors. KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR." Defendant KBR regularly transacts business in the State of Wyoming and is subject to this Court's jurisdiction pursuant to Wyoming Statutes Annotated § 5-1-107.

6. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100 Austin, Texas. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC." Defendant Kellogg, Brown & Root LLC regularly transacts business in the State of Wyoming and is subject to this Court's jurisdiction pursuant to Wyoming Statutes Annotated § 5-1-107.

7. Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world. Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of Wyoming and is subject to this Court's jurisdiction pursuant to Wyoming Statutes Annotated § 5-1-107.

8. Defendant Halliburton is a publicly traded corporation with its headquarters at 5 Houston Center, 1401 McKinney, Suite 24, Houston, Texas 77010. Defendant Halliburton was formed and incorporated under the laws of Delaware. Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton." Defendant Halliburton regularly transacts business in the State of Wyoming and is subject to this Court's jurisdiction under Wyoming Statute Annotated § 5-1-107.

**JURISDICTION AND VENUE**

9. This Court has original jurisdiction over the subject matter of this action pursuant to Wyoming Constitution, Article 5, § 10.

10. Venue is proper pursuant Wyoming Statutes Annotated § 1-5-107.

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

11. Defendants were paid millions of dollars by the United States government to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to minimize the environmental effects of any burn site they operated and to minimize any type of smoke exposure to people in and near the camp.

12. Defendants utterly failed to fulfill any of the promises they made to the United States government. Defendants, more interested in money than safety, wholly ignored their obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls. This misconduct began in 2004 and continues unabated to date.

13. Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky. Every type of waste imaginable was and is burned in these pits, including trucks, tires, lithium batteries, styrofoam, paper, wood, rubber, petroleum-oil-lubricant (POL) products, metals, hydraulic fluids, munitions boxes, medical waste, biohazard materials including human corpses, latrine waste, medical supplies used during smallpox inoculations, paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and hundreds and hundreds of thousands of plastic water bottles. Defendants regularly doused the waste with diesel fuel in order to make it ignite.

14. As but one example, the thick black and white smoke from the enormous burn pits at Balad Air Force Base filled the nearby living quarters with smoke and haze. The smoke reduced visibility to only a few yards. The flames were often colored blue or green from the burning chemicals. The smell from the pits was extremely noxious because chemicals and plastic were being burned.

15. Similar conditions existed at burn pits on U.S. bases across Iraq and Afghanistan. Indeed, the smoke was so bad in some instances that it interfered with the military mission. For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

16. Defendants knew or should have known that their burn pits were creating hazardous conditions for American soldiers and contractors. Burning plastics emit dioxins, which are known to cause cancer. Burning pesticides has similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulate that can interact in an infinite variety of ways and cause many different toxicities and injuries.

17. Defendants knew or should have known that operating vast open air burn pits jeopardized the health and safety of thousands of American soldiers deployed to Iraq and Afghanistan, as well as the thousands of contractor employees supporting them. Numerous reports and articles called Defendants attention to the known hazards of operating large open air burn pits.

18. Defendants knew or should have known that they could have disposed of the wastes in a safe manner that would not have harmed Plaintiffs. Defendants willfully failed to use all available incinerators that would have been a safer method of waste disposal.

**DEFENDANTS' MISCONDUCT PHYSICALLY HARMED PLAINTIFFS**

19. Defendants' misconduct physically harmed the Plaintiffs and the Class Members.

20. Plaintiff Glen Massman was stationed at Camp Bucca, Iraq in 2006 and 2007. While there he was exposed to smoke, fumes and haze from the burn pits. As a direct result of his exposure to the toxic emissions from the burn pits, Plaintiff Massman experienced chronic cough, respiratory problems, headaches and flu-like symptoms. As a direct result of his exposure to the toxic emissions from the burn pits, Plaintiff Massman continues to suffer from respiratory problems, tightness in his chest, constant dry cough, increased allergic sensitivities, and frequent headaches. He has been diagnosed with sleep apnea and is dependent on a sleep machine at night. He has hypertension and exercise induced respiratory problems, requiring frequent use of inhalers. Plaintiff Massman's conditions are a result of his exposure to the toxic emissions from the burn pit.

21. Plaintiff Wendy McBreairty was stationed at Balad Air Force Base in Iraq. As a direct result of her exposure to toxic emissions from the burn pits, Plaintiff McBreairty suffers from chronic cough, respiratory symptoms, sore joints, rheumatoid arthritis, muscle spasms, chronic pain syndrome, and multiple sclerosis.

22. Plaintiffs fear the long term effects of constant exposure to thick toxic smoke and they will require medical monitoring of their health for the foreseeable future.

23. Plaintiffs are aware that many other U.S. soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

24. Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes and their fears and uncertainty regarding their own health risks caused by these exposures. Plaintiffs are aware that many other U.S. soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with serious and potentially fatal diseases and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

25. Plaintiffs satisfy all of the conditions for a class action under Wyoming law.

26. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

27. This action should be certified as a class action pursuant to Wyoming Rules of Civil Procedure, Rule 23 because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

28. This action should be certified as a class action pursuant to Wyoming Rules of Civil Procedure, Rule 23 because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

29. This action should be certified as a class action pursuant to Wyoming Rules of Civil Procedure, Rule 23 because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

30. There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2004 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer physical injury as a result. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

**COUNT ONE: NEGLIGENCE**

31. Paragraphs 1-30 are hereby incorporated by reference.

32. Defendants owed a duty to safely and properly dispose of various forms of waste.

33. Defendants negligently failed to properly dispose of waste.

34. Plaintiffs suffered harm from prolonged exposure to thick smoke, fumes and ash, including numerous hazardous substances emanating from the burn pits.

35. Defendants' negligence was the proximate cause of harm to all Plaintiffs.

**COUNT TWO: BATTERY**

36. All allegations and facts in paragraphs 1-35 are hereby incorporated by reference.

37. Defendants contaminated the air by burning unsafe substances in open burn pits, creating constant, thick smoke, fumes and haze. Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the illegal fires and that they would not consent to such contact.

38. Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pits.

39. Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances.

## COUNT THREE: NUISANCE

40. All allegations and facts in paragraphs 1-39 are hereby incorporated by reference.

41. Plaintiffs had a right to be free from irritating and hazardous smoke from improperly operated open air burn pits and to be free of the hazards that arise when chemicals, plastics, heavy metals, and medical and other waste are burned in open air burn pits.

42. Defendants substantially and unreasonably interfered with those rights when they improperly operated open air burn pits.

43. Plaintiffs suffered physical injuries from the illegal and hazardous operation of the open air burn pits.

44. Defendants' actions are the proximate cause of Plaintiffs' injuries.

## COUNT FOUR: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. All allegations and facts in paragraphs 1-44 are hereby incorporated by reference.

46. Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

47. Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

48. Defendants' conduct in operating the burn pits was outrageous, intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in burning hazardous materials in open air burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances, when Plaintiffs were stationed overseas serving their nation, is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

49. Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

50. Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases and in some cases have died from the physical injuries and diseases, caused by the exposure to hazardous smoke and fumes.

**COUNT FIVE: WILFUL AND WANTON CONDUCT**

51. All allegations and facts in paragraphs 1-50 are hereby incorporated by reference.

52. Defendants owed Plaintiffs a duty to provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

53. Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

54. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

55. Defendants demonstrated either a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

**COUNT SIX: NEGLIGENT HIRING, TRAINING AND SUPERVISION**

56. All allegations and facts in paragraphs 1-55 are hereby incorporated by reference.

57. Defendants had a duty to properly train their personnel in safe waste disposal.

58. Defendants failed to implement any of the required training.

59. Defendants' wholesale failure to set up a waste disposal system that was adequately overseen, maintained and policed, and staffed by properly trained employees was the direct and proximate cause of injury to Plaintiffs.

**COUNT SEVEN: BREACH OF DUTY TO WARN**

60. All allegations and facts in paragraphs 1-59 are hereby incorporated by reference.

61. Defendants had a duty to warn United States forces when Defendants learned there were safety issues with the smoke, fumes and haze from the open air burn pits.

62. Defendants failed to warn United States forces of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

**COUNT EIGHT: MEDICAL MONITORING**

63. All allegations and facts in paragraphs 1-62 are hereby incorporated by reference.

64. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

65. This exposure has resulted in serious physical health problems for Plaintiffs.

66. Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence.

67. Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

68. Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

69. Plaintiffs have a significantly increased risk of contracting a serious latent disease.

70. Monitoring procedures exist that make possible the early detection of certain potential diseases that could result from Plaintiffs' exposure to hazardous substances. Such medical monitoring procedures are reasonably necessary according to contemporary scientific principals, and

these medical monitoring procedures differ from the medical tests and procedures recommended in the absence of exposure to hazardous substances.

**COUNT NINE: FUTURE MEDICAL EXPENSES**

71. All allegations and facts in paragraphs 1-70 are hereby incorporated by reference.

72. Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the conduct of Defendants.

73. This exposure has resulted in physical health problems for Plaintiffs.

74. Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

75. Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of their prolonged and constant exposure to thick smoke, fumes and haze which contained hazardous substances.

76. Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

**COUNT TEN: BREACH OF CONTRACT: THIRD PARTY BENEFICIARIES**

77. All allegations and facts in paragraphs 1-76 are hereby incorporated by reference.

78. Defendants entered into contractual agreements with the United States Department of Defense.

79. Defendants had a duty under these contracts to dispose of waste, including medical waste, at these bases properly and without exposing United States Military personnel, government contractors and others residing at United States Military bases and camps to fumes, smoke and haze contaminated with hazardous substances.

80. Plaintiffs, as personnel serving the United States and stationed at or residing on the bases for which Defendants had contracts to provide waste removal and disposal services, or as contract employees stationed at these locations, were intended Third Party Beneficiaries of these contracts.

81. Defendants breached their obligations under these contracts by failing to dispose of waste, including medical waste, safely and in accordance with the requirements of the contract and military standards.

82. Plaintiffs were injured by exposure to hazardous substances in the smoke, haze and fumes from the waste burn pits operated by Defendants in breach of Defendants' contractual obligations.

83. Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, past and future lost wages, emotional distress, past and future medical expenses, fear of future disease, and need for continued medical treatment and monitoring;

2. Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air;

3. Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit;

4. Grant a trial by jury, and,

5. Grant such additional and further relief as the Court deems just and proper.

Date: April 29, 2009.

Respectfully submitted on behalf of Plaintiffs
and all others similarly situated,

By: ______________________
Timothy C. Kingston
Graves, Miller and Kingston
408 W. 23rd Street
Cheyenne, WY 82001
T. (307) 638-8885

Susan L. Burke
William O'Neil
Elizabeth M. Burke
Burke O'Neil LLC
1000 Potomac Street, Suite 150
Washington D.C 20007
T. (202) 232-5504
F. (202) 232-5513
eburke@burkeoneil.com

# EXHIBIT B

## Memorandum
## in Support
## of Transfer

RECEIVED
CLERK'S OFFICE
2009 JUN 10 P 2:22
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| MARYLAND | | | 2008 | 2007 | 2006 | 2005 | 2004 | 2003 | Numerical Standing: U.S. | Numerical Standing: Circuit |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
| OVERALL CASELOAD STATISTICS | Filings* | | 4,127 | 4,292 | 4,035 | 4,395 | 4,753 | 4,572 | U.S. | Circuit |
| | Terminations | | 4,054 | 4,198 | 4,196 | 5,076 | 4,292 | 4,317 | | |
| | Pending | | 3,723 | 3,644 | 3,632 | 3,766 | 4,399 | 4,228 | | |
| | % Change in Total Filings | Over Last Year | | -3.9 | | | | | 62 | 9 |
| | | Over Earlier Years | | | 2.3 | -6.1 | -13.2 | -9.7 | 58 | 6 |
| Number of Judgeships | | | 10 | 10 | 10 | 10 | 10 | 10 | | |
| Vacant Judgeship Months** | | | 1.0 | .0 | .0 | .0 | 1.1 | 11.2 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 412 | 429 | 404 | 440 | 476 | 457 | 47 | 4 |
| | | Civil | 346 | 360 | 339 | 378 | 415 | 395 | 33 | 3 |
| | | Criminal Felony | 51 | 52 | 47 | 50 | 50 | 52 | 68 | 8 |
| | | Supervised Release Hearings** | 15 | 17 | 18 | 12 | 11 | 10 | 74 | 9 |
| | Pending Cases | | 372 | 364 | 363 | 377 | 440 | 423 | 47 | 3 |
| | Weighted Filings** | | 452 | 500 | 463 | 490 | 490 | 495 | 40 | 4 |
| | Terminations | | 405 | 420 | 420 | 508 | 429 | 432 | 54 | 5 |
| | Trials Completed | | 19 | 20 | 18 | 19 | 23 | 21 | 54 | 7 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 11.0 | 10.2 | 10.3 | 12.4 | 10.2 | 11.5 | 71 | 8 |
| | | Civil** | 7.0 | 6.3 | 7.4 | 8.9 | 7.1 | 7.5 | 12 | 2 |
| | From Filing to Trial** (Civil Only) | | 22.0 | 21.5 | 25.0 | 26.0 | 25.5 | 23.0 | 24 | 5 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 538 | 507 | 176 | 131 | 210 | 102 | | |
| | | Percentage | 17.9 | 17.3 | 6.0 | 4.2 | 5.6 | 3.1 | 91 | 9 |
| | Average Number of Felony Defendants Filed Per Case | | 1.5 | 1.6 | 1.5 | 1.5 | 1.6 | 1.5 | | |
| | Jurors | Avg. Present for Jury Selection | 56.10 | 52.17 | 57.10 | 54.94 | 52.14 | 55.07 | | |
| | | Percent Not Selected or Challenged | 30.7 | 30.2 | 35.9 | 33.7 | 31.1 | 38.7 | | |

**2008 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE**

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 3463 | 280 | 86 | 873 | 120 | 54 | 233 | 443 | 430 | 97 | 459 | 3 | 385 |
| Criminal* | 505 | 2 | 118 | 41 | 129 | 88 | 27 | 37 | 4 | 23 | 9 | 4 | 23 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

RECEIVED CLERK'S OFFICE
2009 JUN 10 P 2:22
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

# CIVIL DOCKET SHEETS OF PENDING ACTIONS

**U.S. District Court**
**Alabama Middle District (Dothan)**
**CIVIL DOCKET FOR CASE #: 1:09-cv-00507-WC**

Guilmette v. KBR, Inc. et al
Assigned to: Honorable Wallace Capel, Jr
Case in other court: CC of Coffee County, AL, CV-09-900036.00
Cause: 28:1453 Class Action Fairness Act

Date Filed: 05/29/2009
Jury Demand: Both
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Richard Ronald Guilmette**
*and all others similarly situated*

represented by

**Elizabeth M. Burke**
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington , DC 20007
202-232-5504
Fax: 202-232-5513
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**George Walton Walker , III**
Copeland Franco Screws & Gill, PA
PO Box 347
Montgomery , AL 36101-0347
334-834-1180
Fax: 334-834-3172
Email: walker@copelandfranco.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan L. Burke**
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington , DC 20007
202-232-5504
Fax: 202-232-5513
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William O'Neil**
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington , DC 20007
202-232-5504
Fax: 202-232-5513
*LEAD ATTORNEY*

RECEIVED
CLERK'S OFFICE
2009 JUN 10 P 2:22
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Andrew Burns Johnson**
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham , AL 35203-2104
205-521-8295
Fax: 205-488-6295
Email: ajohnson@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D Watson , III**
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham , AL 35203
205-521-8436
Fax: 205-521-8800
Email: jwatson@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg, Brown & Root Services, Inc.**

represented by **Andrew Burns Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D Watson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg, Brown & Root LLC**

represented by **Andrew Burns Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D Watson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company**

represented by **Andrew Burns Johnson**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D Watson , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | NOTICE OF REMOVAL by Halliburton Company, KBR, Inc., Kellogg, Brown & Root Services, Inc., Kellogg, Brown & Root LLC from Circuit Court of Houston County, AL, case number CV-2009-900036. ( Filing fee $ 350.00 receipt number 4602010066) (Attachments: # 1 Exhibit 1-CC Complaint and Service Material, # 2 Civil Filing Fee Receipt)(cb, ) (Additional attachment(s) added on 6/1/2009: # 3 Notice of Filing from Circuit Court) (cb, ). Modified on 6/1/2009 (cb, ). (Entered: 06/01/2009) |
| 05/29/2009 | | COMPLAINT against all defendants, filed by Richard Ronald Guilmette. No pdf attached to this entry. See 1 Notice of Removal-Exhibit 1. (cb, ) (Entered: 06/01/2009) |
| 05/29/2009 | | DEMAND for Trial by Jury by Richard Ronald Guilmette. No pdf attached to this entry. See 1 Notice of Removal, Exhibit 1-for pdf. (cb, ) (Entered: 06/01/2009) |
| 05/29/2009 | 2 | Corporate/Conflict Disclosure Statement by KBR, Inc., Kellogg, Brown & Root Services, Inc., Kellogg, Brown & Root LLC. (cb, ) (Entered: 06/01/2009) |
| 06/01/2009 | | NOTICE of Assignment to Magistrate Judge mailed to counsel for Halliburton Company, Richard Ronald Guilmette, KBR, Inc., Kellogg, Brown & Root Services, Inc., Kellogg, Brown & Root LLC. (cb, ) (Entered: 06/01/2009) |
| 06/05/2009 | 3 | *Defendants'* ANSWER to Complaint with Jury Demand *and Affirmative Defenses* by Halliburton Company, KBR, Inc., Kellogg, Brown & Root Services, Inc., Kellogg, Brown & Root LLC.(Watson, John) (Entered: 06/05/2009) |
| 06/08/2009 | 4 | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Richard Guillmette. Corporate Disclosures due by 6/22/2009. (Attachments: # 1 Corporate Conflict Standing Order)(cb, ) (Entered: 06/08/2009) |
| 06/09/2009 | 5 | NOTICE by Richard Ronald Guilmette *Conflict Disclosure Statement* (Walker, George) (Entered: 06/09/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/09/2009 17:09:45 | | | |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | | |
| [redacted] | [redacted] | [redacted] | [redacted] |

# U.S. District Court
# District of Alaska (Anchorage)
# CIVIL DOCKET FOR CASE #: 3:09-cv-00097-RRB

Brister et al v. KBR, Inc. et al
Assigned to: Ralph R. Beistline
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 05/18/2009
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**William G. Brister, Jr.**
*and All Others Similarly Situated*

represented by **Neil T. O'Donnell**
Atkinson, Conway & Gagnon, Inc.
420 L. Street, Suite 500
Anchorage , AK 99501
907-276-1700
Fax: 907-272-2082
Email: nto@acglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Henry J. O'Neill**
*and All Others Similarly Situated*

represented by **Neil T. O'Donnell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Jeffrey M. Feldman**
Feldman Orlansky & Sanders
500 L. Street, Suite 400
Anchorage , AK 99501
907-272-3538
Fax: 907-274-0819
Email: feldman@frozenlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg, Brown & Root Services, Inc.**

represented by **Jeffrey M. Feldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root LLC**

represented by **Jeffrey M. Feldman**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company** represented by **Jeffrey M. Feldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/18/2009 | 1 | COMPLAINT against KBR, Inc., Kellogg, Brown & Root Services, Inc., Kellogg Brown & Root LLC, & Halliburton Company (Filing fee $ 350. Receipt #135191), filed by William G. Brister, Jr, Henry J. O'Neill.(NXL, COURT STAFF) (Entered: 05/18/2009) |
| 05/18/2009 | 2 | Civil cover sheet. (NXL, COURT STAFF) (Entered: 05/18/2009) |
| 05/18/2009 | 3 | DEMAND for Jury Trial by William G. Brister, Jr, Henry J. O'Neill. (NXL, COURT STAFF) (Entered: 05/18/2009) |
| 06/03/2009 | 4 | NOTICE of Appearance by Jeffrey M. Feldman on behalf of all defendants (Feldman, Jeffrey) (Entered: 06/03/2009) |
| 06/05/2009 | 5 | *Defendants'* ANSWER to 1 Complaint with Jury Demand by KBR, Inc., Kellogg, Brown & Root Services, Inc., Kellogg Brown & Root LLC, Halliburton Company. (Feldman, Jeffrey) (Entered: 06/05/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/09/2009 13:50:30 | | | |
| [redacted] | | [redacted] | [redacted] |
| [redacted] | | | |
| [redacted] | | [redacted] | [redacted] |

**U.S. District Court**
**Southern District of California (San Diego)**
**CIVIL DOCKET FOR CASE #: 3:09-cv-01167-L-NLS**

Auw et al v. KBR, Inc. et al
Assigned to: Judge M. James Lorenz
Referred to: Magistrate Judge Nita L. Stormes
Case in other court: Superior Court of California, County of San Diego, 37-02009-00089814
Cause: 28:1331 Fed. Question

Date Filed: 05/29/2009
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Michael Auw**
*and all others similarly situated*

represented by **Susan L Burke**
Burke O'Neil LLC
1000 Potomac Street
Suite 150
Washington , DC 20007
(202)445-1409
Fax: (202)232-5513
Email: sburke@burkeoneil.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cory Casalegno**
*and all others similarly situated*

represented by **Susan L Burke**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Ross H Hyslop**
McKenna Long and Aldridge
750 B Street
Suite 3300
San Diego , CA 92101-3540
(619)595-5400
Fax: (619)595-5450
Email: rhyslop@mckennalong.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root Services, Inc.**

represented by **Ross H Hyslop**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root LLC** represented by **Ross H Hyslop**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company** represented by **Ross H Hyslop**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DOES**
*1 through 1000, inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | NOTICE OF REMOVAL with Jury Demand from Superior Court of California, County of San Diego, case number 37-2009-00089814-CU-PO-CTL. ( Filing fee $ 350 Receipt number CAS1432), filed by Halliburton Company, KBR, Inc., Kellogg Brown & Root Services, Inc., and Kellogg Brown & Root LLC.(jer) (kaj). (Entered: 05/29/2009) |
| 05/29/2009 | 2 | NOTICE of Party With Financial Interest by Halliburton Company, KBR, Inc., Kellogg Brown & Root Services, Inc., Kellogg Brown & Root LLC (tkl) (Entered: 06/01/2009) |
| 05/29/2009 | 3 | NOTICE OF RELATED CASE(S) by Halliburton Company, KBR, Inc., Kellogg Brown & Root Services, Inc., Kellogg Brown & Root LLC. (No Low Number Order prepared) (tkl) (Additional attachment(s) (document image added on 6/1/2009: (1) Main Document. Modified on 6/1/2009 (tkl). (Entered: 06/01/2009) |
| 06/05/2009 | 4 | ANSWER to Complaint with Jury Demand *and Affirmative Defenses* by Halliburton Company, KBR, Inc., Kellogg Brown & Root Services, Inc., Kellogg Brown & Root LLC. (Attachments: # 1 Proof of Service)(Hyslop, Ross) (mjj) (Entered: 06/05/2009) |
| 06/08/2009 | 5 | Notice and ORDER Setting Telephonic Early Neutral Evaluation Conference with Counsel Only: Early Neutral Evaluation set for 7/6/2009 03:30 PM before Magistrate Judge Nita L. Stormes. Signed by Magistrate Judge Nita L. Stormes on 6/8/2009. (mjj) (jrl). (Entered: 06/08/2009) |

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/09/2009 15:03:18 | | | |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| | | | |

[redacted] [redacted] [redacted]

**U.S. District Court**
**Southern District of Georgia (Savannah)**
**CIVIL DOCKET FOR CASE #: 4:09-cv-00097-BAE-GRS**

Moore v. KBR, Inc. et al
Assigned to: Judge B. Avant Edenfield
Referred to: Magistrate Judge G. R. Smith
Case in other court: State Court of Liberty County, 09-SV-169
Cause: 28:1332 Diversity-Notice of Removal

Date Filed: 06/01/2009
Jury Demand: Defendant
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Michael Douglas Moore**
*and all others similarly situated*

represented by **Billy N. Jones**
Jones, Osteen & Jones
P.O. Box 800
Hinesville , GA 31310-0800
912-876-0111
Fax: 912-368-2979
Email: billynjones@hotmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Charles K. Reed**
McKenna, Long & Aldridge, LLP
303 Peachtree Street
Suite 5300
Atlanta , GA 30308
404-527-4000
Fax: 404-527-4198
Email: creed@mckennalong.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root LLC**

represented by **Charles K. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root Services, Inc.**

represented by **Charles K. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company** represented by **Charles K. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/01/2009 | 1 | NOTICE OF REMOVAL by KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company from State Court of Liberty County, case number 09-SV-169. ( Filing fee $ 350 receipt number SAV005861) (Attachments: # 1 Receipt, # 2 Civil Cover Sheet)(bcw) (Entered: 06/01/2009) |
| 06/01/2009 | 2 | NOTICE of Filing Notice of Removal by KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company. (bcw) (Entered: 06/01/2009) |
| 06/01/2009 | 3 | Disclosure Statement by KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company. (bcw) (Entered: 06/01/2009) |
| 06/01/2009 | 4 | GENERAL ORDER in re: 26(f) Report. Signed by Magistrate Judge G. R. Smith on 6/1/09. (bcw) (Entered: 06/01/2009) |
| 06/05/2009 | 5 | ANSWER to Complaint *and Affirmative Defenses* by KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company.(Reed, Charles) (Entered: 06/05/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/09/2009 18:16:22 | | | |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] | [redacted] |

KEYS

# United States District Court
# Northern District of Illinois - CM/ECF LIVE, Ver 3.2.2 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:09-cv-03262

Lackey et al v. KBR, Inc. et al
Assigned to: Honorable David H. Coar
Case in other court: Circuit Court of Cook County, 2009 L 5003
Cause: 28:1441 Petition for Removal- Personal Injury

Date Filed: 05/29/2009
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**David U. Lackey**

represented by **James Bryan Wood**
The Law Office of J. Bryan Wood
53 West Jackson Boulevard
Suite 660
Chicago , IL 60622
312-545-1420
Fax: 312-577-0749
Email: bryan@jbryanwoodlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Randall L. Robinson**
*and all others similarly situated*

represented by **James Bryan Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Brian H Eldridge**
Segal, McCambridge, Singer & Mahoney
233 South Wacker Drive
Suite 5500
Chicago , IL 60606
(312) 645-7800
Email: beldridge@smsm.com
*ATTORNEY TO BE NOTICED*

**Gregory M. McMahon**
Segal, McCambridge, Singer & Mahoney
233 South Wacker Drive
Suite 5500
Chicago , IL 60606
(312) 645-7922
*ATTORNEY TO BE NOTICED*

**Jeffrey Singer**

Segal, McCambridge, Singer & Mahoney, Ltd.
Sears Tower
233 S. Wacker Drive
Suite 5500
Chicago , IL 60606
(312) 645-7800
Email: jsinger@smsm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root LLC** represented by **Brian H Eldridge**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory M. McMahon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Singer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company** represented by **Brian H Eldridge**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory M. McMahon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Singer**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | NOTICE of Removal with copy of Complaint from Circuit Court of Cook County, case number (2009 L 5003) filed by Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC Filing fee $ 350. (rp, ) (Entered: 06/01/2009) |
| 05/29/2009 | 2 | CIVIL Cover Sheet.(rp, ) (Entered: 06/01/2009) |
| 05/29/2009 | 3 | ATTORNEY Appearance for Defendants Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC by Jeffrey Singer. (rp, ) (Entered: 06/01/2009) |
| 05/29/2009 | 4 | ATTORNEY Appearance for Defendants Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC by Brian H Eldridge. (rp, ) (Entered: 06/01/2009) |
| 05/29/2009 | 5 | ATTORNEY Appearance for Defendants Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC by Gregory M. McMahon. (rp, ) (Entered: 06/01/2009) |
| 05/29/2009 | 6 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Halliburton Company, |

| | | |
|---|---|---|
| | | KBR, Inc., Kellogg Brown & Root LLC. (rp, ) (Entered: 06/01/2009) |
| 06/05/2009 | 8 | ANSWER to Complaint by Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC(Singer, Jeffrey) (Entered: 06/05/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/09/2009 17:11:06 | | | |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

STAYED

# U.S. District Court
## District of Maryland (Greenbelt)
## CIVIL DOCKET FOR CASE #: 8:09-cv-00744-RWT

Metzgar et al v. KBR, Inc. et al
Assigned to: Judge Roger W Titus
Demand: $9,999,000
Case in other court: CC for Montgomery County, 307658-V
Cause: 28:1441 Petition for Removal- Personal Injury

Date Filed: 03/26/2009
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Alan Metzgar**

represented by **William Thomas O Neil**
Burke ONeil LLC
1000 Potomac St. NW
Suite 150
Washington , DC 20007
12022325504
Fax: 12022325513
Email: woneil@burkeoneil.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul Parker**
*and all others similarly situated:*

represented by **William Thomas O Neil**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Christina Marleen Carroll**
McKenna Long and Aldridge LLP
1900 K St NW Ste 100
Washington , DC 20006
12024967500
Fax: 12024967756
Email: ccarroll@mckennalong.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E Lawler , III**
Vinson and Elkins LLP
1455 Pennsylvania Ave NW Ste 600
Washington , DC 20004-1008
12026396676

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tirzah Sungyeh Lollar**
(See above for address)
*TERMINATED: 05/20/2009*
*PRO HAC VICE*

**Defendant**

**Halliburton Company** represented by **Christina Marleen Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E Lawler , III**
(See above for address)
*TERMINATED: 05/20/2009*
*LEAD ATTORNEY*

**Craig D Margolis**
(See above for address)
*TERMINATED: 05/20/2009*
*PRO HAC VICE*

**Robert A Matthews**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tirzah Sungyeh Lollar**
(See above for address)
*TERMINATED: 05/20/2009*
*PRO HAC VICE*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/26/2009 | 1 | NOTICE OF REMOVAL from the Circuit Court for Montgomery County, Maryland, case number 307658-V. ( Filing fee $ 350 receipt number 84637013874), filed by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company. (Attachments: # 1 Civil Cover Sheet, # 2 Docket Sheet from the Circuit Court for Montgomery County) (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 2 | COMPLAINT against KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed by Alan Metzgar, Paul Parker. (Attachments: # 1 Civil - Non-Domestic Case Information Report)(elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | | Jury Trial Demand by Alan Metzgar, Paul Parker. (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 3 | Notice of New Case Number (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 4 | Notice of Scheduling Hearing and Order of Court - Track IV (elt, Deputy Clerk) (Entered: 03/26/2009) |

| | | |
|---|---|---|
| 03/26/2009 | 5 | Summons Issued 60 days as to Alan Metzgar. (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 6 | Notice of New Case Number (dated 02/11/09) (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 7 | Notice of Scheduling Hearing and Order of Court - Track IV (dated 02/11/09) (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 8 | Summons Issued 60 days as to Alan Metzgar. (issued 02/11/09) (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 9 | Notice of Pending Events (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 10 | AFFIDAVIT of Service for summons and complaint served on KBR, Inc., 2451 Crystal Drive, Arlington, VA on 02/24/09. (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 11 | AFFIDAVIT of Service for summons and complaint served on Kellogg, Brown & Root LLC on 02/25/2009. (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 12 | AFFIDAVIT of Service for summons and complaint served on KBR, Inc., Maryland SDAT, 301 W. Preston Street, Baltimore, MD on 02/24/2009. (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 13 | AFFIDAVIT of Service for summons and complaint served on Halliburton Company on 02/24/2009. (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | | The above pleadings, #2 through #13, are copies of filings in the Circuit Court for Montgomery County, Maryland. (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 14 | Certification of Filing of State Court Documents (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 15 | Correspondence re: attorney admission to practice in this court. (c/m 3/26/09) (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/26/2009 | 16 | STANDING ORDER Re: Removal. Signed by Judge Roger W Titus on 03/26/2009. (elt, Deputy Clerk)(c/m to plaintiff's counsel) (Entered: 03/26/2009) |
| 03/26/2009 | | Deficiency Notice as to KBR, Inc., Kellogg, Brown & Root LLC, and Halliburton Company. Your Local Rule 103.3 disclosure statement has not been filed. The Statement must be filed by 4/6/2009 (elt, Deputy Clerk) (Entered: 03/26/2009) |
| 03/31/2009 | 17 | NOTICE of Appearance by William Thomas O Neil on behalf of all plaintiffs (O Neil, William) (Entered: 03/31/2009) |
| 03/31/2009 | 18 | NOTICE by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company *NOTICE OF FILING of Notice of Removal in Circuit Court* (Attachments: # 1 Exhibit Notice of Removal filed in Circuit Court)(Lawler, William) (Entered: 03/31/2009) |
| 03/31/2009 | 19 | MOTION to Appear Pro Hac Vice for Craig D. Margolis on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Filing fee $ 50, receipt number 84637013894 by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company (elts, Deputy Clerk) (Entered: 04/02/2009) |
| 03/31/2009 | 20 | MOTION to Appear Pro Hac Vice for Tirzah S. Lollar on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Filing fee $ 50, receipt number 84637013895 by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company (elts, |

| | | |
|---|---|---|
| | | Deputy Clerk) (Entered: 04/02/2009) |
| 04/02/2009 | 21 | PAPERLESS ORDER granting 19 Motion to Appear Pro Hac Vice for attorney Craig D. Margolis on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company. Directing attorney Craig D. Margolis to register on-line for CM/ECF at http://www.mdd.uscourts.gov/attorney/registration.asp. Signed by Clerk on 04/02/09. (md, Deputy Clerk) (Entered: 04/02/2009) |
| 04/02/2009 | 22 | PAPERLESS ORDER granting 20 Motion to Appear Pro Hac Vice for attorney Tirzah S. Lollar on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company. Directing attorney Tirzah S. Lollar to register on-line for CM/ECF at http://www.mdd.uscourts.gov/attorney/registration.asp. Signed by Clerk on 04/02/09. (md, Deputy Clerk) (Entered: 04/02/2009) |
| 04/02/2009 | 23 | MOTION to Dismiss for Lack of Jurisdiction by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Responses due by 4/20/2009 (Attachments: # 1 Memorandum in Support of Motion to Dismiss, # 2 Appendix to Memorandum in Support of Motion to Dismiss, # 3 Exhibit 1 to Memorandum in Support of Motion to Dismiss, # 4 Exhibit 2 to Memorandum in Support of Motion to Dismiss, # 5 Exhibit 3 to Memorandum in Support of Motion to Dismiss)(Lawler, William) (Entered: 04/02/2009) |
| 04/06/2009 | 24 | Local Rule 103.3 Disclosure Statement by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company. (Lawler, William) (Entered: 04/06/2009) |
| 04/10/2009 | 25 | RESPONSE re 16 Order *DEFENDANTS' STATEMENT IN RESPONSE TO THE STANDING ORDER CONCERNING REMOVAL* filed by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company. (Lollar, Tirzah) (Entered: 04/10/2009) |
| 04/15/2009 | 26 | MOTION to Transfer Case by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Responses due by 5/4/2009 (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support of Motion to Transfer, # 3 Declaration of Sharon Stagg, # 4 Exhibit A _Declaration of Sharon Stagg)(Lollar, Tirzah) (Entered: 04/15/2009) |
| 04/17/2009 | 27 | RESPONSE in Opposition re 23 MOTION to Dismiss for Lack of Jurisdiction filed by Alan Metzgar, Paul Parker. Replies due by 5/1/2009. (O Neil, William) (Entered: 04/17/2009) |
| 04/28/2009 | 28 | Consent MOTION for Extension of Time to File Response/Reply as to 27 Response in Opposition to Motion by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Responses due by 5/15/2009 (Attachments: # 1 Text of Proposed Order) (Lollar, Tirzah) (Entered: 04/28/2009) |
| 04/29/2009 | 29 | Consent MOTION for Extension of Time to File Response/Reply as to 26 MOTION to Transfer Case by Alan Metzgar, Paul Parker. Responses due by 5/18/2009 (Attachments: # 1 Text of Proposed Order)(O Neil, William) (Entered: 04/29/2009) |
| 04/30/2009 | 30 | Consent MOTION for Extension of Time *_AMENDED_ to file Reply as to (27)* by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Responses due by 5/18/2009 (Attachments: # 1 Text of Proposed Order)(Lollar, Tirzah) (Entered: 04/30/2009) |
| 05/07/2009 | 31 | ORDER granting 29 Motion for Extension of Time to File Response. Plaintiff's Response to the KBR Motion to Transfer is now due May 15, 2009. Signed by Judge Roger W Titus on 05/07/2009. (elts, Deputy Clerk) (Entered: 05/07/2009) |
| 05/07/2009 | 32 | ORDER granting 30 Motion for Extension of Time. Defendants' time to file their |

| | | |
|---|---|---|
| | | Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss is extended to Friday, May 15, 2009. Signed by Judge Roger W Titus on 05/06/2009. (elts, Deputy Clerk) (Entered: 05/07/2009) |
| 05/14/2009 | 33 | NOTICE of Appearance by Christina Marleen Carroll on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company (Carroll, Christina) (Entered: 05/14/2009) |
| 05/14/2009 | 34 | Joint MOTION to Stay *Case Deadlines Pending Resolution of Petition for Multidistrict Litigation* by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Responses due by 6/1/2009 (Attachments: # 1 Memorandum in Support, # 2 Proposed Order)(Carroll, Christina) (Entered: 05/14/2009) |
| 05/15/2009 | 35 | MOTION to Appear Pro Hac Vice for Raymond B. Biagini on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Filing fee $ 50, receipt number 0416000000002113268. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company (Carroll, Christina) (Entered: 05/15/2009) |
| 05/15/2009 | 36 | MOTION to Appear Pro Hac Vice for Robert Matthews on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Filing fee $ 50, receipt number 0416000000002113287. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company (Carroll, Christina) (Entered: 05/15/2009) |
| 05/15/2009 | 37 | PAPERLESS ORDER granting 36 Motion to Appear Pro Hac Vice for attorney Robert A. Matthews on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company. Directing attorney Robert A. Matthews to register on-line for CM/ECF at http://www.mdd.uscourts.gov/attorney/registration.asp. Signed by Clerk on 05/15/09. (md, Deputy Clerk) (Entered: 05/15/2009) |
| 05/18/2009 | 38 | MOTION to Withdraw as Attorney by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Responses due by 6/4/2009 (Attachments: # 1 Text of Proposed Order)(Lawler, William) (Entered: 05/18/2009) |
| 05/18/2009 | 39 | MOTION to Withdraw as Attorney by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Responses due by 6/4/2009 (Attachments: # 1 Text of Proposed Order)(Margolis, Craig) (Entered: 05/18/2009) |
| 05/18/2009 | 40 | MOTION to Withdraw as Attorney by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company Responses due by 6/4/2009 (Attachments: # 1 Text of Proposed Order)(Lollar, Tirzah) (Entered: 05/18/2009) |
| 05/18/2009 | 41 | ORDER granting 34 Motion to Stay Case Deadlines Pending Resolution of Petition for Multidistrict Litigation. Signed by Judge Roger W Titus on 05/15/2009. (elts, Deputy Clerk) (Entered: 05/18/2009) |
| 05/20/2009 | 42 | ORDER denying as moot 35 Motion to Appear Pro Hac Vice for attorney Raymond B. Biagini on behalf of Defendant KBR, Inc. Kellogg, Brown & Root LLC, and Halliburton. Signed by Judge Roger W Titus on 5/20/2009. (elts, Deputy Clerk)(c/m 5/20/09) (Entered: 05/20/2009) |
| 05/20/2009 | 43 | ORDER granting 38 Motion to Withdraw as Attorney. Attorney William E Lawler, III terminated. Signed by Judge Roger W Titus on 05/20/2009. (elt, Deputy Clerk) (Entered: 05/20/2009) |
| 05/20/2009 | 44 | ORDER granting 39 Motion to Withdraw as Attorney. Attorney Craig D Margolis terminated. Signed by Judge Roger W Titus on 05/20/2009. (elt, Deputy Clerk) (Entered: 05/20/2009) |

| | | |
|---|---|---|
| 05/20/2009 | 45 | ORDER granting 40 Motion to Withdraw as Attorney. Attorney Tirzah Sungyeh Lollar terminated. Signed by Judge Roger W Titus on 05/20/2009. (elt, Deputy Clerk) (Entered: 05/20/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/09/2009 18:12:19 | | | |
| [redacted] | | [redacted] | [redacted] |
| [redacted] | | | |
| [redacted] | | [redacted] | [redacted] |

ATYADM, CV

**U.S. District Court**
**District of Minnesota (DMN)**
**CIVIL DOCKET FOR CASE #: 0:09-cv-01261-JMR-SRN**

Olson v. KBR, Inc. et al
Assigned to: Judge James M. Rosenbaum
Referred to: Magistrate Judge Susan R. Nelson
Cause: 28:1441 Petition for Removal- Personal Injury

Date Filed: 05/29/2009
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Dean Guy Olson**
*and all others similarly situated*

represented by **Elizabeth - NA M. Burke**
Not Admitted
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen J Smith**
Smith, Tollefson & Rahrick
PO Box 271
Owatonna , MN 55060
507-451-6540
Fax: 507-451-1846
Email: steve@owatonnalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan - NA L. Burke**
Not Admitted
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William - NA O'Neal**
Not Admitted
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Jennifer K Huelskoetter**
Bowman & Brooke LLP
150 S 5th St Ste 3000
Mpls , MN 55402
612-339-8682
Fax: 612-672-3200
Email:
jennifer.huelskoetter@bowmanandbrooke.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root LLC** represented by **Jennifer K Huelskoetter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root Services, Inc.** represented by **Jennifer K Huelskoetter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company** represented by **Jennifer K Huelskoetter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | NOTICE OF REMOVAL by Kellogg Brown & Root Services, Inc., Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC from Steele County Third Judicial District, their case number 74cv091013 ( Filing fee $ 350 receipt number 04-34878). Assigned to Judge James M. Rosenbaum per Master List, referred to Magistrate Judge Susan R. Nelson. (Attachments: # 1 Summons & Complaint, # 2 Civil Cover Sheet) (jam) (Entered: 05/29/2009) |
| 05/29/2009 | 2 | RULE 7.1 DISCLOSURE STATEMENT by Kellogg Brown & Root Services, Inc., Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC that there is no such parent or publicly held corporation to report. (jam) (Entered: 05/29/2009) |
| 05/29/2009 | 3 | CERTIFICATE OF SERVICE by Kellogg Brown & Root Services, Inc., Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC re 1 Notice of Removal, 2 Rule 7.1 - Disclosure Statement. (jam) (Entered: 05/29/2009) |
| 06/05/2009 | 4 | ANSWER to Complaint by Kellogg Brown & Root Services, Inc., Halliburton Company, KBR, Inc., Kellogg Brown & Root LLC. (Attachments: # 1 Certificate of Service) (Huelskoetter, Jennifer) Modified text on 6/8/2009 (akl). (Entered: 06/05/2009) |
| 06/08/2009 | 5 | NOTICE OF PRETRIAL CONFERENCE, ( Pretrial Conference set for 7/21/2009 03:15 PM in Judge's Chambers Suite 9E, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota before Magistrate Judge Susan R. Nelson.) Signed by Magistrate Judge Susan R. Nelson on 06/08/2009. (Attachments: # 1 Consent Form) (MMP) (Entered: 06/08/2009) |

| PACER Service Center |
|---|
| Transaction Receipt |

06/09/2009 17:20:36

| | | | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] | [redacted] |

EAPN

# U.S. District Court
# Western District of Missouri (Joplin)
# CIVIL DOCKET FOR CASE #: 3:09-cv-05041-JTM

Bittel v. KBR, Inc.
Assigned to: Magistrate Judge John T. Maughmer
Cause: 28:1331 Fed. Question: Personal Injury

Date Filed: 05/29/2009
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Albert Paul Bittel, III** represented by **Edward L. Dowd , Jr.**
Bryan Cave
One Metropolitan Square
211 N. Broadway
Ste. 3600
St. Louis, MO 63102-2750
(314) 259-2000
Fax: (314) 259-2020
Email: eldowd@bryancave.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.** represented by **Michael K. Cully**
Lowther Johnson, Attorneys at Law, L.L.C.
901 St. Louis St.
20th Floor
Springfield, MO 65806
(417) 866-7777
Fax: (417) 866-1752
Email: mcully@lowtherjohnson.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg, Brown & Root Services, Inc.** represented by **Michael K. Cully**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg, Brown & Root, LLC** represented by **Michael K. Cully**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company** represented by **Michael K. Cully**
(See above for address)

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | NOTICE OF REMOVAL from Barry County, case number 09BR-00034, filed by Michael K. Cully on behalf of KBR, Inc.. (Attachments: # 1 Exhibit 1)(Cully, Michael) (Entered: 05/29/2009) |
| 05/29/2009 | 2 | DISCLOSURE OF CORPORATE INTERESTS *of all Defendants* filed by Michael K. Cully on behalf of Defendant KBR, Inc..(Cully, Michael) (Entered: 05/29/2009) |
| 05/29/2009 | 3 | *AMENDED* NOTICE OF REMOVAL from Barry County, case number 09BR-CC00034, filed by Michael K. Cully on behalf of KBR, Inc., Kellogg, Brown & Root Services, Inc., Kellogg, Brown & Root, LLC, Halliburton Company. Filing fee $ 350, receipt number 0866-2084321. (Attachments: # 1 Exhibit 1, # 2 Civil Cover Sheet) (Cully, Michael). (Entered: 05/29/2009) |
| 05/29/2009 | | NOTICE OF MAGISTRATE ASSIGNMENT sent via electronic mail to counsel for Plaintiff and counsel for Defendants. This is a docket entry only. No document is attached. Magistrate Return due by 6/22/2009 (Burch, C. Steve) (Entered: 05/29/2009) |
| 05/29/2009 | 4 | Notice of EAP assignment to an outside mediator. (Attachments: # 1 EAP General Order)(Burch, C. Steve) (Entered: 05/29/2009) |
| 06/05/2009 | 5 | ANSWER to Complaint *and Affirmative Defenses* filed by Michael K. Cully on behalf of Defendants Halliburton Company, KBR, Inc., Kellogg, Brown & Root Services, Inc., Kellogg, Brown & Root, LLC.(Cully, Michael) (Entered: 06/05/2009) |

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/09/2009 17:03:59 | | | |
| [redacted] | | [redacted] | [redacted] |
| [redacted] | | | |
| [redacted] | | [redacted] | [redacted] |

MEDIATION

**U.S. DISTRICT COURT**
**U.S. District Court, Western District of New York (Buffalo)**
**CIVIL DOCKET FOR CASE #: 1:09-cv-00513-WMS**

Atkinson et al v. KBR, Inc. et al
Assigned to: Hon. William M. Skretny
Case in other court: Supreme Court of the State of NY, 8th Dist of Eri, 800022/2009
Cause: 28:1446 Notice of Removal

Date Filed: 05/29/2009
Jury Demand: Defendant
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Fred Robert Atkinson, Jr.**

represented by **Genevieve McCormack**
1000 Potomac Street
Suite 150
Washington , DC 20007
202-232-5504
Fax: 202-232-5513
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robyn Sachs**
*personal representative of CHRISTOPHER SACHS, deceased*

represented by **Genevieve McCormack**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jennifer Montijo**

represented by **Genevieve McCormack**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stephen Flowers**
*and others similarly situated*

represented by **Genevieve McCormack**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Charles E. Dorkey , III**
McKenna Long & Aldridge LLP
230 Park Avenue
Suite 1700
New York , NY 10169

212-905-8330
Fax: 212-922-1819
Email: cdorkey@mckennalong.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root LLC** represented by **Charles E. Dorkey , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root Services, Inc.** represented by **Charles E. Dorkey , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company** represented by **Charles E. Dorkey , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | NOTICE OF REMOVAL by Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company, KBR, Inc. from Supreme Court State of New York, 8th District, County of Erie, case number 800022/2009. (Filing fee $350.00 receipt number 012969), filed by Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company, KBR, Inc..(DLC) (Entered: 06/02/2009) |
| 05/29/2009 | 2 | CORPORATE DISCLOSURE STATEMENT by Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company, KBR, Inc.. (DLC) (Entered: 06/02/2009) |
| 05/29/2009 | | AUTOMATIC REFERRAL to Mediation. (DLC) (Entered: 06/02/2009) |
| 06/05/2009 | 3 | *Defendants'* ANSWER to Complaint *and Affirmative Defenses* by Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company, KBR, Inc.. (Dorkey, Charles) (Entered: 06/05/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/09/2009 18:01:44 | | | |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

MEDIATION, USMJ_Daniel

**U.S. District Court**
**EASTERN DISTRICT OF NORTH CAROLINA (Western Division)**
**CIVIL DOCKET FOR CASE #: 5:09-cv-00237-BO**

Ochs et al v. KBR, Inc. et al
Assigned to: Judge Terrence W. Boyle
Cause: 28:1331 Fed. Question

Date Filed: 05/29/2009
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Joanne Ochs** represented by **John S. Austin**
Lewis & Roberts, PLLC
P. O. Box 17529
Raleigh , NC 27619
919/278-7634
Fax: 919/341-1165
Email: john@johnaustinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Melissa Ochs** represented by **John S. Austin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Morgan** represented by **John S. Austin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Newton** represented by **John S. Austin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chris Boggiano** represented by **John S. Austin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Earl Chavis** represented by **John S. Austin**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Benny Lyle Reynolds** represented by **John S. Austin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.** represented by **Richard W. Ellis**
Ellis & Winters
P. O. Box 33550
Raleigh , NC 27636
919-865-7000
Fax: 919-865-7010
Email: dick.ellis@elliswinters.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg, Brown & Root, LLC** represented by **Richard W. Ellis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg, Brown & Root Services, Inc.** represented by **Richard W. Ellis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halliburton Company** represented by **Richard W. Ellis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | NOTICE OF REMOVAL by all defendants from Wake County Civil Superior, case number 09CV008512. ( Filing fee $ 350 receipt number 04170000000000888982), filed by all defendants. (Attachments: # 1 Exhibit 1: State Court File) (Ellis, Richard) (Entered: 05/29/2009) |
| 05/29/2009 | 2 | NOTICE by Kellogg, Brown & Root Services, Inc., Halliburton Company, KBR, Inc., Kellogg, Brown & Root, LLC re 1 Notice of Removal *of Filing Civil Cover Sheet* (Ellis, Richard) (Entered: 05/29/2009) |

| | | |
|---|---|---|
| 05/29/2009 | 3 | FINANCIAL DISCLOSURE STATEMENT by KBR, Inc.. (Ellis, Richard) (Entered: 05/29/2009) |
| 05/29/2009 | 4 | FINANCIAL DISCLOSURE STATEMENT by Kellogg, Brown & Root, LLC identifying Corporate Parent Kellogg Brown & Root, Inc., Corporate Parent KBR Holdings, LLC for Kellogg, Brown & Root, LLC.. (Ellis, Richard) (Entered: 05/29/2009) |
| 05/29/2009 | 5 | FINANCIAL DISCLOSURE STATEMENT by Kellogg, Brown & Root Services, Inc. identifying Corporate Parent Kellogg Brown & Root, Inc., Corporate Parent Kellogg Brown & Root Holdings, LLC for Kellogg, Brown & Root Services, Inc... (Ellis, Richard) (Entered: 05/29/2009) |
| 05/29/2009 | 6 | FINANCIAL DISCLOSURE STATEMENT by Halliburton Company. (Ellis, Richard) (Entered: 05/29/2009) |
| 06/01/2009 | | Case Selected for Mediation - A printable list of certified mediators for the Eastern District of North Carolina is available on the court's Website, http://www.nced.uscourts.gov/applications/mediators.asp. Please serve this list on all parties. (Beasley, B.) (Entered: 06/01/2009) |
| 06/01/2009 | 7 | ORDER REDESIGNATING CASE - All future pleadings should reflect the new case number of 5:09-cv-237-BO. Signed by Clerk of Court on 5/29/09. (Talbert, S.) (Entered: 06/01/2009) |
| 06/05/2009 | 8 | ANSWER to Complaint with Jury Demand by Kellogg, Brown & Root Services, Inc., Halliburton Company, KBR, Inc., Kellogg, Brown & Root, LLC. (Ellis, Richard) (Entered: 06/05/2009) |
| 06/08/2009 | 9 | ORDER FOR DISCOVERY PLAN sent to all parties. Signed by Clerk of Court on 6/8/09. (Talbert, S.) (Entered: 06/08/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/09/2009 18:18:46 | | | |
| [redacted] | | [redacted] | [redacted] |
| [redacted] | | | |
| [redacted] | | [redacted] | [redacted] |

MAG

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:08-cv-03495

Eller v KBR Inc et al
Assigned to: Judge Lynn N. Hughes
Referred to: Magistrate Judge Stephen Smith
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 11/26/2008
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Joshua Eller** represented by

**Philip Werner**
Werner Ayers LLP
2000 W Loop S
Suite 1550
Houston , TX 77027
713-626-2233
Fax: 713-626-9708
Email: pwerner@wernerayers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Patrick Ayers**
Werner Ayers LLP
2000 W Loop S
Ste 1550
Houston , TX 77027
713-626-2233
Fax: 713-626-9708
Email: dayers@wernerayers.com
*ATTORNEY TO BE NOTICED*

**Elizabeth M Burke**
Burke O'Neil LLC
1718 20th Street
Washinton , DC 20009
215-487-6596
*ATTORNEY TO BE NOTICED*

**Susan L Burke**
Burke O'Neil LLC
1718 20th Street
Washington , DC 20009
215-487-6596
*ATTORNEY TO BE NOTICED*

**William T O'Neil**
Burke O'Neil LLC
1718 20th St NW
Washington , DC 20009

202-232-5504
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.**

represented by **Kenneth P. Held**
Vinson & Elkins LLP
1001 Fannin
Suite 2500
Houston , TX 77002
713-758-2222
Fax: 713-758-2346
Email: kheld@velaw.com
*TERMINATED: 06/05/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bikram Bandy**
McKenna Long et al
1900 K Street, NW
Washington , DC 20005
202-496-7500
*ATTORNEY TO BE NOTICED*

**Craig D Margolis**
Vinson and Elkins LLP
1455 Pennsylvania Ave NW
Suite 600
Washington , DC 20004
202-639-6540
Fax: 202-879-8840
*TERMINATED: 06/05/2009*
*ATTORNEY TO BE NOTICED*

**Margaret Twomey Brenner**
Bracewell Giuliani LLP
711 Louisiana Street
Ste 2300
Houston , TX 77002
713-223-3305
Fax: 713-221-1212
Email: peggy.brenner@bgllp.com
*ATTORNEY TO BE NOTICED*

**Raymond B Biagini**
McKenna Long & Aldridge LLP
1900 K Street NW
Washington , DC 20006
202-496-7500
Fax: 202-496-7756
*ATTORNEY TO BE NOTICED*

**Robert A Matthews**
McKenna Long et al
1900 K Street N W
Washington , DC 20006
202-496-7500
Fax: 202-496-7756 fax
*ATTORNEY TO BE NOTICED*

**Tirzah Lollar**
Vinson & Elkins LLP
1455 Pennsylvania Ave
NW Ste 600
Washington , DC 20004
202-639-6670
Fax: 202-639-6604
*TERMINATED: 06/05/2009*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg, Brown & Root LLC**

represented by

**Kenneth P. Held**
(See above for address)
*TERMINATED: 06/05/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bikram Bandy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Craig D Margolis**
(See above for address)
*TERMINATED: 06/05/2009*
*ATTORNEY TO BE NOTICED*

**Margaret Twomey Brenner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Raymond B Biagini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert A Matthews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tirzah Lollar**
(See above for address)
*TERMINATED: 06/05/2009*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Halliburton Company** | represented by | **Kenneth P. Held**<br>(See above for address)<br>*TERMINATED: 06/05/2009*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Bikram Bandy**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Craig D Margolis**<br>(See above for address)<br>*TERMINATED: 06/05/2009*<br>*ATTORNEY TO BE NOTICED*<br><br>**Margaret Twomey Brenner**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Raymond B Biagini**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Robert A Matthews**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Tirzah Lollar**<br>(See above for address)<br>*TERMINATED: 06/05/2009*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/26/2008 | 1 | COMPLAINT against all defendants (Filing fee $ 350 receipt number 0541000000004442195) filed by Joshua Eller. (Attachments: # 1 Civil Cover Sheet) (Werner, Philip) (Entered: 11/26/2008) |
| 11/28/2008 | 2 | ORDER FOR CONFERENCE. Initial Conference set for 2/17/2009 at 11:00 AM in Room 11122 before Judge Lynn N. Hughes.(Signed by Judge Lynn N. Hughes) Parties notified.(mmapps, ) (Entered: 11/28/2008) |
| 12/09/2008 | 3 | General Reference to Magistrate Judge Stephen Smith.(Signed by Judge Lynn N. Hughes) Parties notified. (Conference set 2/17/09 before Judge Hughes is canceled.) (dkelly, ) (Entered: 12/09/2008) |
| 12/18/2008 | 4 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 3/4/2009 at 10:00 AM in Courtroom 702 before Magistrate Judge Stephen Wm Smith. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 12/18/2008) |
| 01/30/2009 | 5 | MOTION for Susan L. Burke to Appear Pro Hac ViceMotions referred to Stephen Smith. by Joshua Eller, filed. Motion Docket Date 2/19/2009. (Werner, Philip) |

| | | |
|---|---|---|
| | | (Entered: 01/30/2009) |
| 01/30/2009 | 6 | MOTION for Elizabeth Burke to Appear Pro Hac ViceMotions referred to Stephen Smith. by Joshua Eller, filed. Motion Docket Date 2/19/2009. (Werner, Philip) (Entered: 01/30/2009) |
| 02/02/2009 | 7 | ORDER granting 6 Motion for Elizabeth M. Burke to Appear Pro Hac Vice. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 02/02/2009) |
| 02/02/2009 | 8 | ORDER granting 5 Motion for Susan L. Burke to Appear Pro Hac Vice. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 02/02/2009) |
| 02/03/2009 | 9 | Return of Service Unexecuted (Summons not Issued by the Clerk's Office) as to Halliburton Company re: Summons/Complaint, filed.(smurdock, ) (Entered: 02/03/2009) |
| 02/03/2009 | 10 | Return of Service Unexecuted (Summons not Issued by the Clerk's Office)as to KBR, Inc. re: Summons/ Complaint, filed.(smurdock, ) Modified on 2/3/2009 (smurdock, ). (Entered: 02/03/2009) |
| 02/04/2009 | | Summons Issued as to KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed.(esmith, ) (Entered: 02/04/2009) |
| 02/11/2009 | | Summons Issued as to Kellogg, Brown & Root LLC, filed.(dpower, ) (Entered: 02/11/2009) |
| 02/12/2009 | 11 | Letter from CT Corporation to Philip A Werner re: CT Corporation not being a registered agent for Kellogg Brown & Root LLC., filed. (thanniable, ) (Entered: 02/12/2009) |
| 02/12/2009 | 12 | RETURN of Service of SUMMONS Executed as to Halliburton Company served on 2/9/2009, answer due 3/2/2009, filed.(mewilliams, ) (Entered: 02/13/2009) |
| 02/12/2009 | 13 | RETURN of Service of SUMMONS Executed as to KBR, Inc. served on 2/9/2009, answer due 3/2/2009, filed.(mewilliams, ) (Entered: 02/13/2009) |
| 02/17/2009 | 14 | Unopposed MOTION for Extension of Time to Answer or Otherwise RespondMotions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. Motion Docket Date 3/9/2009. (Attachments: # 1 Proposed Order Granting Defendants' Unopposed Motion)(Held, Kenneth) (Entered: 02/17/2009) |
| 02/18/2009 | 15 | MOTION for Craig D. Margolis to Appear Pro Hac ViceMotions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. Motion Docket Date 3/10/2009. (Held, Kenneth) (Entered: 02/18/2009) |
| 02/18/2009 | 16 | MOTION for Tirzah S. Lollar to Appear Pro Hac ViceMotions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. Motion Docket Date 3/10/2009. (Held, Kenneth) (Entered: 02/18/2009) |
| 02/18/2009 | 17 | ORDER granting 14 Motion for Extension of Time; Answer due for KBR, Inc. 2/20/2009; Kellogg, Brown & Root LLC 2/20/2009; Halliburton Company 2/20/2009. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 02/19/2009) |
| 02/20/2009 | 18 | MOTION to Dismiss 1 Complaint *for Lack of Subject Matter Jurisdiction and Failure to State a Claim* Motions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & |

| | | |
|---|---|---|
| | | Root LLC, Halliburton Company, filed. Motion Docket Date 3/12/2009. (Attachments: # 1 Appendix to Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Proposed Order Granting Motion to Dismiss)(Held, Kenneth) (Entered: 02/20/2009) |
| 02/23/2009 | 19 | ORDER granting 15 Motion for Craig D Margolis to Appear Pro Hac Vice. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 02/23/2009) |
| 02/23/2009 | 20 | ORDER granting 16 Motion for Tirzah S Lollar to Appear Pro Hac Vice. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 02/23/2009) |
| 02/24/2009 | 21 | RETURN of Service of SUMMONS Executed as to Kellogg, Brown & Root LLC served on 2/13/2009, answer due 3/5/2009, filed.(smurdock, ) (Entered: 02/24/2009) |
| 02/24/2009 | 22 | MOTION for William T. O'Neil to Appear Pro Hac ViceMotions referred to Stephen Smith. by Joshua Eller, filed. Motion Docket Date 3/16/2009. (Werner, Philip) (Entered: 02/24/2009) |
| 02/25/2009 | 23 | ORDER granting 22 Motion for William O'Neil to Appear Pro Hac Vice. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 02/25/2009) |
| 02/27/2009 | 24 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed.(Held, Kenneth) (Entered: 02/27/2009) |
| 03/04/2009 | | Minute Entry for proceedings held before Magistrate Judge Stephen Wm Smith. SCHEDULING CONFERENCE held on 3/4/2009. Scheduling order issued. Initial Disclosures due by 3/23/2009. Motion for Class Certification due 7/31/2009. Appearances:David Ayers, Kenneth P. Held, Tirzah Lollar, William T O'Neil. (ERO:J. Gonzalez), filed. (jmarchand) (Entered: 03/04/2009) |
| 03/04/2009 | 25 | SCHEDULING ORDER. ETT: One month. Jury trial. Amended Pleadings due by 10/1/2009. Joinder of Parties due by 9/1/2009. Pltf Expert Witness List due by 10/1/2009. Deft Expert Witness List due by 11/1/2009. Discovery due by 3/31/2010. Dispositive Motion Filing due by 4/30/2010. Non-Dispositive Motion Filing due by 4/30/2010. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 03/04/2009) |
| 03/12/2009 | 26 | RESPONSE in Opposition to 18 MOTION to Dismiss 1 Complaint *for Lack of Subject Matter Jurisdiction and Failure to State a Claim* MOTION to Dismiss 1 Complaint *for Lack of Subject Matter Jurisdiction and Failure to State a Claim* MOTION to Dismiss 1 Complaint *for Lack of Subject Matter Jurisdiction and Failure to State a Claim*, filed by Joshua Eller. (Attachments: # 1 Proposed Order Denying Motion to Dismiss) (Ayers, David) (Entered: 03/12/2009) |
| 04/02/2009 | 27 | REPLY to 26 Response in Opposition to Motion, *to Dismiss*, filed by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company. (Held, Kenneth) (Entered: 04/02/2009) |
| 04/29/2009 | 28 | AO 435 TRANSCRIPT ORDER FORM by Deborah Milner. This is to order a transcript of Hearing held on 3/4/09 before Magistrate Judge Stephen Smith Court Reporter/Transcriber: JTT, filed. (emathis, ) Expedited order forwarded to JTT 4/30/2009. Modified on 4/30/2009 (dclark, ). (Entered: 04/29/2009) |

| | | |
|---|---|---|
| 05/07/2009 | 29 | TRANSCRIPT re: Initial Conference held on 03-04-09 before Magistrate Judge Stephen Smith. Court Reporter/Transcriber Judicial Transcribers of Texas, Inc.. Release of Transcript Restriction set for 8/5/2009., filed. (lvmartin, ) (Entered: 05/07/2009) |
| 05/08/2009 | 30 | Notice of Filing of Official Transcript as to 29 Transcript. Party notified, filed. (dclark, ) (Entered: 05/08/2009) |
| 05/15/2009 | 31 | MEMORANDUM AND RECOMMENDATIONS re 18 MOTION to Dismiss 1 Complaint *for Lack of Subject Matter Jurisdiction and Failure to State a Claim* MOTION to Dismiss 1 Complaint *for Lack of Subject Matter Jurisdiction and Failure to State a Claim* MOTION to Dismiss 1 Complaint *for Lack of Subject Matter Jurisdiction and Failure to State a Claim*. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 05/15/2009) |
| 05/18/2009 | 32 | *Attorney Registration Form for District Electronic Filing* by Joshua Eller, filed. (Werner, Philip) (Entered: 05/18/2009) |
| 05/27/2009 | 33 | NOTICE of Appearance by Margaret T. Brenner on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. (Brenner, Margaret) (Entered: 05/27/2009) |
| 05/27/2009 | 34 | Unopposed MOTION for Kenneth P. Held, Deborah C. Milner, Craig D. Margolis, Tirzah S. Lollar to Withdraw as AttorneyMotions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. Motion Docket Date 6/16/2009. (Attachments: # 1 Proposed Order Order Granting Motion to Withdraw) (Held, Kenneth) (Entered: 05/27/2009) |
| 05/27/2009 | 35 | MOTION to Quash Depositions of Walter and NanceMotions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & Root LLC, filed. Motion Docket Date 6/16/2009. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Brenner, Margaret) (Entered: 05/27/2009) |
| 05/27/2009 | 36 | PROPOSED ORDER re: 35 MOTION to Quash Depositions of Walter and Nance, filed.(Brenner, Margaret) (Entered: 05/27/2009) |
| 05/29/2009 | 37 | NOTICE of Appearance by Mark E. Lowes and Sharon Stagg on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. (Brenner, Margaret) (Entered: 05/29/2009) |
| 06/01/2009 | 38 | NOTICE *of Plaintiffs' Objections* re: 31 Memorandum and Recommendations, by Joshua Eller, filed. (Ayers, David) (Entered: 06/01/2009) |
| 06/04/2009 | 39 | MOTION for Bikram Bandy to Appear Pro Hac ViceMotions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. Motion Docket Date 6/24/2009. (Brenner, Margaret) (Entered: 06/04/2009) |
| 06/04/2009 | 40 | MOTION for Raymond B. Biagini to Appear Pro Hac ViceMotions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. Motion Docket Date 6/24/2009. (Brenner, Margaret) (Entered: 06/04/2009) |
| 06/04/2009 | 41 | MOTION for Robert A. Matthews to Appear Pro Hac ViceMotions referred to Stephen Smith. by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed. Motion Docket Date 6/24/2009. (Brenner, Margaret) (Entered: 06/04/2009) |
| 06/04/2009 | 42 | NOTICE of Appearance by Raymond B. Biagini, Bikram Bandy, Robert A. Matthews, Mark A. Font on behalf of KBR, Inc., Kellogg, Brown & Root LLC, Halliburton |

| | | |
|---|---|---|
| | | Company, filed. (Brenner, Margaret) (Entered: 06/04/2009) |
| 06/04/2009 | 43 | CORPORATE DISCLOSURE STATEMENT by KBR, Inc., Kellogg, Brown & Root LLC, Halliburton Company, filed.(Brenner, Margaret) (Entered: 06/04/2009) |
| 06/05/2009 | 44 | ORDER granting 34 Motion to Withdraw as Attorney. Attorney Craig D Margolis; Kenneth P. Held and Tirzah Lollar terminated. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 06/05/2009) |
| 06/05/2009 | 45 | ORDER granting 39 Motion for Bikram Bandy to Appear Pro Hac Vice. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 06/05/2009) |
| 06/05/2009 | 46 | ORDER granting 40 Motion for Raymond B Biagini to Appear Pro Hac Vice. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 06/05/2009) |
| 06/05/2009 | 47 | ORDER granting 41 Motion for Robert Matthews to Appear Pro Hac Vice. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 06/05/2009) |
| 06/08/2009 | 48 | RESPONSE in Opposition to 35 MOTION to Quash Depositions of Walter and Nance, filed by Joshua Eller. (Attachments: # 1 Affidavit of William O'Neil with exhibits) (Ayers, David) (Entered: 06/08/2009) |
| 06/09/2009 | 49 | NOTICE of Setting as to 35 MOTION to Quash Depositions of Walter and Nance. Parties notified. Motion Hearing set for 6/12/2009 at 10:00 AM in Courtroom 702 before Magistrate Judge Stephen Wm Smith, filed. (jmarchand) (Entered: 06/09/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/09/2009 17:08:09 | | | |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

# U.S. District Court [LIVE]
# Western District of Texas (San Antonio)
# CIVIL DOCKET FOR CASE #: 5:09-cv-00435-FB

Cain et al v. KBR, Inc. et al
Assigned to: Judge Fred Biery
Case in other court: 407th JDC in Bexar County, Texas, 2009-CI-07144
Cause: 28:1332 Diversity-Petition for Removal

Date Filed: 05/29/2009
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Robert Cain**

represented by **David Ayers**
Werner Ayers LLP
2000 W. Loop South
Suite 1550
Houston , TX 77027
713-626-2233
Fax: 713-626-9708
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Werner**
Werner Ayers LLP
2000 W. Loop South
Suite 1550
Houston , TX 77027
713-626-2233
Fax: 713-626-9708
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Craig Henry**

represented by **David Ayers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Werner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Francis Jaeger**

represented by **David Ayers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Werner**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David McMenomy** represented by **David Ayers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Werner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mark Posz** represented by **David Ayers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Werner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**El Kevin Sar**
*and all others similarly situated* represented by **David Ayers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Werner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR, Inc.** represented by **Richard C. Danysh**
Bracewell & Giuliani LLP
800 One Alamo Center
106 S. St. Mary's St.
San Antonio , TX 78205-3603
(210)299-3475
Fax: 210/299-0106
Email: richard.danysh@bgllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Kellogg Brown & Root LLC** | represented by | **Richard C. Danysh**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Kellogg Brown & Root Services, Inc.** | represented by | **Richard C. Danysh**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Halliburton Company** | represented by | **Richard C. Danysh**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | | If ordered by the court, all referrals will be assigned to Magistrate Judge Primomo (ga) (Entered: 06/01/2009) |
| 05/29/2009 | 1 | NOTICE OF REMOVAL (Filing fee $350 receipt number M.R. 209768), filed by KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet plus Supplement and receipt)(ga) (Entered: 06/01/2009) |
| 05/29/2009 | 2 | RULE 7 DISCLOSURE STATEMENT filed by KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company. (ga) (Entered: 06/01/2009) |
| 05/29/2009 | 3 | Certificate of Filing Removal Petition and Service by KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc., Halliburton Company (ga) (Entered: 06/01/2009) |
| 06/01/2009 | | Letter/Correspondence sent via regular mail to attorneys David Ayers and Philip Werner regarding admission status. (ga) (Entered: 06/01/2009) |
| 06/05/2009 | 4 | ANSWER to Complaint with Jury Demand *by Halliburton Company and* by KBR, Inc., Kellogg Brown & Root LLC, Kellogg Brown & Root Services, Inc..(Danysh, Richard) (Entered: 06/05/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/09/2009 17:07:06 | | | |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | | |
| [redacted] | [redacted] | [redacted] | [redacted] |

**U.S. District Court**
**District of Wyoming (Cheyenne)**
**CIVIL DOCKET FOR CASE #: 2:09-cv-00117-ABJ**

Massman v. KBR Inc et al
Assigned to: Judge Alan B Johnson
Referred to: Judge William C Beaman
Cause: 28:1331 Fed. Question: Tort Action

Date Filed: 05/29/2009
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**SMSgt Glen S Massman**
*and all others similarly situated*

represented by **Timothy C Kingston**
GRAVES MILLER & KINGSTON
408 West 23rd Street, Suite 1
Cheyenne , WY 82001
307/638-8885
Fax: 307/637-4850
Email: kingston@rockymtnlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SSgt Wendy L McBreairty**
*and all others similarly situated*

represented by **Timothy C Kingston**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KBR Inc**

represented by **Robert Carl Jarosh**
HIRST & APPLEGATE
P O Box 1083
Cheyenne , WY 82003-1083
307/632-0541
Fax: 307/632-4999
Email: rjarosh@hirstapplegate.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A Nicholas , III**
HIRST & APPLEGATE
P O Box 1083
Cheyenne , WY 82003-1083
307/632-0541
Fax: 307/632-4999
Email: tnicholas@hirstapplegate.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root Services Inc** represented by **Robert Carl Jarosh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A Nicholas , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root LLC** represented by **Robert Carl Jarosh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A Nicholas , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Haliburton Company** represented by **Robert Carl Jarosh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A Nicholas , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | NOTICE OF REMOVAL from The District Court of the First Judicial District, Laramie County, Wyoming, case number 173-846. (Filing fee $350), filed by KBR Inc, Kellogg Brown & Root Services Inc, Kellogg Brown & Root LLC, Haliburton Company.(sal) (Entered: 06/03/2009) |
| 05/29/2009 | 2 | COMPLAINT (Filing fee $350 receipt #CHY006918), filed by Glen S. Massman, Wendy L McBreairty.(sal) (Entered: 06/03/2009) |
| 05/29/2009 | 3 | NOTICE of Attorney Appearance by Thomas A Nicholas, III on behalf of KBR Inc, Kellogg Brown & Root Services Inc, Kellogg Brown & Root LLC, Haliburton Company. (sal) (Entered: 06/03/2009) |
| 05/29/2009 | 4 | NOTICE of Attorney Appearance by Robert Carl Jarosh on behalf of KBR Inc, Kellogg Brown & Root Services Inc, Kellogg Brown & Root LLC, Haliburton Company. (sal) (Entered: 06/03/2009) |
| 05/29/2009 | 5 | PARENT CORPORATE DISCLOSURE filed by KBR Inc, Kellogg Brown & Root |

| | | |
|---|---|---|
| | | Services Inc, Kellogg Brown & Root LLC, Haliburton Company. (sal) (Entered: 06/03/2009) |
| 05/29/2009 | 6 | NOTICE OF RELATED CASES by Defendants KBR Inc, Kellogg Brown & Root Services Inc, Kellogg Brown & Root LLC, Haliburton Company. (sal) (Entered: 06/03/2009) |
| 06/05/2009 | 7 | ORDER ON REMOVAL by the Honorable Judge Alan B Johnson.(sal) (Entered: 06/05/2009) |
| 06/05/2009 | 8 | NOTICE of Compliance with Court Order re 7 Order on Removal by Defendants KBR Inc, Kellogg Brown & Root Services Inc, Kellogg Brown & Root LLC, Haliburton Company (Jarosh, Robert) (Entered: 06/05/2009) |
| 06/05/2009 | 9 | ANSWER to 2 Complaint with Affirmative Defenses, with Jury Demand by Defendants KBR Inc, Kellogg Brown & Root Services Inc, Kellogg Brown & Root LLC, Haliburton Company.(Jarosh, Robert) (Entered: 06/05/2009) |
| 06/05/2009 | 10 | NOTICE of Complexity by Defendants KBR Inc, Kellogg Brown & Root Services Inc, Kellogg Brown & Root LLC, Haliburton Company, this case is complex. (Jarosh, Robert) (Entered: 06/05/2009) |

**PACER Service Center**

**Transaction Receipt**

06/09/2009 16:10:31

[redacted]